UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

                         23 CV 8253(PMH)
    -vs-
                    TELECONFERENCE

CONCORD MANAGEMENT LLC and
MICHAEL MATLIN,

                    Defendants.

----------------------------------------x

                         United States Courthouse
                         White Plains, New York

                         January 11, 2024

Before:  THE HONORABLE PHILIP M. HALPERN,
                         District Judge


APPEARANCES:

SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
     33 Arch Street
     23rd Floor
     Boston, Massachusetts 02110
AMY ARMAN BURKART
RICHARD M. HARPER, II


MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO, P.C.
     Attorneys for Defendants
     565 Fifth Avenue
     New York, New York 10017
BENJAMIN S. FISCHER
KEVIN GROSSINGER
CHRISTOPHER B. HARWOOD
PETER MENZ

*Proceedings recorded via digital recording device*

OFFICIAL COURT REPORTER
DARBY GINSBERG, RPR, RCR   (914) 390-4102

THE DEPUTY CLERK:  In the matter of Securities and Exchange Commission against Concord Management, LLC, et al., Docket No. 23-cv-8253.

Can counsel for plaintiff please note your appearance for the record?

MS. BURKART:  Good morning, Your Honor.  Amy Burkart and Richard Harper for the Securities and Exchange Commission.

THE DEPUTY CLERK:  And can counsel for defendants please note your appearance for the record?

MR. FISCHER:  Good morning, Your Honor.  Benjamin Fischer, Christopher Harwood, Kevin Grossinger, and P.D. Menz from the firm of Morvillo, Abramowitz, Grand, Iason & Anello for Concord Management, LLC and Michael Matlin.

THE COURT:  All right.  Counsel, good morning.

MR. FISCHER:  Good morning.

MS. BURKART:  Good morning.

THE COURT:  Mr. Fischer, let me start with you.

Is it your position that there is just no basis on which anyone here has to register as an investment adviser or is there a fact issue embedded here?

MR. FISCHER:  Your Honor, our position is that with respect to Concord Management, LLC, that Concord was prohibited under the law from registering as an investment adviser with the SEC, and that there are facts and circumstances, Your Honor, that we think will bear that out, including the fact that

Concord did not perform many of the hallmark activities or tasks that require investment adviser registration.

We are not seeking, Your Honor -- I'm not sure if Your Honor is asking this -- we are not seeking dismissal on that basis with respect to Concord.  We think that's an issue that will -- the parties will address through discovery.  What we are seeking with respect to dismissal is the basis for -- what we would like to seek, Your Honor, and make a motion dismiss on -- is the basis for including Mr. Matlin individually in this case as a defendant on a failure-to-register basis.

THE COURT:  Right.  Well, how do I distinguish him when the SEC says that one of the things Concord (inaudible) saying he ran the show.  He gave advice.  How do I -- how do I separate -- I am not suggesting, Mr. Fischer, that you are not right if the facts bear it out.  I'm just urging, why do we need to do this now?  The case isn't going away now.

Assuming you are right that -- with respect to Mr. Matlin, why can't we just wait until we get through here?  The marginal increase in discovery is *de minimis*, and I'm struggling to understand why it needs to be pressed now.  In other words, we are not going to -- I'm not going to stay discovery.  In fact, I am going to direct you to meet and confer and come up with a proposed case management order, and we are going to go forward.  By the time this gets queued up and ready for adjudication, it's quite possible discovery will be over,

and I'm just trying to be efficient.  I'm not trying to suggest you don't have a valid motion.  I'm just saying, why wouldn't we wait until the discovery is over?

MR. FISCHER:  Your Honor, the reason why I don't think we would propose waiting until the discovery is over is because -- a few reasons -- but first of all, we don't think that there is a legal basis pursuant to which Mr. Matlin can be pursued as a defendant on a failure-to-register basis.  The fact that he was an owner of the business or owner of the LLC we do not think is a legal basis pursuant to which the SEC can seek to hold him liable, and that there are very specific provisions of the securities laws that provide for that, but there is not one here.

