**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE
COMMISSION,

*Plaintiff*,

v.

CONCORD MANAGEMENT LLC and
MICHAEL MATLIN,

*Defendants*.

---

No. 7:23-cv-08253 (PMH) (AK)

Oral Argument Requested

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS CONCORD MANAGEMENT LLC AND MICHAEL MATLIN**

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
   Benjamin S. Fischer
   Christopher B. Harwood
   Kevin Grossinger
   Peter Menz
   565 Fifth Avenue
   New York, New York 10017
   (212) 856-9600

*Attorneys for Concord Management LLC and
Michael Matlin*

Dated:  February 8, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS RELEVANT TO MOTION .............................................................. 4

PROCEDURAL HISTORY......................................................................................................... 6

STANDARD OF REVIEW ......................................................................................................... 7

ARGUMENT ............................................................................................................................. 8

I.    The SEC's Claim Asserted Against Mr. Matlin Violates Due Process Because
      It Is Contrary To Longstanding SEC Policy To Which the Agency Is Bound ............... 8

      A.    The SEC Is Bound By Its Settled Policy On Pursuing Failure-to-Register
            Claims Against Individuals.................................................................................. 10

      B.    The SEC's Settled Policy on Pursuing Failure-to-Register Claims Against
            Individuals Allows It to Pursue Such Claims Only in Limited Circumstances
            Not Present Here ................................................................................................. 11

      C.    The SEC's Failure-to-Register Claim Against Mr. Matlin Is Incompatible
            With Its Settled Policy On Pursuing Failure-to-Register Claims Against
            Individuals, and Thus Mr. Matlin Was Not Provided Fair Notice that the
            SEC Would Claim He Should Have Registered ..................................................... 13

            1.    The Complaint Does Not Allege that Mr. Matlin Provided Investment
                  Advisory Services On His Own Behalf .................................................... 13

            2.    The Complaint Does Not Allege that Mr. Matlin Engaged in Fraud
                  or Other Misconduct .............................................................................. 15

            3.    The Complaint Does Not Allege that Mr. Matlin Was the Alter Ego
                  of Concord ............................................................................................. 16

      D.    The IAA's Structure Confirms that the Court Must Enforce the SEC's Policy ... 17

      E.    Although the SEC May Seek to Hold Individuals Liable for Their Associated
            Firms' Failure to Register Under Aiding-and-Abetting or Causation Theories,
            the SEC Has Not Pled Those Theories Here (and Has No Basis to Do So) ......... 18

II.   The SEC's Request for Disgorgement Should Be Dismissed or Stricken Based on
      the SEC's Failure to Identify an Alleged "Victim" or "Pecuniary Harm" ................... 20

CONCLUSION......................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                               **Page(s)**

*Airport Mart Inc. v. Dunkin Donuts Franchising LLC*,
   2019 WL 4413052 (S.D.N.Y. Sept. 16, 2019) ........................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 7

*ASSE Int'l, Inc. v. Kerry*,
   803 F.3d 1059 (9th Cir. 2015) ............................................................................. 10

*ATSI Commn's, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................. 16

*C.F.T.C. v. EOX Holdings, L.L.C.*,
   90 F.4th 439 (5th Cir. 2024) ............................................................................... 11

*Doe v. Indyke*,
   457 F. Supp. 3d 278 (S.D.N.Y. 2020) ......................................................... 20, 22

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) .................................................................................. 10, 17

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ................................................................................. 10, 17

*Freidus v. Barclays Bank PLC*,
   734 F.3d 132 (2d Cir. 2013) .................................................................................. 7

*Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*,
   2023 WL 4211035 (S.D.N.Y. Jun. 27, 2023) ...................................................... 22

*Gater Assets Ltd. v. AO Moldovagaz*,
   2 F.4th 42, 58 (2d Cir. 2021) ............................................................................... 16

*Gen. Elec. Co. v. E.P.A.*,
   53 F.3d 1324 (D.C. Cir. 1995)......................................................................... 11, 17

*Howard v. S.E.C.*,
   376 F.3d 1136 (D.C. Cir. 2004)........................................................................... 19

*I.N.S. v. Yueh-Shaio Yang*,
   519 U.S. 26 (1996) .............................................................................................. 10

*Kiobel v. Royal Dutch Petroleum Co.*,
   621 F.3d 111 (2d Cir. 2010) .................................................................................. 4

*Liu v. S.E.C.*,
  140 S. Ct. 1936 (2020)...................................................................................... 4, 20, 21, 22

*Montilla v. I.N.S.*,
  926 F.2d 162 (2d Cir. 1991) ....................................................................................... 11, 18

*Nat. Res. Def. Council v. Dep't of Interior*,
  410 F. Supp. 3d 582 (S.D.N.Y. 2019) ...................................................................... 10

*Office of Commc'n of the Church of Christ v. FCC*,
  560 F.2d 529 (2d Cir. 1977) ..................................................................................... 10

*Parmalat Sec. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...................................................................... 16

*Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  337 F. Supp. 3d 308 (S.D.N.Y. 2018) ...................................................................... 10

*Rosa v. TCC Comms., Inc.*,
  2016 WL 67729 (S.D.N.Y. Jan. 5, 2016) ............................................................... 22

*Salazar v. King*,
  822 F.3d 61 (2d Cir. 2016) ....................................................................................... 10, 12

*S.E.C. v. Ahmed*,
  72 F.4th 379 (2d Cir. 2023) ..................................................................................... 20, 21

*S.E.C. v. Berry*,
  2008 WL 4065865 (N.D. Cal. Aug. 27, 2008) ........................................................ 21, 22

*S.E.C. v. Blavin*,
  760 F.2d 706 (6th Cir. 1985) ................................................................................... 13

*S.E.C. v. City of Victorville*,
  2014 WL 12607683 (C.D. Cal. Jan. 7, 2014) .......................................................... 20

*S.E.C v. Dalius*,
  2019 WL 13178869 (C.D. Cal. Sept. 12, 2019) ...................................................... 22

*S.E.C. v. de Maison*,
  2021 WL 5936385 (2d Cir. 2021) ............................................................................ 22

*S.E.C. v. Ferona*,
  No. 05-CV-621 (D. Colo. Jul. 15, 2005) ................................................................. 13

*S.E.C. v. Fin. News Assocs.*,
  1985 WL 25023 (E.D. Va. Apr. 26, 1985) .............................................................. 13

iv

*S.E.C. v. Govil,*
  86 F.4th 89 (2d Cir. 2023) .................................................................. 4, 7, 8, 20, 21, 22

*S.E.C. v. Gillette,*
  No. 98-CV-1265 (S.D. Cal. Jul. 9, 1998) ............................................................... 12

