### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ ) | |
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 23-cv-8253 |
| ) | |
| v. ) | |
| ) | |
| CONCORD MANAGEMENT LLC and ) | |
| MICHAEL MATLIN, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Securities and Exchange Commission (the "Commission") submits this Opposition to Defendants' Motion to Dismiss.  Defendants' arguments fail for the reasons described below and Defendants' Motion should be denied.

### FACTUAL BACKGROUND

On September 19, 2023, the Commission brought a complaint against Defendants, Concord Management LLC ("Concord") and Michael Matlin ("Matlin") for failing to register as investment advisers in violation of Section 203(a) of the Investment Advisers Act of 1940 [15 U.S.C. s 80b-3(a)] (the "Advisers Act").  (Complaint "Complt." at Dkt. 1.)  The Complaint alleges that Matlin founded Concord in 1999 to provide investment advice for compensation, and to supervise and manage the investments of one Ultimate Beneficial Owner (referred to as "UBO A").  Complt. ¶ 21.  On a daily basis, Concord and Matlin provided continuous and regular supervisory or management services over UBO A's private fund securities portfolio.  Complt. ¶ 25.  This securities portfolio had an average value of several billion dollars.  Complt. ¶ 76.

Matlin supervised and directed the Concord investment analysts, and all investment advice to the client was communicated by him.  Complt. ¶ 22.  Neither Concord nor Matlin qualified for any exemption from registration under Section 203(b) of the Investment Advisers Act of 1940.  Id.  Yet neither Concord (the entity) nor Matlin (the individual) ever registered with the Commission as an investment adviser as required by the Advisers Act.  Id.  That failure to register is the basis for the Commission's action against Concord and Matlin.

## PROCEDURAL POSTURE AND STANDARD FOR REVIEW

On December 1, 2023, Defendants filed a pre-motion letter requesting a pre-motion conference regarding Concord and Matlin's anticipated motion to dismiss.  ECF No. 15.  On December 8, 2023, the Commission filed a pre-motion conference letter explaining its opposition to this anticipated motion to dismiss.  ECF No. 17.  Following a motion conference on January 11, 2024, where the Court granted Defendants' leave to file a Motion to Dismiss, Defendants, on February 8, 2024, served the Commission with a Notice of Motion to Dismiss and a Memorandum of Law in Support of the Motion.

On a motion to dismiss, the Court "'must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *Miller v. Wolpoff & Abramson LLP*, 321 F.3d 292, 300 (2d Cir. 2003) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).  Dismissal is not appropriate "'unless the court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief.'"  *Id.*

## ARGUMENT

### I.   Matlin Violated the Investment Advisers Act by Failing to Register with the SEC.

Defendants argue that the claims against Matlin individually should be dismissed "because it is contrary to longstanding policy to which the agency is bound."  (Opp. 2.) But there

is simply no support for the assertion that there is a long-standing, well-established SEC "policy" at issue, or that the only exceptions to the policy are the circumstances described by Defendants. (Opp. 8.).  Defendants point to no manual or guidance that outlines this purported policy for the SEC staff or for the public.  The only alleged articulation of the purported "policy" is derived from the footnote of a 2013 internal staff guidance and a mischaracterized quote in a 1983 no-action letter.  (Opp. 11-12.)  There is simply no policy that precludes the action brought here.  To the contrary, this is a straightforward application of the Advisers Act to the conduct of an individual that acted as an adviser without registering with the SEC.

A.    **Matlin was an Investment Adviser, and Neither He Nor Concord Registered with the SEC.**

The Complaint alleges that Matlin personally acted as UBO A's investment adviser, and that he alone communicated that investment advice to Person B, UBO A's representative.  Complt. ¶ 21-22.  No one else at Concord performed this task.  When Matlin expanded Concord to add investment analysts to help him manage the billions of dollars in assets under management, he personally supervised and directed their activities to develop investment advice that *he alone* delivered to UBO A's representative.  *Id.*   The Complaint alleges that there was no separation between Concord as an entity and Matlin as an individual.  Concord *was* Matlin and Matlin *was* Concord; Matlin was the 100% owner and sole managing member of Concord.  Complt. ¶ 14.  As a result, Matlin was required to register with the SEC.

Defendants point to the fact that, had Matlin registered Concord with the SEC, the registration of the entity would have covered his activities.  On this, there is no dispute.  While Matlin *could have* registered himself or his umbrella legal entity to meet his registration obligation, he did neither.  Matlin's failure to register Concord thus did not absolve him of his personal obligation to register.

