# Exhibit A

**UNITED STATES OF AMERICA**
Before the
**SECURITIES AND EXCHANGE COMMISSION**

INVESTMENT ADVISERS ACT OF 1940
Release No. 4739 / August 4, 2017

INVESTMENT COMPANY ACT OF 1940
Release No. 32776 / August 4, 2017

ADMINISTRATIVE PROCEEDING
File No. 3-18099

| | |
|---|---|
| **In the Matter of**<br><br>BLACK DIAMOND ASSET MANAGEMENT LLC<br><br>and<br><br>ROBERT WILSON,<br><br>**Respondents.** | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTIONS 203(e), 203(f), AND 203(k) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940 AND NOTICE OF HEARING |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 203(e), 203(f), and 203(k) of the Investment Advisers Act of 1940 ("Advisers Act") and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act") against Black Diamond Asset Management LLC ("Black Diamond") and Robert Wilson ("Wilson") (collectively "Respondents").

**II.**

After an investigation, the Division of Enforcement alleges that:

**A.   SUMMARY**

1.   In 2015, Wilson registered Black Diamond with the Commission as an investment adviser. In the initial Form ADV registration statement Wilson signed on Black Diamond's

behalf—as its managing member, chief compliance officer ("CCO"), and chief investment officer—Wilson claimed that Black Diamond held over $583 million in assets under management and at least 26 discretionary accounts.

2. In reality, Black Diamond has never obtained any advisory clients, has never held any assets under management, and has never met the minimum requirements for investment adviser registration with the Commission.

3. Through this and similar conduct, Wilson and Black Diamond violated anti-fraud and other provisions of the Advisers Act.

**B. RESPONDENTS**

4. **Wilson**, age 58 and a resident of Calverton, New York, is Black Diamond's sole managing member, chief investment officer, and CCO.

5. **Black Diamond**, formed by Wilson in 2013 as a Wyoming limited liability company, has no employees or owners other than Wilson. At all relevant times, Black Diamond has been located at Wilson's residence: first in Southampton, New York and later in Calverton, New York. Since March 10, 2015, Black Diamond has been registered with the Commission as an investment adviser.

**C. RESPONDENTS' FRAUD**

6. On March 10, 2015, on Black Diamond's behalf, Wilson filed a Form ADV registration statement ("2015 ADV"), which registered Black Diamond as an investment adviser with the Commission.

7. Wilson listed himself on the 2015 ADV as Black Diamond's managing member, CCO, and chief investment officer.

8. The 2015 ADV form informed Wilson that, to register with the Commission, Black Diamond had to fit into one of twelve enumerated categories of advisers eligible for Commission registration as an investment adviser.

9. As the 2015 ADV form specified, one of the enumerated categories rendering an investment adviser eligible for Commission registration was "a large advisory firm that…has regulatory assets under management of $100 million (in U.S. dollars) or more."

10. On Black Diamond's behalf, Wilson checked off the box corresponding to that category on the 2015 ADV.

11. The 2015 ADV form then asked, as to Black Diamond: "To approximately how many *clients* did you provide investment advisory services during your most recently completed fiscal year?" The form provided several ranges of client numbers, including "0," "1–10," "11–25," and "26–100."

12. In response, Wilson selected the answer "26–100" clients.

13. The 2015 ADV form then asked whether Black Diamond "provide[s] continuous and regular supervisory or management services to securities portfolios."

14. Among other things, the 2015 ADV form's instructions informed Wilson and Black Diamond: "You provide continuous and regular supervisory or management services with respect to an account if: (a) you have *discretionary authority* over and provide ongoing supervisory or management services with respect to the account, or (b) you do not have *discretionary authority* over the account, but you have ongoing responsibility to select or make recommendations, based upon the needs of the client, as to specific securities or other investments the account may purchase or sell and, if such recommendations are accepted by the *client*, you are responsible for arranging or effecting the purchase or sale."

15. In response to this question, Wilson responded "Yes"—that Black Diamond provided "regular supervisory or management services to securities portfolios."

16. The 2015 ADV form further asked Black Diamond "what is the amount of your regulatory assets under management and total number of accounts?"

17. The 2015 ADV form's instructions informed Wilson and Black Diamond: "In determining the amount of your regulatory assets under management, include the securities portfolios for which you provide continuous and regular supervisory or management services as of the date of filing this Form ADV."

18. In response, Wilson claimed that Black Diamond had $583,750,000 in assets under management and 26 accounts.

19. The 2015 ADV form also asked whether Black Diamond or any "related person" had any "discretionary authority to determine the (1) securities to be bought or sold for a *client's* account? (2) amount of securities to be bought or sold for a *client's* account? (3) broker or dealer to be used for a purchase or sale of securities for a *client's* account? [or] (4) commission rates to be paid to a broker or dealer for a client's securities transactions?"

20. Wilson replied yes to each of these four questions.

21. Wilson electronically signed the 2015 ADV. In doing so, he certified, for both himself and Black Diamond, "under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV…are true and correct."

22. On March 30, 2016, Wilson filed a second Form ADV for Black Diamond (the "2016 ADV").

23. Wilson again listed himself as Black Diamond's managing member, chief investment officer, and CCO.

24. Wilson provided his Calverton, New York street address as Black Diamond's address.

25. The 2016 ADV form asked Wilson to check a designated box "[i]f this address is a private residence."

26. Wilson did not check the designated box.

27. On the 2016 ADV, Wilson claimed that Black Diamond was a "mid-sized advisory firm that has regulatory assets under management of $25 million (in U.S. dollars) or more but less than $100 million (in U.S. dollars)."

