**Exhibit B**

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

INVESTMENT ADVISERS ACT OF 1940
Release No. 5358 / September 20, 2019

INVESTMENT COMPANY ACT OF 1940
Release No. 33629 / September 20, 2019

ADMINISTRATIVE PROCEEDING
File No. 3-19474

| | |
|---|---|
| In the Matter of<br><br>MARCOS TAMAYO AND BORED AT WORK RETIREMENT SERVICES, LLC<br><br>Respondents. | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTIONS 203(e), 203(f), AND 203(k) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS, AND A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 203(e), 203(f), and 203(k) of the Investment Advisers Act of 1940 ("Advisers Act"), and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act"), against Marcos Tamayo and Bored at Work Retirement Services, LLC ("BAW Retirement Services") (collectively "Respondents").

**II.**

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 203(e), 203(f), and 203(k) of the Investment Advisers Act of 1940, and Section 9(b) of the Investment Company Act of 1940,

Making Findings, and Imposing Remedial Sanctions, and a Cease-and-Desist Order ("Order"), as set forth below.

### III.

On the basis of this Order and Respondents' Offer, the Commission finds that:

### Summary

This matter involves violations of the Advisers Act by Marcos Tamayo ("Tamayo"), a baggage handler for a nationwide airline company (the "Airline"), who provided investment advisory services to his colleagues from 2003 to 2017 while using the business name "Bored at Work." Tamayo's clients gave him online access to their Airline retirement accounts, which he used to select investments and make trades for a $300 annual fee. Tamayo's business started to grow rapidly at the end of 2015 after Facebook posts in which he claimed falsely to have nearly one million dollars in his own retirement account by showing a cropped image of a client's account statement. By the end of December 2016, Tamayo had more than $110 million in client retirement assets under management. When the State of Nevada ordered Tamayo to suspend his unlicensed investment advisory business in August 2017, he had more than 900 clients with accounts worth more than $172 million.

In addition to failing to register with the Commission as an investment adviser in violation of Section 203(a) of the Advisers Act, Tamayo made material misrepresentations to his clients by repeatedly and significantly overstating the value of his own retirement account and his assets under management in violation of Sections 206(1), 206(2) and 206(4) and Rule 206(4)-1(a)(5) of the Advisers Act, and violated Sections 204 and 206(4) and Rules 204-2, 204A-1, and 206(4)-7 by failing to keep required books and records or have required written code of ethics or policies and procedures. Tamayo and BAW Retirement Services also violated Section 207 of the Advisers Act by omitting Tamayo's disciplinary history with the State of Nevada in the Form ADV filing that BAW Retirement Services ultimately filed to register as an investment adviser with the Commission.

### Respondents

1.  Respondent Marcos Tamayo (also known as Marcos Tamayo Martinez) is 46 and resides in Las Vegas, Nevada. From approximately 2003 to August 2017, Tamayo ran an unregistered investment adviser business from his home using the business name "Bored at Work." In August 2017, Nevada issued a cease and desist order against Tamayo related to the same conduct referenced in this Order. Tamayo has never been registered as an investment adviser with any state or the Commission.

2.  Respondent Bored at Work Retirement Services, LLC ("BAW Retirement Services") is a Nevada limited liability company formed in 2018. Tamayo is a managing member and the majority owner.

### Background

3.  From 2000 through January 2017, Tamayo was employed as a baggage handler (or ramp agent) at the Airline. Tamayo learned about investing by taking classes at work and reading books during breaks at work, which was the source of his business name, "Bored at Work." In approximately 2003, Tamayo started managing the Airline retirement brokerage accounts for a few friends. For more than a decade, his business grew slowly by word of mouth.

4.  In early 2015, Tamayo was added to a Facebook group called "Selfie Showdown" with about 2,000 Airline employee members. Instead of posting a picture of himself, Tamayo posted a picture of a client's retirement account statement with a balance of about $825,000. Tamayo cropped the picture so that the individual's name was not shown and Airline employees assumed the account was his own.

5.  Yet Tamayo's own retirement account was nowhere near $825,000. When Tamayo left the Airline in 2017, he liquidated his retirement account – it was worth only $159,508. This liquidation value was the highest value for his account. As detailed below, from his initial posting in 2015 through suspending operations in 2017, Tamayo maintained the fiction that he was approaching $1 million in his retirement account.

6.  In October 2015, Tamayo started a Facebook group called the "Bored at Work Project." Tamayo's Bored at Work Facebook group rapidly grew to a couple thousand members; when he took down the page in January 2018, he had nearly 9,000 members. On this Facebook page, Tamayo answered questions about retirement investing and posted information about the Airline retirement plan. He also posted pictures of a color chart to encourage employees to reach a million dollars (orange) in retirement savings.

