**Exhibit C**

**UNITED STATES OF AMERICA**
Before the
**SECURITIES AND EXCHANGE COMMISSION**

**INVESTMENT ADVISERS ACT OF 1940**
Release No. 3337 / December 15, 2011

**ADMINISTRATIVE PROCEEDING**
File No. 3-14666

| | |
|---|---|
| **In the Matter of**<br><br>　　**RETIREHUB, INC.**<br>　　**and SUNIL K. BHATIA,**<br><br>**Respondents.** | **ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTIONS 203(e), 203(f) AND 203(k) OF THE INVESTMENT ADVISERS ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940 ("Advisers Act") against RetireHub, Inc. (d/b/a RetireHub.com) ("RetireHub") and Sunil K. Bhatia ("Bhatia" and, together with RetireHub, "Respondents").

**II.**

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondents' Offer, the Commission finds that:

**SUMMARY**

This proceeding involves the making of statements that were untrue as to material facts and omissions of material facts on the uniform investment adviser application form, Form ADV, by RetireHub, an investment adviser registered with the Commission, and Sunil Bhatia, RetireHub's founder, chief executive officer, and chairman of the board. From at least May 7, 2003 to its withdrawal of registration on February 28, 2011, RetireHub's Form ADV inaccurately stated that it qualified for Commission registration, by stating that it was an "Internet investment adviser," a term that is specifically defined in Rule 203A-2(f) promulgated under the Advisers Act, and that it managed assets of more than $25 million.[1] In fact, RetireHub did not qualify as an Internet investment adviser and did not have $25 million in assets under management. RetireHub also overstated its number of accounts on Form ADV. Moreover, RetireHub failed to file its required annual amendments to Form ADV in 2004, 2006, 2007, and 2009.

**RESPONDENTS**

1.  RetireHub.com was an investment adviser registered with the Commission from May 7, 2003 through February 28, 2011. RetireHub was formerly known as LTSave, Inc. and Invesra.

2.  Sunil K. Bhatia was the founder, chief executive officer, and chairman of the board of RetireHub from at least 2003 to 2011. From October 1991 to September 1996, Bhatia was a vice president and registered representative of a broker-dealer/investment adviser registered with the Commission. From April 1998 to April 2001, he was the chief executive officer of a broker-dealer registered with the Commission. Bhatia, 53 years old, lives in Boston, Massachusetts.

**RESPONDENTS MISREPRESENTED RETIREHUB'S QUALIFICATIONS TO REGISTER WITH THE COMMISSION, ITS ASSETS UNDER MANAGEMENT, ITS NUMBER OF ACCOUNTS, AND THE NATURE OF ITS SERVICES**

3.  Between 2003 and 2010, RetireHub and Bhatia filed with the Commission Forms ADV with various materially inaccurate statements, including false bases for registration with the Commission. All of RetireHub's Forms ADV inaccurately stated that it was an "Internet investment adviser," and certain of its Forms ADV also inaccurately stated that (a) it had more than $25 million in assets under management; (b) the firm had

---

[1] All references to Rule 203A-2(f) refer to the version of the rule in effect when the violations occurred. Effective September 19, 2011, the Commission renumbered Rule 203A-2(f) as Rule 203A-2(e), but otherwise did not amend the requirements for an Internet investment adviser.

2

almost 1,000 accounts; and (c) it provided continuous and regular supervisory or management services to those accounts.

4.    In 2007, RetireHub obtained a contract with an employer group, a university.  In this three-year contract, RetireHub was to provide retirement investment consulting services to the university's employees who enrolled in the university's 403(b) retirement plan.  RetireHub's only clients came through this contract.

5.    From May 7, 2003 through May 2, 2008, RetireHub's Form ADV filings claimed that the firm was eligible for investment adviser registration with the Commission because it was an "Internet investment adviser."  To qualify as an Internet investment adviser, Advisers Act Rule 203A-2(f) requires that the adviser "provide investment advice to all of its clients exclusively through an interactive website, except that the investment adviser may provide investment advice to fewer than 15 clients through other means during the preceding twelve months."