The reason also, Your Honor, is -- also touches on practicality.  There are real consequences for individuals who are named as defendants in cases that are being pursued by the SEC; and because there is a legal basis, we think, to seek dismissal with respect to Mr. Matlin individually, that is something we would like to pursue, notwithstanding the fact that, as Your Honor notes, discovery was -- you know, will go forward.  We actually -- just so Your Honor is aware -- have had some discussions with the SEC in advance of this call, and we all agree with Your Honor's statement that discovery should go forward, but those are the reasons from our perspective, Your Honor --

THE COURT:  I mean --

(Cross talk)

THE COURT:  Here is the thing.  Let me interrupt and ask you a question.  How do I adjudicate that Mr. Matlin did not engage in any of the activities that would require registration?  How do I make that on a motion to dismiss?  How do I make that determination?

MR. FISCHER:  Well, I think you don't need to get there, Judge, because the issue that you would only have to decide, we think, is whether it is appropriate to pursue a claim against an individual on the basis of failing to register when the individual's acting on behalf of the corporate entity, and when the complaint does not contain allegations that the individual is providing investment advice in his or her own capacity.  I think that's the narrow issue that we would be asking the Court to rule upon, not necessarily whether the -- you know, we are not looking to raise factual issues on the motion to dismiss, Judge.

THE COURT:  All right.  Let me hear from Ms. Burkart.

MS. BURKART:  Thank you, Your Honor.

I think that many of the things that the defense has said we actually agree with.  We are not holding Mr. Matlin responsible as an owner for failure to register.  Our position is pretty simple.  We think that Mr. Matlin and Concord were acting as investment advisers.  Had Concord itself registered

with the SEC as an investment adviser, that registration would have covered other people, including Mr. Matlin, working with the firm.  But it didn't happen.  They weren't registered.

Had Mr. Matlin registered individually as an investment adviser, that probably would have worked, too.  But neither registered, neither the entity nor the individual.  And our position is that both of them are responsible for that.

Mr. Matlin is the only person who could have done it. He is individually responsible, and we see no legal prohibition that says that we can't seek to hold them both responsible for the fact that there was a failure.

THE COURT:  Yeah, I mean, I guess the -- I guess the concern is, right, I mean, you are either right or you're wrong, and I guess I struggle a little bit -- notwithstanding what Mr. Fischer says -- with how would I determine Matlin did not provide services, although he says he didn't have to go that far, Judge.

MS. BURKART:  I think, Your Honor, there, if I may, the issue is that there really is no dispute that he did provide investment advisory services or what he was doing.  There is no dispute of what he was doing.  In some ways, the dispute here is what verbs apply to describe what was happening and what the legal consequences of those are and whether that created an obligation to register as investment advisers.

But there was no suggestion here that Mr. Matlin, for

instance, was, you know, technically the owner, but removed from the activities of the firm or anything of that nature. He was very much the person who was speaking with the principals. He was the one who was, you know, communicating exclusively sort of to their -- to Mr. Schmidler. There was no real suggestion that there is a way, I think, to separate Mr. Matlin's activities from those of the firm.

I think the argument that the defense is advancing is more of a legal -- technical legal one that it is not proper for the SEC to hold Mr. Matlin legally responsible as an individual, and I think that is incorrect. It's something that we do all the time. We bring cases for failure to register against individuals, and we bring them against companies; and here, we are saying, since neither of them did it, we are seeking to hold both of them responsible, both of them being the individual and, you know, the corporation.

THE COURT: Yeah, I get it. I get it.

Mr. Fischer?

MR. FISCHER: So, Your Honor, from our perspective, you know, just to be very clear about what this case is and what this case isn't, you know, this case is a strict failure-to-register case. There is no allegation of fraud. There is no allegation with respect to any misrepresentations being made. There's no -- you know, should under the law Concord have registered because it was doing the kinds of things that the SEC

alleges require registration as an investment adviser.  So there is no allegation that anyone acted, you know, fraudulently or engaged in any sort of deceptive conduct here.  Just to (indecipherable).