*S.E.C. v. Kenton Cap., Ltd.,*
  69 F. Supp. 2d 1 (D.D.C. 1998) ............................................................................ 13

*S.E.C. v. Landberg,*
  836 F. Supp. 2d 148 (S.D.N.Y. 2011) ................................................................... 19

*S.E.C. v. Medsker,*
  No. C3-96-381 (S.D. Oh. 1996) ............................................................................ 13

*S.E.C. v Morningstar Credit Ratings, LLC,*
  578 F. Supp. 3d 563 (S.D.N.Y. 2022) ....................................................... 20, 21, 22

*S.E.C. v. Nutmeg Group LLC,*
  162 F. Supp. 3d 754 (N.D. Ill. 2016) .................................................................... 19

*S.E.C. v. Razmilovic,*
  738 F.3d 14 (2d Cir. 2013) ...................................................................................... 7

*S.E.C. v. Scott,*
  2015 WL 13742024 (E.D.N.Y. July 15, 2015) ...................................................... 17

*S.E.C. v. Wallace,*
  94 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................ 13

*S.E.C. v. Westport Cap. Markets LLC,*
  408 F. Supp. 3d 93 (D. Conn. 2019) ..................................................................... 19

*S.E.C. v. Yorkville Advisors, LLC,*
  305 F. Supp. 3d 486 (S.D.N.Y. 2018) ................................................................... 19

*United States v. Moss,*
  872 F.3d 304 (5th Cir. 2017) ................................................................................ 11

*United States v. Schiller,*
  81 F.4th 64 (2d Cir. 2023) .................................................................................... 15

*Upton v. S.E.C.,*
  75 F.3d 92 (2d Cir. 1996) ..................................................................................... 11

*Whitehead v. City of New York,*
  953 F. Supp. 2d 367 (E.D.N.Y. 2012) ..................................................................... 7

**SEC Administrative Proceedings**

*Black Diamond Asset Mgmt. LLC*,
   Advisers Act Release No. 4739 (Aug. 4, 2017) ........................................................ 17

*Marcos Tamayo & Bored At Work Retirement Servs.*,
   Advisers Act Release No. 5358 (Sept. 20, 2019) ..................................................... 12

*Retirehub, Inc. & Sunil K. Bhatia*,
   Advisers Act Rel. No. 3337 (Dec. 15, 2011)................................................... 17, 18

*Terry O'Neil Clifford*,
   Lit. Release No. 15503 (Sept. 19, 1997) ................................................................. 13

*Warwick Capital Mgmt., Inc.*, Advisers,
   Act Rel. No. 2694 (Jan. 16, 2008) ........................................................................... 18

**Statutes**

15 U.S.C. § 77o............................................................................................................ 16

15 U.S.C. § 78t............................................................................................................. 16

15 U.S.C. § 80b-3 ....................................................................................... 1, 7, 16, 17, 19

15 U.S.C. § 80b-3a......................................................................................... 1, 7, 17

15 U.S.C. § 80b-9 ................................................................................................... 16, 19

**Agency Guidance**

SEC, Staff of the Office of Investment Adviser Regulation, *Regulation of Investment
   Advisers by the Securities & Exchange Commission* (Mar. 2013) ........................... 11

Kevin J. Hughes, SEC Staff No-Action Letter (Dec. 7, 1983) .................................... 12

SEC, Response of the Office of Investment Adviser Regulation (Jan. 18, 2012) ........ 12

Advisers Act Release No. 688 (July 12, 1979)............................................................ 12

**Secondary Sources**

Andrew Ceresney *et al.*, "2nd Cir. Holding Could Disrupt SEC Disgorgement Methods,"
   Law360 (Nov. 16, 2023).......................................................................................... 21

Defendants Concord Management LLC ("Concord") and Michael Matlin respectfully submit this memorandum of law in support of their motion to dismiss (1) the failure-to-register claim asserted against Mr. Matlin and (2) the SEC's request for disgorgement.

## PRELIMINARY STATEMENT

The SEC has asserted only a single claim in this case: that Concord and Mr. Matlin allegedly violated Section 203(a) of the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b-3(a), by failing to register as investment advisers with the SEC. The SEC does not allege that, in not registering, either Concord or Mr. Matlin committed any fraud; acted knowingly, recklessly, or even negligently; harmed any victim; or did anything wrong other than not registering. The facts ultimately will demonstrate that under the applicable statute, Section 203A of the IAA, 15 U.S.C. § 80b-3a, and its implementing regulations and relevant guidance (collectively, the "Regulatory Framework"), Concord and Mr. Matlin were not required to register with the SEC as investment advisers, and in fact were *prohibited* from registering. The Regulatory Framework expressly contemplates unregistered advisers, expressly prohibits advisers from registering when, as here, they do not meet the requirements for registration, and expressly subjects advisers who register without meeting the requirements to potential enforcement actions.

No dispute exists that Concord was a consulting firm that provided research and due diligence services for potential hedge fund investments for a single client. Once the parties have completed discovery, the facts will confirm that Concord and Mr. Matlin did not engage in any of the activities that the Regulatory Framework indicates could require registration. Among other things, Concord did not (1) make investments itself; (2) make investment decisions for its client or have discretion to do so; (3) transfer, custody, or receive its client's money to make or redeem investments; (4) have control over its client's bank or brokerage accounts; (5) receive compensation predicated on the performance or value of its client's investments; or (6) execute

trades.  The facts also will show that no prior court opinion, administrative action, SEC Staff no-action letter, or other guidance exists that would have placed Concord and Mr. Matlin on notice that the SEC might claim that the services Concord performed required registration.

The facts further will demonstrate that Concord and its client were well-known to the SEC and the industry.  Concord's client was invested in some of the largest and most sophisticated hedge funds in the world.  The managers of these hedge funds (together with the hedge fund administrators with whom the managers worked) were themselves registered investment advisers regulated by the SEC and subject to SEC oversight and examinations.  Accordingly, discovery will show that the hedge funds — and the SEC — had transparency into Concord's client, including the client's investments.

Although establishing that Concord was not required to register will have to wait until after the SEC's disputed factual allegations are disproven through discovery, there are two aspects of the Complaint for which no disputed facts exist, for which the SEC's claims fail as a matter of law, and therefore, for which dismissal is warranted.

*First*, the SEC's sole claim against Mr. Matlin — alleging that he *personally* violated Section 203(a) by not registering *individually* as an investment adviser — should be dismissed because it is contrary to longstanding SEC policy to which the agency is bound.  The agency's settled policy is that when an individual's "advisory activities are undertaken *on the [firm's] behalf*," only the firm is subject to the IAA's registration requirement unless the adviser engaged in fraud or other misconduct related to their advisory services or is the mere alter ego of their associated advisory firm.  Pursuant to this policy, the SEC has pursued claims against individuals for not registering themselves only in those limited circumstances, none of which is alleged to exist here.