3

The Commission has alleged that both Concord the entity and Matlin himself (the only individual authorized to act as or for Concord the entity) have violated the Advisers Act.  There is nothing novel about the application of the Advisers Act registration requirements to either or both of them.

**B.      There Is No SEC Policy that Was Violated by the Filing of the Complaint.**

Defendants repeatedly state, with almost no support, that there is a long-standing, well-established policy not to charge individuals with a failure to register if they are part of an entity. Neither of the materials cited by Defendants in their motion stand for the proposition that the Commission cannot bring an action against both the entity and the individual.  The first document Defendants cite is an educational outline describing the regulation of investment advisers compiled by SEC staff members in March 2013 that includes an express disclaimer that the views expressed are those of the staff and not the Commission.  Moreover, the portion cited, in context, simply lays out the undisputed premise that the registration of the firm generally covers all employees:

> Although many individuals who are employed by advisers fall within the definition of "investment adviser," the SEC generally does not require those individuals to register as advisers with the SEC.  Instead, the advisory firm must register with the SEC. The adviser's registration covers its employees and other persons under its control, provided that their advisory activities are undertaken on the adviser's behalf.[1]

This section of the outline simply does not say that there is a prohibition on holding both an individual and a firm responsible for a failure to register.

Similarly, the 2012 no action letter cited by Defendants does not provide authority to support Defendants' argument that the Commission is not permitted to hold Matlin personally

---

[1] Regulation of Investment Advisers by the U.S. Securities and Exchange Commission, March 2013, available at: https://www.sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf.

responsible for his failure to register.  The letter, published December 7, 1983, concerned a situation in which an individual was working for an advisory firm that had registered under the Advisers Act.  The portion of the letter Defendants rely on concerned a hypothetical about the impact of an individual working as an adviser on his own behalf.  It does not provide authority for the proposition that the *only* situation in which an investment adviser can be held individually responsible for not registering is when an individual is working at a registered investment advisory firm but also working on his own behalf.

Further, the Commission agrees that there is no allegation that Matlin engaged in providing investment services on his own behalf and/or separate from Concord, or that he engaged in fraud.  And Defendants are correct that the Commission is not proceeding under an aiding-and-abetting theory or an administrative "causing" theory.  This is a straightforward application of the Advisers Act to both an entity and the individual that controlled the entity. There is no "end run" around any settled policy here.  The only policy at issue is enforcing the registration requirements of the Advisers Act, requirements that have been in place for decades. There is thus no violation of due process for Matlin to be charged with this violation.

**C.**     **This Enforcement Action Serves the Act's Stated Legislative Purpose.**

As noted in the Commission's complaint, the Advisers Act serves to protect the securities markets and the national economy.  Complt. ¶ 71.  Congress adopted the Advisers Act based upon specific findings that "investment advisers are of national concern, in that, their advice, counsel, analyses and reports customarily relate to the purchase and sale of securities . . . . issued by companies engaged in business in interstate commerce . . . [and] the foregoing transactions occur in such volume as substantially to affect interstate commerce, national securities exchanges, and other securities markets, the national banking system and the national economy."

5

Complt. ¶ 71 n.1 (quoting 15 U.S.C. § 80b-1).  Since at least March 2012, investment advisers

with a principal office and place of business in New York have been required to register with the

Commission if they have assets under management exceeding $25 million.  *Id.*, ¶ 74.  In light of

this statutory threshold, the scale of Defendants' registration violation was enormous.  For

several years between 2017 and 2022, Defendants operated as unregistered investment advisers

while providing continuous and regular supervisory services for assets under management valued

at between five and seven billion dollars, or "more than 200 times the $25 million threshold for

registration."  *Id.*, ¶ 76.

Furthermore, this action is appropriately directed at the substance of Defendants' conduct

rather than the form they assumed.  What matters here is holding accountable the persons who

provided investment advice for compensation for billions of dollars in assets under management

while failing to register.  Matlin cannot and should not be allowed to evade liability merely

because he formed a limited liability company through which he violated the Advisers Act.  If

that were the case, Matlin's formation of Concord Management LLC would have made him

immune from accountability.  He could be dismissed from this case and commit violations with

impunity through the formation of new limited liability companies.  That result would not be

consistent with the requirements of the Advisers Act.  The Act does not have a registration

exemption for natural persons who act as investment advisers through unregistered limited

liability companies.

Indeed, Defendants concede, as they must, that there are prior cases in which the

Commission charged both an individual with failure to register as investment adviser as well as

the entity through which the individual acted.  *See, e.g., SEC v. Kenton Capital, Ltd.,* 69 F.