28. Wilson again claimed that Black Diamond had "provide[d] investment advisory services during [its] most recently completed fiscal year" to "26–100" clients.

29. Wilson further claimed that Black Diamond had $25,690,900 in regulatory assets under management and 26 accounts.

30. Wilson electronically signed the 2016 ADV and certified, for both himself and Black Diamond, "under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV…are true and correct."

31. Contrary to Wilson's claims in Black Diamond's 2015 ADV and 2016 ADV, Black Diamond has never had any assets under management or any clients.

32. As the sole person employed by or acting on behalf of Black Diamond, Wilson knew or recklessly disregarded these facts.

33. Wilson used the 2015 ADV and the 2016 ADV to solicit potential investment advisory clients. Among other things, Wilson had sole responsibility for the content of Black Diamond's website, which contained general solicitations to retain Black Diamond as an investment adviser and links to Black Diamond's 2015 ADV and 2016 ADV. Wilson also solicited potential clients directly.

34. On its website, Black Diamond claimed to be in the business of advising clients on securities investments in exchange for a fee based on a percentage of the asset value of each client's account.

D.   **VIOLATIONS**

35. As a result of the conduct described above, Respondents Wilson and Black Diamond willfully violated Sections 206(1) and 206(2) of the Advisers Act, which prohibits fraudulent conduct by an investment adviser.

36. As a result of the conduct described above, Respondents Wilson and Black Diamond willfully violated Section 207 of the Advisers Act which makes it "unlawful for any person willfully to make any untrue statement of material fact in any registration application or report filed with the Commission under the Advisers Act … or willfully to omit to state in any such application or report any material fact which is required to be stated therein."

37. As a result of the conduct described above, Respondent Black Diamond willfully violated Section 203A of the Advisers Act which prohibits an adviser "regulated or required to be regulated in the [s]tate in which it maintains its principal office and place of business" from registering with the Commission, unless it "has assets under management of not less than $25,000,000….or…is an adviser to an investment company registered under" the Investment Company Act.

38. As a result of the conduct described above, Respondent Wilson willfully aided and abetted and caused Black Diamond's violations of Sections 203A, 206(1), 206(2), and 207 of the Advisers Act.

### III.

In view of the allegations made by the Division of Enforcement, the Commission deems it necessary and appropriate in the public interest that public administrative and cease-and-desist proceedings be instituted to determine:

A. Whether the allegations set forth in Section II hereof are true and, in connection therewith, to afford Respondents an opportunity to establish any defenses to such allegations;

B. What, if any, remedial action is appropriate in the public interest against Respondents pursuant to Section 203(e) and 203(f) of the Advisers Act including, but not limited to, civil penalties pursuant to Section 203 of the Advisers Act;

C. What, if any, remedial action is appropriate in the public interest against Respondents pursuant to Section 9(b) of the Investment Company Act including, but not limited to, civil penalties pursuant to Section 9 of the Investment Company Act; and

D. Whether, pursuant to Section 203(k) of the Advisers Act, Respondents should be ordered to cease and desist from committing or causing violations of and any future violations of Sections 203A, 206(1), 206(2), and 207 of the Advisers Act, and whether Respondents should be ordered to pay a civil penalty pursuant to Section 203(i) of the Advisers Act and Section 9(d) of the Investment Company Act.

### IV.

IT IS ORDERED that a public hearing for the purpose of taking evidence on the questions set forth in Section III hereof shall be convened not earlier than 30 days and not later than 60 days from service of this Order at a time and place to be fixed and before an Administrative Law Judge

to be designated by further order as provided by Rule 110 of the Commission's Rules of Practice, 17 C.F.R. § 201.110.

IT IS FURTHER ORDERED THAT Respondents shall file and Answer to the allegations contained in this Order within twenty (20) days after service of this Order, as provided by Rule 220 of the Commission's Rules of Practice, 17 C.F.R. § 201.220.

If Respondents fail to file the directed answer, or fail to appear at a hearing after being duly notified, the Respondents may be deemed in default and the proceedings may be determined against them upon consideration of this Order, the allegations of which may be deemed to be true as provided by Rules 155(a), 220(f), 221(f), and 310 of the Commission's Rules of Practice, 17 C.F.R. §§ 201.155(a), 201.220(f), 201.221(f) and 201.310.

This Order shall be served forthwith upon Respondents as provided for in the Commission's Rules of Practice.

IT IS FURTHER ORDERED that, pursuant to Rule 360(a)(2) of the Commission's Rules of Practice, 17 C.F.R. § 201.360(a)(2), the Administrative Law Judge shall issue an initial decision no later than 120 days from the occurrence of one of the following events:  (A) The completion of post-hearing briefing in a proceeding where the hearing has been completed; (B) Where the hearing officer has determined that no hearing is necessary, upon completion of briefing on a motion pursuant to Rule 250 of the Commission's Rules of Practice, 17 C.F.R. § 201.250; or (C) The determination by the hearing officer that a party is deemed to be in default under Rule 155 of the Commission's Rules of Practice, 17 C.F.R. § 201.155 and no hearing is necessary.

In the absence of an appropriate waiver, no officer or employee of the Commission engaged in the performance of investigative or prosecuting functions in this or any factually related proceeding will be permitted to participate or advise in the decision of this matter, except as witness or counsel in proceedings held pursuant to notice. Since this proceeding is not "rule making" with the meaning of Section 551 of the Administrative Procedure Act, it is not deemed subject to the provisions of Section 553 delaying the effective date of any final Commission action.

By the Commission.

Brent J. Fields
Secretary