## Tamayo Was An Unregistered Investment Adviser

7.  Tamayo's business grew rapidly after he launched his first Facebook page in October 2015. When Airline employees contacted Tamayo to request that he manage their retirement accounts, he gave essentially the same description of his investment advisory business. He explained that he would "take over" their Airline retirement accounts, select their investments, and make their trades. Tamayo used a "market timing" strategy for the mutual funds he selected. He invested all of his clients' assets into a single mutual fund available through the Airline retirement platform, and then sold everything when he thought that the price was right. Tamayo then invested client accounts in a bond fund while waiting to choose the next investment.

8.  Tamayo made securities trades directly in his clients' accounts. First, Tamayo logged into a client's account to start the trade, then he had the broker-dealer's "activation code" sent to the client; he generally texted with the client to retrieve the code in order to finish the trade. Some clients instead added Tamayo's e-mail address to their account profiles so that the activation codes were sent directly to his e-mail.

9.  By the end of December 2016, Tamayo had more than $110 million in client assets under management. By August 2017 when he suspended operations, Tamayo had 934 investment

advisory clients who were invested through the Airline retirement program with accounts worth a total of more than $172 million.

11. 10. Tamayo charged an annual fee to his advisory clients, and by 2017 his fee was $300 per year. Between January and August 2017, Tamayo received more than $150,000 in advisory fees from his clients.

### Tamayo Made Material Misrepresentations To Advisory Clients

11. Tamayo routinely lied to prospective clients about the value of his personal Airline retirement account. Through Facebook Messenger, his conversations followed a pattern: he explained his investment advisory business and then stated that his own account was worth nearly a million dollars, sometimes even sharing pictures of the client's statement reflecting a value of nearly $1 million that he claimed as his own. Tamayo repeatedly touted his personal trading success and claimed that he would use the same trading strategies with his clients.

12. Tamayo launched his second Facebook page in January 2016. Tamayo used this private page to communicate with all of his clients at the same time, posting information about the current share price of their securities investments as well as details about specific trades. Tamayo, however, also used this social media account to lie to his clients about the value of his own Airline retirement account. For example, in April 2016, Tamayo posted a picture of an account statement with a value of $898,021 and added the comment, "so close, but yet so far." Then again in June 2016, Tamayo posted pictures of the color-coded folders he used to organize client files by account balance, with his name on the teal and navy, accompanied by the explanation "Teal = $800,000 bye bye, Navy = $900,000; Orange $1,000,000 coming to get u !!!!" and a hand-written note "Out with the Old & in with the New . . . on my way to the Orange folder ☺ $1,000,000."

13. Tamayo also exaggerated his assets under management. Through Facebook Messenger, he claimed between $190 million and $649 million in assets under management. Tamayo provided his clients and prospective clients with a guess of his assets under management and never calculated his assets under management until after Nevada issued its cease and desist order.

### Tamayo Failed To Have Required Books And Records Or Policies And Procedures

14. Tamayo maintained very limited information concerning his clients and business – nothing more than a client list and a color-coded folder for each client, organized by the value of the account. Each client folder contained his handwritten notes about (i) brokerage account information, like user name and password and (ii) contact information, like cellphone number, e-mail address and Airline employment location. Tamayo did not have any client correspondence or contemporaneous records of the trades in the clients' accounts. Tamayo had no written code of ethics and no written compliance policies or procedures.

### Tamayo And Bored At Work Retirement Services, LLC Filed A Form ADV With The Commission That Contained Material Misrepresentations

15.     After an investigation, the State of Nevada, Office of the Secretary of State, Securities Division, issued a "Summary Order to Cease and Desist" against Tamayo on August 15, 2017.  The cease and desist order found that Tamayo had violated Nevada law by acting as an unlicensed investment adviser and required Tamayo to stop operating his investment advisory business until properly licensed.

16.     In order to resume his investment advisory business, on May 24, 2018 Tamayo filed with the Commission a Form ADV for his new entity BAW Retirement Services.  However, he was not truthful about his disciplinary history in that filing.  Specifically, Form ADV Items 11.D.(1)-(5) asked whether there were prior investment-related actions, including by a "state regulatory agency."  Tamayo answered "no," which was clearly false in light of the Nevada cease and desist order.  On July 11, 2018, Tamayo withdrew the Form ADV.

### Unregistered Investment Adviser: Tamayo Violated Advisers Act Section 203(a)

17.     As a result of the conduct described above, between at least January 2017 and August 2017, Tamayo willfully violated Section 203(a) of the Advisers Act, which prohibits investment advisers from making use of the mails or any means or instrumentality of interstate commerce in connection with their business as investment advisers unless they are registered with the Commission.  No statutory exemptions to the registration requirement of Section 203(a), or prohibitions on registration, applied during the relevant period.

### Fraud: Tamayo Violated Advisers Act
### Sections 206(1), 206(2) and 206(4) & Rule 206(4)-1(a)(5)

18.     As a result of the conduct described above, since at least 2015, Tamayo willfully violated Sections 206(1) and 206(2) of the Advisers Act, which prohibit fraudulent conduct by an investment adviser, and Section 206(4) and Rule 206(4)-1(a)(5) thereunder, which prohibit an investment adviser from using any advertisement which contains any untrue statement of a material fact, or which is otherwise false or misleading.