6.    Contrary to what it represented in its filings, RetireHub was not an Internet investment adviser because it did not provide investment advice exclusively through its website.  Instead, RetireHub staff supplanted and overrode the investment advice generated by RetireHub's website and manually chose and executed trades in the accounts of its users.  Additionally, RetireHub employed on-campus representatives at the university who provided investment advice to university employees.  RetireHub provided investment advice in ways other than its website to more than the maximum of 14 people permitted under the Advisers Act rule.

7.    RetireHub did not meet the definition of an Internet investment adviser from 2003 to 2007 because it was not providing investment advice to users through an interactive website during that period of time.  It also did not meet the definition of an Internet investment adviser from 2007 to 2010 because it did not provide investment advice exclusively through a website, and advised more clients than permitted through face-to-face and telephone contacts.  RetireHub was therefore not eligible for registration with the Commission on that basis.

8.    At the time of the violations, Advisers Act Section 203A prohibited investment advisers from registering with the Commission unless they managed at least $25 million in assets or met a designated exemption.[2]  Advisers Act, Sections 203A(a)(1)(A) & 203A(c).  Advisers Act Section 203A(a)(2) defines "assets under management" as the "securities portfolios with respect to which an adviser provides

---

[2]  Effective July 21, 2011, Advisers Act Section 203A generally prohibits an adviser that has assets under management between $25 million and $100 million from registering with the Commission.  *See* Advisers Act Section 203A(a)(2) (amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank Act")); *Final Rule: Rules Implementing Amendments to the Investment Advisers Act of 1940,* Investment Advisers Act Release No. 3221 (June 22, 2011).

continuous and regular supervisory or management services."[3]  The instructions to Form ADV explain this definition and prescribe the method advisers must use to calculate assets under management.  From February 25, 2008 through March 29, 2010, RetireHub's Form ADV filings listed assets under management greater than $25 million as a basis for SEC registration.  In each of its filings during that time period, RetireHub stated that it had exactly $26 million in assets under management ($4 million in discretionary assets under management and $22 million in non-discretionary assets under management).  RetireHub improperly included assets of account holders for whom RetireHub did not provide continuous and regular supervisory or management services.  RetireHub did not have any assets that fit the definition of assets under management in the Form ADV instructions.

9.  RetireHub included on its Forms ADV $22 million in non-discretionary assets under management that consisted of its "self-managed" accounts.  In reality, for these accounts RetireHub merely made recommendations for investments and it was the client's responsibility to accept the recommendations or not, and to effect any purchases or sales of securities.  The instructions for Form ADV provide general criteria and additional factors to consider in determining whether an adviser provides "continuous and regular supervisory or management services" to an advisory account and may, therefore, include the value of the securities portfolios in that account when calculating the adviser's assets under management.  RetireHub did not meet the general criteria for non-discretionary accounts because it does not have ongoing responsibility to select or make investment recommendations <u>and</u> to effect or arrange for the purchase and sale of those investments if they are accepted by the client.  Form ADV: Instructions for Part 1A, instr. 5.b.  RetireHub also did not meet any of the additional factors provided in the instructions to Form ADV.  Thus, RetireHub did not provide continuous and regular supervisory or management services to those accounts and was not entitled to include the $22 million value of the securities portfolios in those accounts as non-discretionary assets under management.  Accordingly, RetireHub was not entitled to register with the SEC as an adviser with greater than $25 million in assets under management.

10.  RetireHub's Forms ADV listed $4 million in discretionary assets under management that consisted of its "managed" accounts.  In reality, RetireHub provided only investment rebalancing at the beginning of an account holder's use of the site and quarterly thereafter for these accounts.  RetireHub did not provide the continuous and regular advisory services necessary to qualify its discretionary accounts as assets under management.  Form ADV Instructions concerning "Continuous and Regular Supervisory or Management Services" state that "You <u>do not</u> provide continuous and regular supervisory or management services for an account if you: … (d) provide advice on an intermittent or periodic basis (such as... on a specific date (e.g., the account is reviewed and adjusted quarterly))."  Form ADV: Instructions for Part 1A, instr. 5.b.(3).  To be included as an adviser's assets under management, the account must receive continuous and regular supervisory or management services.  Section 203A(a)(2); Form ADV: Instructions for Part

---

[3]  All references to Advisers Act Section 203A(a)(2) refer to the version of the statute in effect when the violations occurred.  Effective July 21, 2011, Advisers Act Section 203A(a)(2) was renumbered as Section 203A(a)(3), but the definition of "assets under management" was not amended.  *See* Advisers Act Section 203A(a)(3) (amended by the Dodd-Frank Act).