We have not, Your Honor, seen another failure-to-register case that has been brought in district court just on the pure violation of the Investment Adviser's Act registration provisions.  We think, Your Honor, that the issue here is that the SEC is alleging that Concord did the types of things that require registration, and we disagree with that, and we -- we are going to -- you know, we will argue about that with the SEC, and we can fight about that, but the separate issue is when the SEC is alleging that the conduct engaged in by the entity with whom here entered into a consulting agreement with the client, that it's the entity that needs to register, and that only individuals need to register if they are conducting a separate business on their own behalf.  And what we are saying, Judge, is we don't see any allegations in the complaint that Mr. Matlin is providing investment advice in his own capacity.  The allegations are he is doing it through Concord, as many employees did in this case.  There wasn't a one shop -- it wasn't a one-person shop.  It was a -- there were multiple employees who worked for Concord, and many employees did.  But our argument, Judge, is that the facts alleged in the complaint support a charge against Concord that we will dispute on the

facts, but not against Mr. Matlin, and that's what we would like to tee up in the motion to dismiss.

THE COURT:  And I get that.  I'm just not -- I am not sure, and of course I am not going to stop you from making your motion, but I am going to tell you that we are going to commence discovery, and we are going to complete discovery; and undoubtedly, discovery will be completed before your motion to dismiss is adjudicated, and then you will have to file an answer, and we will see where we go.  Whether the SEC then comes back and says, well, Judge, we need some more discovery, this is not an efficient way to deal with the matter.

And I assume embedded in the thinking is the issue that concerns me, which is, how do I -- if you look at the complaint -- I have the complaint in front of me, and there's lots of allegations, but the area of concern, Concord and Matlin acted as investment advisers.  So that's the allegation.

Your point to me is, no, Judge, that Matlin worked for -- and I am sure you have a client issue, and I understand that as well -- worked for Concord, and maybe Concord is exempt or not, but certainly Matlin doesn't have to, and the SEC is saying, no, he provided independent services here.

And so, okay, you will make your motion.  If that's my conclusion for the moment, your motion wouldn't go anywhere, whereas if we got to the end of discovery, and we concluded -- you concluded -- and that there is no proof that he acted

outside of the four corners of Concord, then you might be in a different position.

I guess the other issue I have is the disgorgement, Ms. Burkart.  Alleging disgorgement is nice.  I'm sure it's important to the SEC, but who are the victims here, please?

MS. BURKART:  Um --

THE COURT:  Don't you have to have victims to get disgorgement?  Where is the allegation that there were victims here?

MS. BURKART:  We have not alleged victims, Your Honor, in the traditional sense in this case.  And, you know, *Goebel* did come down after the filing of the complaint.  So --

THE COURT:  Yes.

MS. BURKART:  Pardon?

THE COURT:  Yes.  I realize that.

MS. BURKART:  Yes.  So, you know, I think it's a very new issue for us, and it's a very, I think, fact-and-legal-specific argument.  So our position on that is at this point with *Goebel* being so new and, frankly, there being a lot of internal discussions about the best approach moving forward, we would say that it would be premature at this time to -- until we've developed the facts of the case and digested where the -- more fully where the law is headed, and how we plan to work with that to make a decision on the motion-to-dismiss stage about remedies.

But just to be clear, there -- we certainly haven't alleged any type of traditional victims in this case.

Your Honor, I do want to seek to clarify one point that comes out of what you had just pointed out.  To be clear, we agree with the defendants that we have not alleged in this complaint that Mr. Matlin has, one, engaged in any fraud, that's correct.  We also have not alleged that Mr. Matlin engaged in investment advisory activity outside of Concord.  So the -- I would say the test that was set up by the defendants that he would have to engage in investment advisory activity outside of Concord on his own behalf in order to be held responsible, we would say is a -- sort of the wrong test, a false premise.  So we haven't engaged -- we have not alleged that he engaged in activity outside of Concord.  We have alleged that the fact that he was Concord; that he was acting as an investment adviser there was the basis under which he should have registered.