Indeed, the Complaint fails to allege that Mr. Matlin engaged in investment advisory activities on his own behalf (separate and apart from the work he performed on behalf of Concord), and in fact the SEC concedes he did not do so.  Nor does the Complaint allege that Mr. Matlin engaged in any fraud or other misconduct, which the SEC also concedes.  Moreover, the Complaint also lacks factual allegations to support an inference that Mr. Matlin and Concord were alter egos of one another.

Furthermore, although the SEC has mechanisms to pursue claims against individuals for their *associated firms'* failure to register — such as where the individuals "aided and abetted" or "caused" the firms' non-registration — the SEC has not alleged such a claim here because it has no basis to do so.  Such a claim would require the SEC to allege that Mr. Matlin acted with scienter in connection with Concord's supposed failure to register (*i.e.*, that he knowingly, recklessly, or negligently caused Concord not to register), which the SEC has not done.

Because the SEC knows it has no basis to hold Mr. Matlin responsible for Concord's alleged failure to register, the SEC is attempting to pursue a novel claim against Mr. Matlin predicated on his supposed failure to register individually.  The claim, however, is contrary to the SEC's settled policy on individual registration, represents an unlawful change in the SEC's enforcement policy that was not reasonably communicated to the public (and thus violates due process), and should be seen for what it is:  an improper end-run around the fact that the SEC has no basis to pursue a claim against Mr. Matlin individually based on Concord's alleged failure to register.

Because the SEC's claim against Mr. Matlin contravenes both (1) the bedrock principle of administrative law that agencies must follow their settled policies and may not depart from them unannounced, and (2) the fundamental principle of due process that precludes an agency

3

from upending an individual's reasonable expectations by bringing a novel claim against the individual that is inconsistent with the agency's settled policy, the claim should be dismissed.

*Second*, the SEC's request for disgorgement should be dismissed or, in the alternative, stricken, because (1) governing Supreme Court and Second Circuit authority confirms that disgorgement may only be awarded when the SEC can establish that the conduct at issue caused "pecuniary harm" to a "victim," *S.E.C. v. Govil*, 86 F.4th 89, 94, 98, 102–03, 106 (2d Cir. 2023) (citing *Liu v. S.E.C.*, 140 S. Ct. 1936, 1940, 1943–44 (2020)), and (2) no such victim or harm has been (or could be) alleged here.  Indeed, the SEC concedes that the Complaint does not identify a "victim," and the Complaint fails to allege any facts to support an inference that a "victim" exists who suffered "pecuniary harm" as a result of Concord and Mr. Matlin's alleged failure to register as investment advisers.  As a result, the SEC is not entitled to pursue the remedy of disgorgement.

## STATEMENT OF FACTS RELEVANT TO MOTION[1]

Concord is a Delaware limited liability company founded in 1999 by Mr. Matlin. (Compl. (Dkt. 1), ¶¶ 1, 13–14, 21.)  Concord maintained its offices in Tarrytown, New York. (*Id.* ¶ 13.)  Mr. Matlin owns Concord's membership interests and served as its managing member.  (*Id.* ¶¶ 6, 14.)  Concord "employed approximately a dozen investment professionals," including investment analysts and administrative personnel.  (*Id.* ¶¶ 1, 20, 22.)

Concord provided investment advice to one client, an Isle of Jersey entity identified in the Complaint as Company 1, whose ultimate beneficial owner ("UBO") during the relevant period is identified as UBO A.  (*Id.* ¶¶ 1, 15, 16.)  Concord operated pursuant to a "[C]onsulting

---

[1] Concord and Mr. Matlin dispute many of the facts alleged in the Complaint.  Solely for purposes of this motion, however, they assume the truth of the Complaint's "well-pleaded, nonconclusory factual allegations."  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[A]greement" with Company 1.  (*Id.* ¶ 67.)  The "consulting services" Concord provided to Company 1 included researching and conducting due diligence on potential investments (with a focus on hedge fund investments), engaging in "negotiations" with hedge fund representatives with respect to potential investments, recommending particular investments to the client, and, if the client elected to move forward with particular investments, "monitoring" the performance of the investments.  (*Id.* ¶¶ 22, 26, 30, 36, 51, 61, 67.)  When Concord's client (Company 1) decided to move forward with a recommended investment, the investment would be made through one of Company 1's subsidiary companies, which the Complaint refers to as the Investing Entities.  (*Id.* ¶¶ 16, 17.)

Mr. Matlin's job responsibilities at Concord included "supervis[ing] and direct[ing]" Concord's analysts with respect to their work, and "engag[ing] with them in analysis and development of investment advice" to provide to the client.  (*Id.* ¶ 22.)  When it came time to recommend an investment to the client, Mr. Matlin would communicate Concord's recommendation to a representative of the client, identified in the Complaint as Person B. (*Id.* ¶ 23.)

As the SEC acknowledges, neither Concord nor Mr. Matlin made investment decisions or had any discretionary authority with respect to its client's investments.  Rather, the client would consider Concord's recommendation and then independently decide whether to make a particular investment.  (*Id.* ¶¶ 36, 41, 46.)  Once the investment decision was made by the client, a United Kingdom entity identified in the Complaint as Company 2 — which provided "back-office administrative support services" to Company 1 — would "help[] facilitate the completion of [investment] transaction paperwork."  (*Id.* ¶¶ 18, 20, 42.)  Concord's alleged role in this process included circulating to Company 2 the subscription paperwork for each investment,

"communicat[ing] frequently with Company 2 and Concord employees to collaboratively ensure that documents for the approved transactions were" completed, and "review[ing] and comment[ing] on the executed documents before Company 2 staff submitted them" on behalf of Concord's client  (*Id.* ¶¶ 39, 42, 47.)

Once a decision to invest in a particular fund by Concord's client had been made, Company 2 — not Concord — "typically sent the executed documents and AML/KYC paperwork to the relevant fund adviser or fund administrator directly."  (*Id.* ¶ 48.)  Company 2 also was "responsible for ensuring that the Investing Entities sent wire transfer payments by the [investment] deadlines" (*id.* ¶ 49), and for keeping Concord informed with respect to "the cash available in the [client's] bank accounts" (*id.* ¶ 60).  Concord is not alleged to have received, custodied, or transferred money from its client for any investment purposes, nor is it alleged to have had control over its client's assets or accounts.