Supp.2d 1, 1 (D.D.C. 1998); *In re ABC Portfolio Development Group, Inc. and Frank C.*

*Carlson*, SEC Release No. 7080, 1994 WL 413871 (Aug. 9, 1994) (Order Instituting Proceedings against individual and corporate entity through which he acted for violating Section 203(a) of the Advisers Act). While these cases may have also involved charges of fraud, Defendants' assumption that enforcement of the registration requirement was permissible only where there was fraud is not supported by these cases or the Advisers Act. In these cases, the Commission brought separate, independent charges for failure to register and for the commission of fraud. *Kenton Capital, Ltd.*, 69 F. Supp.2d at 1, 4; *In re ABC Portfolio Development Group, Inc.*, SEC Release No. 7080, 1994 WL 413871. There is no suggestion in these cases that the Commission's charges for registration violations were dependent upon the defendants' commission of fraud. Moreover, the separate charges are consistent with the structure of the Advisers Act. The registration requirement and the anti-fraud provisions are separate sections. 15 U.S.C. §80b-3(a) (registration requirement); *id.*, § 80b-6 (anti-fraud provisions). Enforcement of the Act's registration requirement does not depend on the existence of fraud. And the fact that the Commission has brought prior enforcement actions for violations of both sections does not change the plain meaning of these statutory provisions.

### D.     Defendants' Due Process Claim Should Be Denied Because It Concerns Matters Outside the Allegations of the Complaint.

Finally, as a procedural matter, Defendants' due process allegations about "fair notice" are inappropriate for a motion to dismiss. Motions to dismiss under Rule 12(b)(6) focus on whether the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Given this focus, courts generally do not consider allegations outside the complaint. *See McCarthy v. Dun & Brad Street Corp.*, 482 F.3d 184, 191 (2d Cir.) (explaining that review is generally limited to allegations within the "four corners of the complaint"); *SEC v. O'Meally*, Civ. A. No. 06-6483-LTS, 2008 WL 4090461, *3-4 (S.D.N.Y. Sept. 3, 2008) (declining to

decide due process claim on motion to dismiss).  Here, however, Defendants' motion is based entirely on a due process claim alleging the purported existence of SEC policies that are not part of the complaint.  This type of due process claim is typically an affirmative defense adjudicated on the basis of a fully developed factual record, not on undeveloped assertions of what a party alleges happened.  *See Upton v. SEC*, 75 F.3d 92, 93 (2d Cir. 1996) (deciding due process claim on appeal after evidentiary hearing and final agency decision); *SEC v. Commonwealth Equity Services*, Civ. A. No. 1:19-cv-11655-IT, 2023 WL 2838691, *9 (D. Mass. Apr. 7, 2023) (adjudicating due process affirmative defense on summary judgment). Simply put, Defendants' allegations about whether they had "fair notice" of the obligation to register are not appropriate for a motion to dismiss.  *O'Meally*, 2008 WL 4090461, *3 (denying motion to dismiss alleging due process violation).

## II.    The Request to Dismiss or Strike a Potential Remedy is Premature.

It is simply too early to discuss the appropriate remedies for the violation.  Defendants gain nothing by advancing these arguments at this stage of the litigation.  Under the recent decision in *SEC v. Govil*, __ F. 4th __, 2023 WL 7137291 (2d Cir., October 31, 2023), the Second Circuit held that a district court at the remedial phase of a Commission action abused its discretion when it ordered disgorgement without finding that the victims in that case suffered pecuniary harm.  *Govil* does not provide a basis to dismiss a request for relief at the motion to dismiss stage of a litigation.  The parties should have the opportunity to evaluate and apply the facts of this case, and the developing law, before seeking a ruling on the appropriate remedies for the alleged violation.  *See*, *e.g.*, *SEC v. Caledonian Bank Ltd.*, 145 F. Supp.3d 290, 310 (2015) (denying motion to preclude SEC from seeking disgorgement as "premature" where defendant sought relief prior to determination of liability for securities law violation); *SEC v. Wall Street*

*Communications, Inc.*, No. 8:09-cv-1046, 2009 WL 2579310, *3 (M.D. Fla. Aug. 19, 2009)

(rejecting motion to dismiss arguments seeking to preclude remedies, including disgorgement,

finding them "premature at this stage"); *SEC v. Levin*, 232 F.R.D. 619, 625 (C.D. Cal. 2005)

(rejecting motion to strike claim for disgorgement finding issue "premature" at motion to dismiss

stage).

Dated: March 1, 2024

Respectfully submitted,

*Amy Harman Burkart*

Amy Harman Burkart
Richard M. Harper II
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-5905 (Burkart)
(617) 573-8979 (Harper)
BurkartA@sec.gov
HarperR@sec.gov