### Books And Records & Code of Ethics: Tamayo Violated Advisers Act
### Section 204 & Rules 204-2 and 204A-1 Thereunder

19.     As a result of the conduct described above, Tamayo willfully violated Section 204 of the Advisers Act, and Rules 204-2 and 204A-1 thereunder, which require that investment advisers registered or required to be registered with the Commission make and keep certain books and records.  Rule 204-2 requires a memorandum of each order given by the investment adviser for the purchase or sale of any security, written communications received and sent relating to the placing of any order to purchase or sell any security, and evidence of the granting of discretionary authority by any client.  Rule 204A-1 requires investment advisers to establish a written code of ethics.

### Compliance Policies and Procedures: Tamayo Violated Advisors Act Section 206(4) & Rule 206(4)-7 Thereunder

20. As a result of the conduct described above, Tamayo willfully violated Section 206(4) and Rule 206(4)-(7) thereunder, which require investment advisers to adopt and implement written policies and procedures reasonably designed to prevent violation of the Advisers Act and rules thereunder.

### False Form ADV: Tamayo & BAW Retirement Services Violated Advisers Act Section 207

21. As a result of the conduct described above, Tamayo and BAW Retirement Services willfully violated Section 207 of the Advisers Act, which makes it "unlawful for any person willfully to make any untrue statement of a material fact in any registration application . . . filed with the Commission."

### Remedial Efforts

22. In determining to accept Respondents' Offer, the Commission considered their voluntary remedial acts undertaken. After the Nevada cease and desist order, Tamayo refunded more than $5,000 to clients. Consequently, Tamayo received net advisory fees in 2017 of $144,485.

### Undertakings

23. Respondents Tamayo and BAW Retirement Services undertake as follows:

*Notice to Advisory Clients.* Within 30 days of the entry of this Order, Respondents shall: (i) provide a copy of the Order to all persons who were advisory clients as of August 15, 2017 by mail, e-mail, or such other electronic method as may be acceptable to the Commission staff, together with a cover letter in a form not unacceptable to the Commission staff; and (ii) for a period of 12 months, post the Order on any Internet website, Facebook page, or other social media account controlled by Tamayo relating to securities investments.

*Certification of Compliance.* Respondents shall certify, in writing, compliance with the undertakings concerning notice to advisory clients, set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The evidence shall include the production of an electronic file with the contact information used to communicate with the clients. The Commission staff may make reasonable requests for further evidence of compliance, and Respondents agree to provide such evidence. The certification and supporting material shall be submitted to Katharine Zoladz, Assistant Regional Director, with a copy to the Office of Chief Counsel of the Enforcement Division, no later than sixty (60) days from the date of the completion of the undertaking.

*Affidavit.* Provide to the Commission, within 60 days after the end of the 12-month suspension period described above, an affidavit that he has complied fully with the sanctions described in Sections IV.D. and IV.E. below.

## IV.

In view of the foregoing, the Commission deems it appropriate, and in the public interest, to impose the sanctions agreed to in Respondents' Offer.

Accordingly, pursuant to Sections 203(e), 203(f), and 203(k) of the Advisers Act, and Section 9(b) of the Investment Company Act, it is hereby ORDERED that:

A.  Respondent Tamayo cease and desist from committing or causing any violations and any future violations of Sections 203(a), 204, 206(1), 206(2), 206(4) and 207 of the Advisers Act, and Rules 204-2, 204A-1 and 206(4)-1(a)(5) and 206(4)-7 thereunder.

B.  Respondent BAW Retirement Services cease and desist from committing or causing any violations and any future violations of Section 207 of the Advisers Act.

C.  Respondents Tamayo and BAW Retirement Services are censured.

D.  Respondent Tamayo be, and hereby is, suspended from association with any investment adviser, broker, dealer, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization for a period of 12 months, effective on the second Monday following the entry of this Order.

E.  Respondent Tamayo is prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter for a period of 12 months, effective on the second Monday following the entry of this Order.

F.  Respondent Tamayo shall, within 30 days of the entry of this Order, pay disgorgement of $144,485 and prejudgment interest of $9,803 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

G.  Respondent Tamayo shall, within 30 days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

H.  Payment must be made in one of the following ways:

   (1)  Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Tamayo as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Alka Patel, Associate Regional Director, Division of Enforcement, Securities and Exchange Commission, 444 S. Flower Street, Suite 900, Los Angeles, CA 90071.

I.  Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, a Fair Fund is created for the disgorgement, prejudgment interest and penalties referenced in paragraphs F and G, above.  Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, he shall not argue that he is entitled to, nor shall he benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

J.  Respondent shall comply with the undertakings enumerated in paragraph 23 above.

**V.**

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the findings in this Order are true and admitted by Respondent Tamayo, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondent of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.

Vanessa A. Countryman
Secretary