1A, instr. 5.b. Thus, it was improper for RetireHub to count the $4 million in assets of these accounts toward assets under management.

11. Accordingly, none of the assets from RetireHub's accounts should have been counted toward its assets under management in its Form ADV filings. RetireHub never had $25 million or more in advisory assets under management and therefore was not eligible for registration on that basis.

12. RetireHub's Form ADV filings on May 7, 2003; May 13, 2003; February 25, 2008; May 2, 2008; and March 29, 2010, stated that RetireHub provided continuous and regular supervisory services to its clients in response to Part 1A, Item 5F(1). Those responses were untrue as to a material fact.

13. RetireHub listed inflated numbers of accounts on its Forms ADV filed on February 25, 2008; May 2, 2008; and March 29, 2010. On each of those Forms ADV, in Part 1A, Item 5F, it listed between 357 and 975 total accounts (26 of which were identified as discretionary accounts). Bhatia admitted that RetireHub included all of the people who had begun the internet registration process but had not completed it or given RetireHub access to their investment information and accounts, and that RetireHub had not given these people investment advice. Thus, RetireHub's Form ADV filings contained inaccurate information concerning the number of its accounts.

14. RetireHub did not file the required annual Form ADV amendments in 2004, 2006, 2007 and 2009.

15. As a result of the conduct described above, RetireHub willfully violated Section 203A of the Advisers Act by improperly registering with the Commission, and Bhatia willfully aided and abetted and caused RetireHub's violations.

16. As a result of the conduct described above, RetireHub and Bhatia willfully violated Section 207 of the Advisers Act by making untrue statements of material facts in registration applications or reports RetireHub filed with the Commission and willfully omitting to state in such applications or reports material facts which were required to be stated therein.

17. As a result of the conduct described above, RetireHub willfully violated Section 204 of the Advisers Act and Rule 204-1 thereunder by failing to file annual amendments to RetireHub's Form ADV, and Bhatia willfully aided and abetted and caused RetireHub's violations.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents' Offer.

Accordingly, pursuant to Sections 203(e), 203(f) and 203(k) of the Advisers Act, it is hereby ORDERED that:

A. Respondents RetireHub and Bhatia cease and desist from committing or causing any violations and any future violations of Sections 203A, 204, and 207 of the Advisers Act and Rule 204-1 promulgated thereunder.

B. Respondents RetireHub and Bhatia are censured.

C. Respondent Bhatia shall pay a civil money penalty in the amount of $25,000 to the United States Treasury. Respondent Bhatia shall satisfy this obligation by paying (1) $6,250 within ten (10) business days from the entry of this Order; (2) $6,250 within 90 days from the entry of this Order; (3) $6,250 within 180 days from the entry of this Order; and (4) $6,250 within 270 days from the entry of this Order. If any payment is not made by the date the payment is required by this Order, the entire outstanding balance of civil penalties, plus any additional interest accrued pursuant to 31 U.S.C. § 3717, shall be due and payable immediately, without further application. Such payment shall be: (A) made by wire transfer, United States postal money order, certified check, bank cashier's check or bank money order; (B) made payable to the Securities and Exchange Commission; (C) hand-delivered or mailed to the Securities and Exchange Commission, Office of Financial Management, 100 F St., NE, Stop 6042, Washington, DC 20549; and (D) submitted under cover letter that identifies Bhatia as a Respondent in these proceedings, the file number of these proceedings, a copy of which cover letter and wire transfer, money order or check shall be sent to John T. Dugan, Associate Regional Director, Division of Enforcement, United States Securities and Exchange Commission, Boston Regional Office, 33 Arch Street, Boston, MA 02110.

By the Commission.

Elizabeth M. Murphy
Secretary