THE COURT:  His conduct under the umbrella of Concord is the reason for him to register.

MS. BURKART:  Precisely, Your Honor.  And we agree that had Concord, the entity, registered, Mr. Matlin would have been covered by that registration.

So what we are really saying is, he does not get shielded from personal responsibility for not registering given that he was individually acting as an investment adviser while working for Concord because he failed to register Concord, that

doesn't somehow make him not responsible, not only for not filing for Concord, but for himself. So he could have done it one of two ways, but he did neither, and so we are seeking to hold both the entity and Mr. Matlin himself, who was the only one who was, as a person, could have acted on behalf of the entity, as responsible for that failure.

THE COURT: And you have case law to support that theory?

MS. BURKART: We have case law where we have brought cases against an entity and cases where we have brought against individuals. I believe we had one where there was both, although I'm not certain about that. I think generally, the fact patterns are different than the ones we have here, and the Commission chooses to go under either the individual or the entities; but here, when we discussed it internally whether there was a requirement that we pick one lane or the other, we saw no such prohibition, so we brought the case against both the entity and the individual.

THE COURT: Yeah. Okay. So I appreciate the clarification. I am now crystal clear. I assume, Mr. Fischer has case law to support the notion that he is raising. I do want to say this, Ms. Burkart, I perfectly understand the SEC is digesting *Goebel*, but that's not helpful to me and my case here. That may be something you need to deal with, and however you deal with it.

So what I am going to do is I am going to give you -- I will give you a briefing schedule, but I'm going to give you a week to consider two things:

Mr. Fischer, I would ask you to consider or reconsider the notion that this does not appear to be an efficient way to handle the matter, notwithstanding that the client may want you to move for whatever non-litigation reasons the client wants you to move.

Number two, Ms. Burkart, disgorgement without victims appears to be a difficult proposition, and I don't think because you allege disgorgement it gives you a free pass.  So I would ask that you reconsider the position in this case regarding disgorgement predicated on the notion that, you know, *Goebel* came after your complaint.

I will permit you to withdraw your request for disgorgement, which would also have the impact of reducing the footprint of the motion.

So I will give you both a week.  You will each write me.  Mr. Fischer will just tell me we are going to proceed with the motion or not.  If you're not, then you will get two weeks to file an answer.  If you are, I will give you a briefing schedule now.

On disgorgement, I'm not looking to get into the internal affairs, Ms. Burkart, of the SEC.  I am looking to manage my case and, frankly, you know, that the sequence here is

the complaint was filed before the decision.  It will make life simpler if we had one issue to deal with than two.  That's my thinking on it.  So -- and within that week I am going to also ask that you both meet and confer and prepare and file a case management order in accordance with my local rules so that discovery is -- you don't need to wait until you get that signed by me, but I do want to get one in place now.

All right.  So, Mr. Fischer, we are going to bundle the motion, meaning everything will get filed on the reply date, just so the statistical clock for me begins to run when I can actually adjudicate the motion.  So how much time do you need to serve your motion?

MR. FISCHER:  Your Honor, we will -- first of all, we will go back, and we will consider what you said on this call and report back to you, but I think we would -- I think -- would the Court entertain four weeks?

THE COURT:  Long time for a simple issue, but I will make it February 8th you will serve.

How much time, Ms. Burkart, to oppose?

MS. BURKART:  I would think two weeks would be appropriate, Your Honor.  My calendar has shut off, so I cannot see what the date for that --

THE COURT:  All right.  If you get served on the 8th, why don't we say the 23rd, which is the Friday after two weeks, so that will be 2/23 for op.

And reply, Mr. Fischer?

MR. FISCHER:  Your Honor, I think we can get that to you in a week on the 1st.

MS. BURKART:  Your Honor, I apologize.  My calendar has now come up, and the week of February 19th is school vacation week, and both Mr. Harper and I are impacted by that.  Would it be possible to push back to February 28th?