As provided for in the Consulting Agreement, Concord received compensation for its services through a "monthly consulting fee," together with an annual bonus and reimbursement of its expenses.  (*Id.* ¶¶ 4, 68.)  Neither Concord nor Mr. Matlin is alleged to have received compensation based on the performance of its client's investments, the number of transactions the client entered, or any other metric related to the value of the client's investments.  The Complaint does not allege that Concord's client — or anyone else — suffered any pecuniary harm at all.

## PROCEDURAL HISTORY

The SEC filed its Complaint on September 19, 2023.  (Dkt. 1.)  On December 1, 2023, Concord and Mr. Matlin filed a letter seeking a pre-motion conference with respect to the instant motion to dismiss (Dkt. 15), and on December 8, 2023, the SEC filed a response (Dkt. 17).  The Court held the pre-motion conference on January 11, 2024.

At the pre-motion conference, with respect to Mr. Matlin's anticipated motion to dismiss the claim asserted against him, we addressed the Court's questions about the motion, including by explaining that the motion presents a purely legal question — whether the SEC's policy on individual registration bars its failure-to-register claim asserted against Mr. Matlin — and that the motion does not raise any disputed factual issues. (01/11/2024 Tr. 3–5.) The SEC agreed no factual dispute exists as to the motion. (*Id.* at 6–7.)

With respect to the motion to dismiss or strike the SEC's claim for disgorgement in light of the Second Circuit's decision in *S.E.C. v. Govil* — which confirmed that disgorgement may be awarded only where there are "victims" who have "suffered pecuniary harm," 86 F.4th 89, 94 (2d Cir. 2023) — the Court asked the SEC whether any "victims" exist in this case, and the SEC conceded that the Complaint does not allege any. (01/11/2024 Tr. 10–11.) On January 24, 2024, the Second Circuit denied the SEC's petition for *en banc* review of *Govil*.

## STANDARD OF REVIEW

The SEC bears the burden of proving that an investment adviser was required to register under Section 203 of the IAA, 15 U.S.C. § 80b-3, and that the adviser was not prohibited from registering under Section 203A, *id.* § 80b-3a. The SEC's claim that Mr. Matlin was individually required to register thus should be dismissed unless the Complaint "contain[s] sufficient factual allegations, accepted as true, to state a [failure-to-register] claim [against him] that is plausible on its face." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013) (quotation marks omitted). "[M]ere legal conclusions, 'a formulaic recitation of the elements of a cause of action,' or 'naked assertions' by the [SEC] will not suffice." *Whitehead v. City of New York*, 953 F. Supp. 2d 367, 373 (E.D.N.Y. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The SEC also bears the burden of proving the factual predicate for disgorgement. *See S.E.C. v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013). Accordingly, the same pleading standard

applicable to the SEC's failure-to-register claim also applies to its request for disgorgement:  The SEC must allege facts sufficient to satisfy each element of disgorgement — including that a "victim" exists who "suffered pecuniary harm" as a result of Concord and Mr. Matlin's alleged failure to register.  *See, e.g.*, *Govil*, 86 F.4th at 94, 98.

## ARGUMENT

**I.      The SEC's Claim Asserted Against Mr. Matlin Violates Due Process Because It Is Contrary To Longstanding SEC Policy To Which the Agency Is Bound**

The SEC's sole claim asserted against Mr. Matlin is that he personally violated Section 203(a) of the IAA by not registering *individually* as an investment adviser.  (Compl. ¶¶ 90–91.) But under longstanding SEC policy, individuals like Mr. Matlin cannot be held liable for failing to register individually unless they are alleged to have (1) performed advisory services on their own behalf (as opposed to solely on behalf of their associated advisory firm), (2) engaged in fraud or other misconduct related to their advisory services, or (3) been the mere alter ego of their associated advisory firm.  Under settled principles of administrative law, the SEC is bound by its longstanding policy, and deviations from the policy will violate due process.

Importantly, the SEC's policy does not preclude the agency from pursuing failure-to-register claims against individuals in appropriate circumstances, such as when the SEC can allege facts sufficient to establish that the individuals engaged in conduct that brings them within one of the above categories.  Nor does the SEC's policy preclude the SEC from seeking to hold individuals liable for their associated advisory firms' alleged failure to register, if the SEC can allege facts sufficient to establish that the individuals are culpable for the failure to register, such as where the individuals "aided and abetted" or "caused" their firms' failure to register.

In the circumstances alleged here, however, no basis exists to pursue a failure-to-register claim against Mr. Matlin for not registering as an individual.  The Complaint does not allege that

Mr. Matlin provided investment advisory services on his own behalf, and in fact the SEC concedes the opposite:  that Mr. Matlin provided advisory services *only* through Concord and on Concord's behalf.  (Dkt. 17 at 1–2; 01/11/2024 Tr. 7, 11.)  Nor does the Complaint allege that Mr. Matlin engaged in any fraud or other misconduct in connection with his advisory services (or otherwise).  Mr. Matlin is not charged with a fraud-based violation, and the SEC concedes that it does not allege that Mr. Matlin did anything wrong beyond the mere act of not registering. (01/11/2024 Tr. 11.)  The Complaint also lacks factual allegations to support an inference that Mr. Matlin and Concord were alter egos of one another.

The Complaint likewise fails to allege facts sufficient to pursue a claim against Mr. Matlin for *Concord's* alleged failure to register.  A claim that Mr. Matlin "aided and abetted" Concord's alleged failure to register would require that the SEC allege that he knowingly or recklessly caused Concord's alleged violation, and no such allegations exist here. Similarly, a claim that Mr. Matlin "caused" Concord's alleged violation (1) may be asserted only in an SEC administrative proceeding, not in court, and (2) in any event, would require the SEC to allege that Mr. Matlin (at a minimum) negligently caused Concord's alleged failure to register, which the SEC does not (and cannot) allege here.  Unable to allege a basis to hold Mr. Matlin liable for *Concord's* alleged failure to register, the SEC cannot ignore its settled policy and seek to pursue a failure-to-register claim against Mr. Matlin *individually* under circumstances that fall outside the scope of its policy.

Because the SEC's failure-to-register claim against Mr. Matlin is incompatible with its established policy, it violates fundamental principles of due process.  Mr. Matlin did not have fair notice that the SEC would allege that his not registering individually violated Section 203(a) of the IAA.  Accordingly, the claim should be dismissed.