THE COURT:  Why don't we do Friday, March 1st?  Okay?

MS. BURKART:  Thank you, Your Honor.  Appreciate it.

THE COURT:  Yes.  I don't want to get in the way of school vacations.  They count.  All right.  March 1.

And, Mr. Fischer, you are saying a week, March 8th?

MR. FISCHER:  Your Honor, the danger of having said a week, and now going back on it, I am looking at my own calendar, and I see that I have some travel that week of the 4th that just may complicate my life in some ways.  If it's possible to put the reply over to the 15th, that would be very helpful.

THE COURT:  We will put it over to the 15th.

MR. FISCHER:  If not, we'll figure it out.

THE COURT:  No, the 15th is fine.

MR. FISCHER:  Thank you.

THE COURT:  On 2/8, you will serve your motion; on 3/1, Ms. Burkart, you will serve your opposition; on 3/15, you will serve your reply; and on 3/15, you will file your motion and reply papers, and Ms. Burkart will file her opposition

papers on that date.

So as you see, and when you finish my pretrial order, you will see given that, you know, this motion isn't teed up until March 15th, and then of course I've got to put it in queue, there is a real chance that discovery could be over or the bulk of it could be over before then, before I get to this motion. So just try to bear that in mind.

I'm not urging that there is a bad motion here one way or the other. I am not adjudicating the motion. I'm just urging that, you know, this -- because this, as a practical matter, doesn't feel like it's efficient.

Now, the other thing is, is there any reason to send you to a magistrate judge to begin a settlement dialogue here or are we not there yet? Mr. Fischer?

MR. FISCHER: Your Honor, I think that needs to be something that we would discuss with our client and then discuss with the SEC, and we can circle back with you on that.

THE COURT: All right. If I can help in any way here, please just reach out because I will get a magistrate judge involved or whatever else is appropriate that would help you --

MR. FISCHER: Thank you, Judge.

THE COURT: -- resolve. I feel like there is maybe two sets of issues, the one I am dealing with that I know about and then there is other issues out there that I don't know about, but I may be wrong on that.

Okay.  Is there anything else I can do for anybody today?

MS. BURKART:  Not from our perspective --

(Cross-talk)

MR. FISCHER:  Sorry, Amy.  Go ahead.

MS. BURKART:  No.  I was just saying I didn't think so from our perspective then, but if you had something to raise, go ahead.

MR. FISCHER:  The only thing, Judge, I just wanted to make sure I understood was clarity with respect to the proposed scheduling order and submit that case management order and providing that to you.  Your Honor, when would you like the parties to get that over to you?  Next Friday?

THE COURT:  Yes.

MR. FISCHER:  Next Friday.

And, Judge, just teeing up this issue, you know, we are cognizant and aware of the fact that your standard order provides for a 120-day fact discovery period unless there are extraordinary circumstances.  We have had a number of discussions with the SEC in advance of today's call about thinking through what a discovery schedule could look like, and I'm just teeing up for you, Judge, the fact that I think it's both -- I think we are both aware, meaning us and the SEC, that I think there are a substantial number of documents that may end up getting produced in this case.

THE COURT:  Let me cut you off.  Let me cut you off because I know where you are going, and the answer is no.  Put it in as I have asked you to, and you will be able to quote me because you will have my assurance that as long as you are working, and as long as you are getting along, I will extend the discovery deadline.  Doing it the other way doesn't keep good control at my end.  So I have invariably said if you are getting along, and you are doing discovery -- you can quote me, and it's in the record now -- I will extend your discovery deadline.

On the other hand, if you are not getting along, and you are fighting, and it's becoming a problem, I am not going to extend the discovery.  So it may be complicated.  There may be a lot of documents.  Follow my instructions and get along, and you will have no discovery issues here.  None.

MR. FISCHER:  Fair enough.

MS. BURKART:  Terrific.

THE COURT:  All right?  All right, counsel.  Take good care.

MR. FISCHER:  Thank you.  Thank you, Your Honor.

MS. BURKART:  Thank you.

-o0o-