A.    **The SEC Is Bound By Its Settled Policy On Pursuing Failure-to-Register Claims Against Individuals**

Under bedrock principles of administrative law, when, as here, an agency "announces and follows — by rule or by settled course of adjudication — a general policy by which its exercise of discretion will be governed," it may not "depart[] from that policy" without a reasoned explanation.  *Salazar v. King*, 822 F.3d 61, 76–77 (2d Cir. 2016) (quoting *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)); *see Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 338 (S.D.N.Y. 2018) (agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books" (quoting *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009))).  Rather, when a settled policy exists, the agency is bound to follow it or to make an "avowed alteration" of it.  *Yueh–Shaio Yang*, 519 U.S. at 32; *see Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (agency must "provide a reasoned explanation for [a policy] change"); *Office of Commc'n of the Church of Christ v. FCC*, 560 F.2d 529, 532 (2d Cir. 1977) ("[C]hanges in [agency] policy must be rationally and explicitly justified in order to assure that the standard is being changed and not ignored, and that (the agency) is faithful and not indifferent to the rule of law." (internal quotation marks and alterations omitted)).

Agency policy may be set through regulations, as well as (and as relevant here) through (1) "informal agency guidance," *Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 605–06 (S.D.N.Y. 2019) (quoting *Yueh-Shaio Yang*, 519 U.S. at 32); and (2) a "settled course of adjudication," *Salazar*, 822 F.3d at76–77; *see ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) ("[A]gency practice [may] provide a meaningful standard by which [a] court may review" agency action).

The principle that an agency is bound by its settled policy is consistent with, and rooted in, "fundamental notions of fair play underlying the concept of due process." *Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991).  Indeed, the Second Circuit has held that the SEC "may not sanction [an individual] pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public." *Upton v. S.E.C.*, 75 F.3d 92, 98 (2d Cir. 1996).  When (as here) an agency asserts a claim that is contrary to its settled policy, courts have dismissed such claims on due process grounds.  *See, e.g.*, *C.F.T.C. v. EOX Holdings, L.L.C.*, 90 F.4th 439, 444–46 (5th Cir. 2024) (order vacating verdict where agency failed to provide fair notice of its interpretation of rule); *Gen. Elec. Co. v. E.P.A.*, 53 F.3d 1324, 1329–31, 1333–34 (D.C. Cir. 1995) (agency "did not provide [defendant] with fair warning of its interpretation of [relevant] regulations" where agency's "regulations and other policy statements [were] unclear," agency failed to "provide a definitive reading of the regulatory requirements," and agency used enforcement action "as the initial means for announcing a particular policy interpretation"); *see also United States v. Moss*, 872 F.3d 304 (5th Cir. 2017) (affirming dismissal of indictment where "due process bars courts from applying [the government's proposed] novel construction of a criminal statute").

**B.     The SEC's Settled Policy on Pursuing Failure-to-Register Claims Against Individuals Allows It to Pursue Such Claims Only in Limited Circumstances Not Present Here**

For decades, the SEC has followed a now well-settled policy — reflected in both agency guidance and longstanding agency practice — with respect to individual registration under the IAA.  Under the SEC's written guidance, when an individual's "advisory activities are undertaken *on the [firm's] behalf*," only the firm is subject to the IAA's registration requirement. *See* SEC, Staff of the Office of Investment Adviser Regulation, *Regulation of Investment Advisers by the [SEC]*, at 17 (Mar. 2013) ("Staff IAA Guidance"), at 17 & n.95 (emphasis

added).[2]  Only when the individual "acts as an investment adviser *on his own behalf*" is that

individual "required to be registered separately."  Kevin J. Hughes, SEC Staff No-Action Letter

(Dec. 7, 1983) (emphasis added)[3]; *see* SEC, Response of the Office of Investment Adviser

Regulation (Jan. 18, 2012) ("[T]he Commission and its staff have, as a matter of administrative

practice, not required natural persons associated with a registered adviser to themselves register

separately solely as a result of their activities as associated persons.")[4]; Advisers Act Release

No. 688 (July 12, 1979) (persons associated with registered adviser are "not [] required to

register as an adviser . . . solely as a result of [their] activities" as associated persons).[5]

In its implementation of this policy — *i.e.*, through a "settled course of adjudication" to

which the SEC is bound, *Salazar*, 822 F.3d at 76 — the SEC has pursued failure-to-register

claims against individuals (whether in federal court or in SEC administrative proceedings) only

in only three circumstances.

The first is the circumstance specified in the written guidance:  when the individual acts

on their own behalf (rather than on behalf of their advisory firm).  *See, e.g.*, *In re Marcos*

*Tamayo & Bored At Work Retirement Servs.*, Advisers Act Release No. 5358 (Sept. 20, 2019)

(failure-to-register claim asserted against individual for actions before he incorporated separate

entity); *S.E.C. v. Gillette*, No. 98-CV-1265, at ECF 1 ¶ 8 (S.D. Cal. Jul. 9, 1998) (complaint

alleging that "Gillette, either *individually* or through Pro Sports, solicited a number of his former

brokerage firm clients and others to hire Pro Sports to manage their money" (emphasis added)).

---

[2] Available at:  sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf.

[3] Available at:  brightlinesolutions.com/files/Plaze/NoAction%20Kevin%20Hughes%201983.pdf.

[4] Available at:  sec.gov/divisions/investment/noaction/2012/aba011812.htm.

[5] Available at:  brightlinesolutions.com/files/Plaze/Release%20IA-0688%20Cash%20Referral%20Fees.pdf.

The other two circumstances are closely related to the one specified in the written guidance:  (1) when the individual elects to act unlawfully in furtherance of their self-interest by engaging in fraud or other misconduct related to their advisory services, *see, e.g.*, *S.E.C. v. Wallace*, 94 F. Supp. 2d 1, 1 (D.D.C. 2000); *S.E.C. v. Kenton Cap., Ltd.*, 69 F. Supp. 2d 1, 4 (D.D.C. 1998); *S.E.C. v. Medsker*, No. C3-96-381 (S.D. Oh. 1996); *S.E.C. v. Fin. News Assocs.*, 1985 WL 25023, at *1 (E.D. Va. Apr. 26, 1985); and (2) when the individual is the alter ego of their associated advisory firm, *see, e.g.*, *S.E.C. v. Ferona*, No. 05-CV-621 (D. Colo. Jul. 15, 2005), at ECF 44 (SEC's assertion, in motion for default judgment, that defendant's D/B/As "have closed their offices and were never incorporated"); *In re Terry O'Neil Clifford*, Lit. Release No. 15503 (Sept. 19, 1997) (defendant violated IAA using unincorporated D/B/A); *S.E.C. v. Blavin*, 760 F.2d 706, 708 (6th Cir. 1985) (same).

Since the SEC first issued the above-referenced written guidance more than 40 years ago, we are not aware of the SEC having pursued claims against individuals for not registering themselves in any other circumstances.

### C.   The SEC's Failure-to-Register Claim Against Mr. Matlin Is Incompatible With Its Settled Policy On Pursuing Failure-to-Register Claims Against Individuals, and Thus Mr. Matlin Was Not Provided Fair Notice that the SEC Would Claim He Should Have Registered

None of the three circumstances in which, consistent with its decades-old policy, the SEC may pursue failure-to-register claims against individuals exists here.  As a result, the SEC's failure-to-register claim against Mr. Matlin contravenes the SEC's settled policy and violates Mr. Matlin's due process rights.

#### 1.   *The Complaint Does Not Allege that Mr. Matlin Provided Investment Advisory Services On His Own Behalf*

With respect to the first circumstance — when the individual acts on their own behalf (and not on behalf of their associated advisory firm) — the Complaint concedes that Mr. Matlin

provided investment advisory services exclusively on behalf of Concord.  The Complaint alleges

that Concord, not Mr. Matlin, entered into a "consulting agreement" with Concord's client "to

provide consulting services to" that client, and that Mr. Matlin's role was limited to performing

work *on Concord's behalf*.  (Compl. ¶ 67.)  For example, in his capacity as Concord's

"managing member," Mr. Matlin supervised Concord's analysts and other employees in

performing investment advisory tasks on behalf of Concord.  (*Id.* ¶¶ 14, 20–22, 24, 51, 55.)

By contrast, the Complaint does not (and could not) allege that Mr. Matlin provided

advisory services *on his own behalf*.  Indeed, Mr. Matlin is not alleged to have (1) had any client

separate from Concord's client, (2) provided consulting services for investments separate from

the investments Concord allegedly managed, (3) performed work separate from the services that

Concord is alleged to have provided, or (4) held himself out as an individual adviser.  Rather, the

Complaint alleges that Mr. Matlin represented himself as being associated with and employed by

Concord (*id.* ¶ 48), was compensated by Concord, not by Concord's client (*id.* ¶¶ 4, 69), and

engaged in advisory activities exclusively through Concord that depended on (and related solely

to) the work performed by him and other Concord employees on behalf of Concord (*id.* ¶¶ 37,

55–59).

Consistent with the Complaint's allegations, during the pre-motion conference that

preceded this motion, the SEC acknowledged that Mr. Matlin is not alleged to have provided any

advisory services separate from Concord.  (01/11/2024 Tr. 7, 11.)  Accordingly, far from

alleging facts sufficient to sustain a separate Section 203(a) failure-to-register claim against

Mr. Matlin — *i.e.*, facts sufficient to support an inference that he provided advisory services "on

his own behalf" — the Complaint alleges the opposite: that Concord's client's investments were

"managed . . . by a single advisory firm" (Concord), with Mr. Matlin and other Concord

employees performing services allegedly in furtherance of the "Concord . . . business operation." (Compl. ¶¶ 3, 22.)

In light of these undisputed allegations, if the Court ultimately concludes that Concord was *not* required to register and thus did not violate Section 203(a) by not registering — as we believe the facts will establish — then certainly no basis exists to suggest that *Mr. Matlin* was required to register individually or that he violated Section 203(a).  On the other hand, even if the SEC were somehow able to establish that Concord was required to register and violated Section 203(a) of the IAA by failing to do so (which it will not be able to do), then under the SEC's settled policy, Mr. Matlin — as a Concord employee and representative who is alleged to have undertaken advisory work solely on Concord's behalf — was not required to register individually and did not himself violate Section 203(a)'s registration requirement.  Accordingly, *in either case* — regardless whether Concord was required to register — the SEC's claim that Mr. Matlin was required to register individually is contrary to the agency's longstanding and settled policy to which it is bound, and thus should be dismissed.  *See United States v. Schiller*, 81 F.4th 64, 71 (2d Cir. 2023) (agency's failure to follow its own procedures can be raised as a defense to an enforcement action).

> ## 2.   *The Complaint Does Not Allege that Mr. Matlin Engaged in Fraud or Other Misconduct*

With respect to the second circumstance in which the SEC may pursue a failure-to-register claim against an individual for not registering individually — when the individual engages in fraud or other misconduct in connection with their advisory services — no such allegation exists in the Complaint (as to either Mr. Matlin or Concord), and the sole alleged claim is a non-fraud-based charge.  Indeed, the SEC concedes that it does not allege fraud or any other misconduct.  (01/11/2024 Tr. 11.)

   3.  *The Complaint Does Not Allege that Mr. Matlin Was the Alter Ego of*
       *Concord*

With respect to the final such circumstance — when the individual is the alter ego of their

associated advisory firm — the SEC has not alleged any facts to support an inference of alter ego

status.  For example, the Complaint does not allege that Mr. Matlin ignored corporate

formalities; that Mr. Matlin made personal use of Concord funds; or that Concord possessed any

other characteristic that could be cited to support an alter ego claim.  *See In re Parmalat Sec.*

*Litig.*, 375 F. Supp. 2d 278, 291–92 (S.D.N.Y. 2005).  That Mr. Matlin owned Concord's

membership interests (Compl. ¶ 14) is a common characteristic of limited liability companies,

and has no relevance standing alone to an alter ego analysis.  *Gater Assets Ltd. v. AO*

*Moldovagaz*, 2 F.4th 42, 58 (2d Cir. 2021).  Nor can Mr. Matlin's alleged membership interests

be used to support a "control person" theory of liability, both because the IAA does not provide

for such a theory of liability, and because no such theory has been alleged in the Complaint.

*Compare* 15 U.S.C. §§ 80b-3, 80b-9 (IAA enforcement provisions, which do not provide for

"control person" liability) *with* 15 U.S.C. §§ 77o, 78t (Securities Act and Exchange Act

provisions which, unlike the IAA provisions, do provide for "control person" liability).[6]  Indeed,

the SEC concedes that it is "not holding Mr. Matlin responsible as an owner for failure to

register."  (01/11/2024 Tr. 5.)

                            *        *        *

Put simply:  We are aware of no case *other than this one* — whether brought in federal

court or in an SEC administrative proceeding — in which the SEC has asserted a claim against

---

[6] The SEC has not asserted a claim based on a "control person" theory under the Securities Act or Exchange Act, because it lacks a factual basis to do so:  Such a claim would require the SEC to establish Mr. Matlin's "culpable participation" in Concord's alleged violation, which the SEC has not alleged and has no basis to allege.  *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

an individual for failing to register individually outside the limited circumstances described above.  Nor has the SEC provided any explanation — much less the required "reasoned explanation" — for the sharp break from its policy.  *E.g.*, *Encino Motorcars*, 579 U.S. at 221. The SEC's failure-to-register claim against Mr. Matlin thus marks an improper departure from the agency's settled policy to which it is bound, and should be dismissed.  *See, e.g.*, *Fox Television*, 556 U.S. at 515 (agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books"); *Gen. Elec.*, 53 F.3d at 1329–31, 1333–34 (D.C. Cir. 1995) (agency improperly used enforcement action "as the initial means for announcing a particular policy interpretation").

Further, because the SEC's claim violates the agency's settled policy on individual registration, Mr. Matlin cannot have had "fair notice" that the SEC would allege that his individual failure to register violated Section 203(a) of the IAA.  *Fox Television*, 567 U.S. at 253 ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.").  The SEC's failure-to-register claim against Mr. Matlin thus violates due process, and should be dismissed.  *Id.*

### D.     The IAA's Structure Confirms that the Court Must Enforce the SEC's Policy

The structure of the IAA underscores the importance of adhering to the SEC's settled policy as to individual registration, because non-adherence would be fundamentally unfair to non-registering individuals like Mr. Matlin.  The IAA requires that investment advisers register *only* when they meet the requirements for registration, *see* 15 U.S.C. § 80b-3(a), and crucially *prohibits* registration when the adviser does not meet the requirements, *see* 15 U.S.C. § 80b-3a. The SEC repeatedly has subjected advisers who improperly register to enforcement action.  *See, e.g.*, *S.E.C. v. Scott*, 2015 WL 13742024, at *11 (E.D.N.Y. July 15, 2015); *In re Black Diamond Asset Mgmt. LLC*, Advisers Act Release No. 4739 (Aug. 4, 2017); *Retirehub, Inc. & Sunil K.*

*Bhatia*, Advisers Act Rel. No. 3337 (Dec. 15, 2011); *Warwick Capital Mgmt., Inc.*, Advisers Act Rel. No. 2694 (Jan. 16, 2008).

Because the IAA prohibits advisers from improperly registering, individuals like Mr. Matlin cannot simply register in an abundance of caution.  Instead, they must rely on the SEC's guidance and settled course of conduct (through enforcement actions) regarding when an individual (like Mr. Matlin) associated with a firm (like Concord) must register under Section 203 (or must *not* register under Section 203A).  The SEC concedes that, had Concord registered, Mr. Matlin would have been entitled to rely on the firm's registration status and not register individually.  (01/11/2024 Tr. 5–6.)  By the same token, because Mr. Matlin never performed advisory services on his own behalf, never engaged in fraud or other misconduct, and was not the alter ego of Concord, he was prohibited from registering individually under Section 203A of the IAA, and was entitled to rely on the SEC's settled policy regarding individual registration (and indeed, had Mr. Matlin not relied on that policy and registered individually, he would have faced a potential enforcement action for improper registration).  Upending those settled expectations through this novel enforcement action would contravene "fundamental notions of fair play underlying the concept of due process."  *Montilla*, 926 F.2d at 167.

>        **E.      Although the SEC May Seek to Hold Individuals Liable for Their**
>                  **Associated Firms' Failure to Register Under Aiding-and-Abetting or**
>                  **Causation Theories, the SEC Has Not Pled Those Theories Here**
>                  **(and Has No Basis to Do So)**

Although the IAA permits the SEC to pursue claims against individuals for their associated firms' failure to register under two circumstances, the SEC did not pursue claims against Mr. Matlin for Concord's alleged failure to register here because neither circumstance applies.

The first circumstance is when a basis exists to allege that the individual "aided and abetted" the firm's failure to register.  15 U.S.C. § 80b-9(f); *S.E.C. v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018); *S.E.C. v. Nutmeg Group LLC*, 162 F. Supp. 3d 754 (N.D. Ill. 2016); *S.E.C. v. Westport Cap. Markets LLC*, 408 F. Supp. 3d 93 (D. Conn. 2019); *S.E.C .v. Landberg*, 836 F. Supp. 2d 148 (S.D.N.Y. 2011).  Here, however, the SEC has not asserted an aiding-and-abetting claim against Mr. Matlin.  Indeed, bringing such a claim would require the SEC to allege that Mr. Matlin knowingly or recklessly caused Concord's alleged violation of the IAA's registration requirement, *see Westport*, 408 F. Supp. 3d at 109, which the SEC has not alleged and knows could not be established here.

The second circumstance is when the individual "caused" the firm's failure to register. 15 U.S.C. § 80b-3(*i*)(B).  "Causing" liability, however, may be asserted in an SEC administrative proceeding only.  *Id.*  No authority exists for the SEC to bring an IAA claim premised on causing liability in an action brought in court, *see* 15 U.S.C. § 80b-9, and we have identified no case in which the SEC has brought such a claim in court.  Moreover, a causing liability claim would require the SEC to allege at a minimum that Mr. Matlin negligently caused Concord's alleged violation of the IAA's registration requirement, *see Howard v. S.E.C.*, 376 F.3d 1136, 1141 (D.C. Cir. 2004), which the SEC likewise has not alleged and knows could not be established here.[7]

Having failed to allege facts sufficient to state a claim against Mr. Matlin for Concord's alleged failure to register based on an aiding-or-abetting or causing theory of liability, the SEC cannot end-run its policy on pursuing failure-to-register claims against individuals by doing so against Mr. Matlin here.

---

[7] As noted, the IAA does not authorize claims against individuals premised on a "control person" theory of liability.

\*      \*      \*

Accordingly, for the foregoing reasons, the SEC's sole claim asserted against Mr. Matlin
— that he was individually required to register under Section 203(a) — is incompatible with the
agency's longstanding policy to which it is bound, and therefore must be dismissed.

## II.  The SEC's Request for Disgorgement Should Be Dismissed or Stricken Based on the SEC's Failure to Identify an Alleged "Victim" or "Pecuniary Harm"

The SEC's request for disgorgement (Compl. at 24) should be dismissed or, in the

alternative, stricken because (1) disgorgement may be awarded only when a "victim" exists who

has "suffered pecuniary harm," *Govil*, 86 F.4th at 94; and (2) no such victim or harm has been

(or could be) alleged here.[8]

In *Liu v. S.E.C.*, the Supreme Court held that disgorgement is a form of "equitable relief"

that must comport with "longstanding equitable limitations" and thus must be "awarded for

victims."  140 S. Ct. 1936, 1940, 1946 (2020).  The Second Circuit recently confirmed in *S.E.C.*

*v. Govil* that disgorgement may be awarded only when a "victim" exists, and only when a

"showing" has been made that the alleged victim has "suffered pecuniary harm as a result of the

fraud."  86 F.4th at 94, 98 (citing *Liu*, 140 S. Ct. at 1940).  The *Govil* court recognized that its

holding flowed not only from the Supreme Court's decision in *Liu*, but also from the Second

Circuit's prior decision in *S.E.C. v. Ahmed*, in which the Second Circuit held that "*Liu*'s

equitable limitations on disgorgement" remained in place following Congress's passing of a new

---

[8] Some courts evaluate motions directed at disgorgement as motions to dismiss and others as motions to strike, but
no practical difference exists between the two approaches.  Either way, disgorgement properly is removed as an
avenue of potential relief when, as here, the complaint fails to allege facts sufficient to make the legal showing
necessary to obtain the requested relief.  *See, e.g.*, *S.E.C. v. Morningstar Credit Ratings, LLC*, 578 F. Supp. 3d 563,
576–77 (S.D.N.Y. 2022) (dismissing request for injunctive relief); *Airport Mart Inc. v. Dunkin Donuts Franchising
LLC*, 2019 WL 4413052, at \*8 (S.D.N.Y. Sept. 16, 2019) (striking punitive damages claim where plaintiffs "do not
plausibly allege" necessary elements); *S.E.C. v. City of Victorville*, 2014 WL 12607683, at \*2 (C.D. Cal. Jan. 7,
2014) (striking disgorgement claim); *see also Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020) (construing
motion to dismiss requested relief as motion to strike and granting motion).

disgorgement statute in response to *Liu*, and confirmed that disgorgement is "awarded for victims." 72 F.4th 379, 396–97 (2d Cir. 2023).

Accordingly, under settled Supreme Court and Second Circuit law, to obtain disgorgement, the SEC must identify a "victim" who has "suffered pecuniary harm." *Govil*, 86 F.4th at 94. Therefore, for a request for disgorgement to survive a motion to dismiss, the SEC must plausibly allege the existence of such a victim. *See, e.g.*, *Morningstar*, 578 F. Supp. 3d at 576–77 (at pleading stage, dismissing SEC's requested relief where "the SEC has not plausibly asserted" facts supporting entitlement to relief); *S.E.C. v. Berry*, 2008 WL 4065865, at *9–10 (N.D. Cal. Aug. 27, 2008) (at pleading stage, striking SEC's request for disgorgement where the allegations were insufficient to suggest "the defendant [was] unjustly enriched").

Here, the Complaint neither identifies a "victim" nor alleges facts sufficient to support an inference that a victim exists. The Complaint also does not allege that anyone "suffered pecuniary harm" as a result of the alleged violation (Concord and Mr. Matlin's alleged failure to register as investment advisers). Indeed, when the Court asked the SEC during the January 11, 2024 conference "who are the victims here" and "[w]here is the allegation that there were victims here," the SEC conceded that no alleged victims exist, stating "[w]e have not alleged victims . . . in the traditional sense" (01/11/2024 Tr. 10), and then reiterating, "we certainly haven't alleged any type of traditional victims" (*id.* at 11).[9]

That the SEC cannot identify a victim is the result of the misguided nature of this case: The SEC is pursuing a non-fraud-based failure-to-register claim in a situation where it has not

---

[9] Indeed, a former SEC director of enforcement recently observed that the Complaint in this case is not reconcilable with *Govil*, and noted (consistent with Concord and Mr. Matlin's argument) that, on the facts alleged, "it is unclear how the [SEC] will be able to prove the existence of a 'victim,' . . . let alone pecuniary harm, under the *Govil* standard." Andrew Ceresney *et al.*, "2nd Cir. Holding Could Disrupt SEC Disgorgement Methods," Law360 (Nov. 16, 2023), available at: *law360.com/articles/1766272/2nd-circ-holding-could-disrupt-sec-disgorgement-methods*.

alleged (and has no basis to allege) that Concord and Mr. Matlin did anything wrong other not registering when they supposedly should have.  No dispute exists that Concord had one client (Compl. ¶¶ 1, 16), and that neither that client nor anyone else is a "victim" or "suffered pecuniary harm" as a result of the alleged conduct underlying this case.  *Govil*, 86 F.4th at 94.[10]

Because disgorgement "require[s]" the SEC to make a "showing" that a victim "suffered pecuniary harm," *id.* at 98, 106, and because the Complaint fails to allege facts sufficient to make such a showing, the claim for disgorgement should be dismissed or stricken, *see, e.g.*, *S.E.C v. Dalius*, 2019 WL 13178869, at *10 (C.D. Cal. Sept. 12, 2019); *Morningstar*, 578 F. Supp. 3d at 576–77; *Berry*, 2008 WL 4065865 at *9–10.[11]

---

[10] Even if the SEC's request for disgorgement did not fail at the pleading stage for lack of a "victim" who "suffered pecuniary harm," the SEC's request for disgorgement would fail on the merits for additional reasons, including that the SEC cannot establish — under the Supreme Court's holding in *Liu*, which limits disgorgement to the "net profits *from wrongdoing*" *Liu*, 140 S.Ct. at 1945–46 (emphasis added) — that Concord or Mr. Matlin received any "net profits" that were "causally connected" to the alleged violation.  *S.E.C. v. de Maison*, 2021 WL 5936385, at *2 (2d Cir. 2021) (summary order) (collecting cases).

[11] That *Govil* was decided at the remedial stage rather than at the pleading stage is immaterial, because *Govil*'s holding — that a "victim" that has "suffered pecuniary harm" is a prerequisite to disgorgement — is a generally applicable rule of law.  The *Govil* court did not limit its ruling to a particular phase of litigation, and no other basis exists to suggest that *Govil*'s holding applies only at the remedial phase.  To the contrary, the case law expressly provides that a court may "strike from the pleadings a request for relief if the allegations and claims asserted would not support that form of relief," as here.  *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 2023 WL 4211035, at *20 (S.D.N.Y. Jun. 27, 2023); *see Rosa v. TCC Comms., Inc.*, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016) (same); *see also Indyke*, 457 F. Supp. 3d at 285 (noting that there is "practical wisdom" in addressing a challenge to the requested relief at the pleading stage, because "there is value in clarifying the damages available . . . where the law permits a sure answer on this point").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the SEC's claim asserted against

Mr. Matlin, and dismiss or strike the SEC's request for disgorgement.

Dated: New York, New York
      February 8, 2024

                         MORVILLO, ABRAMOWITZ, GRAND,
                           IASON & ANELLO, P.C.

               By:   */s/ Benjamin S. Fischer*
                   Benjamin S. Fischer
                   Christopher B. Harwood
                   Kevin Grossinger
                   Peter Menz
                   565 Fifth Avenue
                   New York, NY 10017
                   (212) 856-9600
                   (212) 856-9494 (fax)

                   *Attorneys for Concord Management LLC and*
                   *Michael Matlin*