**Exhibit I**

Release No. 688 (S.E.C. Release No.), Release No. IA - 688, 17 S.E.C. Docket 1293, 1979 WL 174269

Securities and Exchange Commission (S.E.C.)
Investment Advisers Act of 1940

SECURITIES AND EXCHANGE COMMISSION (S.E.C.)

Requirements Governing Payments of Cash Referral Fees by Investment Advisers

July 12, 1979

**\*1** AGENCY: Securities and Exchange Commission.

ACTION: Adoption of rules.

SUMMARY: The Commission is (1) adopting a new rule ("cash referral fee rule") under the Investment Advisers Act of 1940 ("Advisers Act") which makes it unlawful, except under specified circumstances and subject to certain conditions, for an investment adviser to make a cash payment to a person ("solicitor") who directly or indirectly solicits any client for, or refers any client to, an investment adviser, and (2) amending the recordkeeping rule under the Advisers Act to require an investment adviser to maintain certain records relating to the solicitation of clients under the cash referral fee rule.

EFFECTIVE DATE: September 30, 1979.

FOR FURTHER INFORMATION CONTACT: Michael J. Eizelman, Esq. or Thomas D. Maher, Esq. (202-755-3507), Office of Investment Adviser Regulation, Division of Investment Management, Securities and Exchange Commission, 500 North Capitol Street, Washington, D.C. 20549.

SUPPLEMENTARY INFORMATION: On February 2, 1978, the Commission issued a notice (Investment Advisers Act Release No. 615)[1] that it had under consideration the adoption of a new Rule 206(4)-3[2] under the Advisers Act[3] which would set forth conditions under which an investment adviser could pay a cash referral fee to a person who solicits clients for him. The Commission also indicated that, as an alternative, it was considering a rule which would completely prohibit cash payments by investment advisers to persons who solicit cash payments by investment advisers to persons who solicit clients for them.

As stated in Advisers Act Release No. 615, the Commission has received interpretive requests concerning the applicability of the Advisers Act to arrangements pursuant to which an investment adviser compensates another person for recommending the adviser to a client or prospective client. In view of the frequency of such requests, the conflicts of interest presented by such arrangements, and the failure of the Advisers Act to address specifically the propriety of such arrangements, the Commission determined that it would be useful, both for the Commission and the investment advisory industry, to institute a rulemaking proceeding addressing the applicability of the Advisers Act to cash payments for such referral services.[4]

Upon consideration of the public comments, the Commission determined not to adopt a rule totally prohibiting the payment of cash referral fees by investment advisers, but instead to adopt new Rule 206(4)-3 delimiting the circumstances under which an investment adviser, directly or indirectly, may pay such a fee to someone who, directly or indirectly, solicits clients for, or refers clients to, the adviser. Rule 206(4)-3 prohibits any investment adviser required to be registered pursuant to Section 203 of the Advisers Act from making a cash referral fee payment to a solicitor unless certain conditions, which are described below, are satisfied.[5]

DISCUSSION

I. Cash Referral Fees

**\*2** Proposed Prohibition. The initial issue presented by the Commission in Advisers Act Release No. 615 was whether payment of cash referral fees should be prohibited, or instead permitted subject to regulatory safeguards. The overwhelming majority of commentators favored the regulation of cash referral fees.

Many commentators expressed the view that reasonable disclosed cash referral fees, like expenditures for advertising and other methods of developing new business, should be considered to be an acceptable part of an investment adviser's overhead. A total prohibition, it was said, might have anti-competitive consequences since large investment advisers with in-house sales staffs would have an advantage over smaller advisers, and this advantage would not necessarily bear any relationship to the quality and price of the service offered. In addition, some commentators maintained that a total prohibition on cash referral fees would place investment advisers at a disadvantage with respect to banks, insurance companies, and broker-dealers. It was also suggested that a prohibition of cash fees might lead to use of other, possibly undisclosed, methods of compensation, such as directed brokerage. [6]

On the other hand, a few commentators contended that the payment of cash referral fees involves unacceptable conflicts of interest and should not be permitted under any circumstances. Although referral fee arrangements pose conflict of interest problems, the Commission is not persuaded that such arrangements are necessarily fraudulent and therefore should be prohibited. Rather, the Commission is of the view that, with appropriate regulatory safeguards, the payment of cash referral fees can be permitted consistent with the protection of investors, and that an outright prohibition of such fees would unnecessarily restrict the ability of investment advisers to make their services known to potential clients. [7] Accordingly, the Commission has determined to adopt proposed Rule 206(4)-3 with modifications discussed below.

Cash referral fee rule. Paragraph (a) of Rule 206(4)-3 limits the circumstances under which an investment adviser may pay a cash referral fee, directly or indirectly, to a solicitor. A solicitor is defined in paragraph (d)(1) of the rule as "any person who, directly or indirectly, solicits any client for, or refers any client to, an investment adviser." [8] The rule as adopted also contains a definition of "client," in paragraph (d)(2), to make clear that that term includes prospective clients.

The rule applies to any investment adviser required to be registered pursuant to Section 203 of the Advisers Act. [9] It prohibits the payment of cash referral fees to solicitors unless four conditions are met. The first three conditions apply to all cash referral fee payments subject to the rule.

The first condition, set forth in paragraph (a)(1)(i) of the rule, is that the investment adviser be registered under the Advisers Act. Accordingly, the rule prohibits cash referral fee payments to a solicitor by an investment adviser required to be registered but who is not so registered.

**\*3** The second condition, set forth in paragraph (a)(1)(ii), prohibits payment of cash referral fees to a solicitor who is subject to a statutory disqualification. The solicitor cannot be a person (i) subject to a Commission order issued under Section 203(f) of the Advisers Act [15 U.S.C. 80b-3(f)], or (ii) convicted within the previous ten years of any felony or misdemeanor involving conduct described in Section 203(e)(2)(A)-(D) of the Advisers Act or (iii) who has been found by the Commission to have engaged, or has been convicted of engaging, in any of the conduct specified in paragraphs (1), (4), or (5) of Section 203(e) of the Advisers Act, or (iv) is subject to an order, judgment or decree described in Section 203(e)(3) of the Advisers Act [15 U.S.C. 80b-3(e)(1)-(5)]. [10]

The third condition, set forth in paragraph (a)(1)(iii), requires cash referral fees to be paid pursuant to a written agreement to which the investment adviser is a party. The written agreement must be kept as part of the investment adviser's books and records, pursuant to paragraph (a)(10) of Rule 204-2 under the Advisers Act. [11]

The fourth condition is stated in the alternative. Even if the first three conditions are met, cash referral fee payments are still prohibited unless they are made in one of three circumstances specified in this final condition. These circumstances are discussed below.

Impersonal advisory services. The first circumstance, set forth in paragraph (a)(2)(i) of the rule, relates to impersonal advisory services. This paragraph permits such payments to be made to a solicitor who solicits clients only for the provision of impersonal advisory services. The term "impersonal advisory services" is defined in paragraph (d)(3) of the rule to mean (i) written materials or oral statements which do not purport to meet the objectives or needs of specific clients, (ii) statistical information containing no expression of opinions as to the investment merits of particular securities, or (iii) any combination of the foregoing services.

Under this paragraph, a registered investment adviser who offers any impersonal advisory services may pay cash referral fees to solicitors. In addition, a registered investment adviser who offers a full line of advisory services, including impersonal services, may pay cash referral fees to a solicitor whose solicitation activities relate exclusively to the investment adviser's impersonal advisory services. On the other hand, an investment adviser would not be permitted under paragraph (a)(2)(i) of the rule to pay cash referral fees to a solicitor whose solicitation activities were not limited to the adviser's impersonaly advisory services, even though the client might ultimately receive only impersonal advisory services. [12]

This exclusion for impersonal advisory services reflects the Commission's understanding that prospective clients normally would be aware that a person selling such services was a salesman who was paid to do so. The proposed exemption was supported by almost all commentators who addressed it and it is being adopted with only minor changes. However, instead of a total exemption from the requirements of the rule, cash referral fees can be paid pursuant to paragraph (a)(2)(i) only if the three conditions in paragraph (a)(1) are met. That is, such payments can only be made by a registered investment adviser, pursuant to a written agreement, to a solicitor who would not be subject to a statutory disqualification under Section 203(e) or (f) of the Advisers Act.

**\*4** Persons affiliated with the adviser. Paragraph (a)(2)(iii) of the rule sets forth the second circumstance when a registered investment adviser may pay a cash referral fee. Under this provision, an investment adviser may pay such a fee to a solicitor who is (i) a partner, officer, director or employee of the adviser or (ii) a partner, officer, director or employee of a company which controls, is controlled by, or is under common control with, such investment adviser. As a condition of cash referral fees being paid, the solicitor must disclose his status as partner, officer, director or employee of the investment adviser or the company which controls, is controlled by, or is under common control with the investment adviser. If the solicitor is associated with such an affiliated company rather than with the investment adviser directly, the nature of the affiliation between that company and the investment adviser must also be disclosed. [13]

This paragraph represents a change from the proposed rule. As proposed, Rule 206(4)-3(a)(1) would have excluded from the written disclosure provisions of the rule only employees of the investment adviser whose primary duties relate to the investment advisory business of the adviser or who were clearly identified as sales representatives for the adviser. The reason for limiting the exemption to such employees or sales representatives of the adviser was that prospective clients would be aware of the natural predilection of such employees to recommend their employers, whether or not the client received specific disclosure that the employee would be compensated for bringing in new business.

The narrowness of the exemption as proposed was criticized by a number of commentators. It was argued that the rule would present difficulties in classifying employees, and that the employee's bias and the likelihood of compensation would be apparent to prospective clients regardless of the employee's normal duties. Commentators also suggested that the exemption from written disclosure and recordkeeping requirements should be extended to persons associated with certain affiliates of the adviser when the affiliation is disclosed to the client. It was argued that there is little basis for assuming that potential clients will be any less aware of the inherent bias when an employee recommends an adviser who is a person associated with his employer than when he recommends the advisory services of his own employer.

In light of the comments, the Commission has concluded that the objective circumstances surrounding all employees of the adviser and certain close affiliates are such as to ensure that prospective clients would be aware of the solicitor's bias. As long as a client is aware that the recommended adviser is the solicitor's employer or a close affiliate of the solicitor's employer, there appears to be little need to require the imposition of additional disclosure and recordkeeping requirements regardless of the specific duties of the solicitor. Therefore, the rule as adopted does not impose such additional requirements with respect to payments made to any solicitor who is a partner, officer, director or employee of the recommended adviser and who is identified as such, or who is a partner, officer, director or employee of a company controlling, controlled by, or under common control with the investment adviser, provided that there is disclosure of the solicitor's relationship with the company and of that company's relationship with the recommended investment adviser.

*5 Third party solicitors. The third circumstance in which cash referral fees may be paid in set forth in paragraph (a)(2)(iii) of the rule. This provision governs payments to solicitors (for other than impersonal advisory services) who are not partners, officers, directors or employees of the adviser or a person closely affiliated with the adviser. This provision has been substantially modified in response to public comments.

Under paragraph (a)(2)(iii)(A) as adopted, an investment adviser may pay a cash fee to a solicitor if the investment adviser enters into a written agreement with the solicitor which (i) describes the solicitation activities to be engaged in on behalf of the adviser, (ii) contains an undertaking by the solicitor to perform his duties under the agreement in a manner consistent with the instructions of the investment adviser and the provisions of the Advisers Act and rules thereunder, and (iii) requires that the solicitor, at the time of the solicitation, deliver to the client a current copy of the adviser's written disclosure statement ("brochure") required by Rule 204-3 [17 CFR 275.204-3] (the "brochure rule") and a separate written disclosure document containing the information required by paragraph (b) of the rule, which is described below.

In addition, paragraph (a)(2)(iii)(B) requires the investment adviser to receive from the client, prior to or at the time of entering into any written or oral investment advisory contract with such client, a signed and dated acknowledgement of receipt of the investment adviser's brochure and the solicitor's written disclosure document. As proposed, the rule would have required that the acknowledgement be received prior to the inception of the advisory relationship. In response to comments, the rule has been amended to require receipt of the acknowledgement no later than, but not necessarily prior to, the inception of the advisory relationship.

The proposed rule did not contain a provision requiring the solicitor to deliver a copy of the adviser's brochure, since the Commission had not yet adopted Rule 204-3 requiring the delivery of a brochure. The Commission believes that the requirement that the solicitor deliver a current copy of the adviser's brochure will be useful to clients and will not impose an undue burden upon solicitors or investment advisers. [14] Furthermore, delivery of a brochure by the solicitor will, in most cases, satisfy the investment adviser's obligation to deliver a brochure to the client under Rule 204-3.

Finally, paragraph (a)(2)(iii)(C) requires the investment adviser to make a bona fide effort to ascertain whether the solicitor is in compliance with the terms of the agreement and to have a reasonable basis for believing that the solicitor is in compliance.

The proposed rule would have required the investment adviser to supervise the solicitation activities of the solicitor "as if the solicitor were one of its own employees." This requirement was criticized by a number of commentators, many of whom argued that it was impractical and might be inconsistent with a solicitor's status as an independent contractor. The Commission now recognizes that this proposed provision may be somewhat impractical in light of the circumstances. Nevertheless, the Commission believes that supervision is necessary to protect the interests of investors. Sufficient protection can be achieved by requiring that the adviser make a bona fide effort to ascertain that the solicitor has complied with the agreement entered into pursuant to the rule, and that the adviser take appropriate action if the solicitor has not so complied, without requiring that the adviser supervise the solicitor as if he were one of the adviser's own employees.

*6  The questions of what would constitute such a bona fide effort would, of course, depend upon the circumstances. In general, however, it would seem that such a bona fide effort would, at a minimum, involve making inquiries of some or all clients referred by the solicitor in order to ascertain whether the solicitor has made improper representations or has otherwise violated the agreement with the investment adviser.

As proposed in Advisers Act Release No. 615, the rule would have required the periodic delivery of an updated disclosure statement if additional fees were to be paid with respect to an advisory agreement which was extended beyond the period of the initial advisory agreement or beyond one year, whichever was less, notwithstanding that the terms of such fee arrangement, including its duration, had been disclosed in the disclosure statement initially furnished to the advisory client. This requirement was criticized as imposing a substantial administrative burden which was unnecessary because of the simple nature of the matter disclosed.

Upon consideration, the Commission agrees and has decided to require disclosure of the fee arrangement only at the time of the solicitation regardless of the nature of the fee to be paid. The disclosure of the solicitor's financial interest in the client's choice of an investment adviser is important at the time the solicitation in order for the client to evaluate properly the solicitor's recommendation. However, the client's decision to continue an advisory relationship, once established, will presumably be based upon the solicitor's prior recommendation or the continuing nature of the solicitor's compensation for that recommendation. [15]

Deleted from the final rule is a paragraph that would have required the adviser to have a reasonable belief that the client is capable of evaluating the information in the disclosure document. Several commentators suggested, and the Commission agrees, that it can reasonably be assumed that advisory clients are capable of evaluating the fact that the solicitor is to receive a fee for the solicitation of the client, and that a specific requirement in this regard is unnecessary.

Content of written disclosure document. Paragraph (b) of the rule specifies the content of the disclosure document to be given to prospective clients by the third party solicitor. The disclosure document must include the name of the solicitor, the name of the investment adviser, and the nature of the relationship between the solicitor and the investment adviser. In addition, this document must disclose the fact that the solicitor will receive compensation, the terms of the compensation arrangement, and indicate whether the client will pay a specific charge or a higher advisory fee because a solicitor recommended the investment adviser to the client.

The content of the disclosure document is substantially unchanged from the rule as proposed. Despite the criticism of some commentators, the Commission believes that the terms of the compensation paid or to be paid to the solicitor are relevant to a prospective client's evaluation of the solicitor's recommendation. Thus, if a specific amount of compensation were being paid, that amount would be required to be disclosed. If, instead of a specific amount, the solicitor's compensation was to take the form of a percentage of the total advisory fee over a period of time, that percentage and the time period would have to be disclosed. If all, or part, of the solicitor's compensation is deferred or it contingent upon some future event, such as the client's continuation or renewal of the advisory relationship or agreement, such terms would also have to be disclosed. Investment advisers and solicitors who intend to rely upon the cash referral fee rule are reminded, and the rule specifically provides in paragraph (c), that nothing in the rule is to be deemed to relieve any investment adviser or solicitor of any fiduciary or other obligation which he may have under any law. [16]

II. Recordkeeping Requirements

*7  In proposing the cash referral fee rule, the Commission also proposed a related amendment to Rule 204-2 under the Advisers Act, the recordkeeping rule. That amendment is being adopted in somewhat modified form.

Rule 204-2(a)(10) currently requires an investment adviser to keep, for five years, copies of all written agreements relating to the business of the investment adviser as such. Since the written agreements with solicitors entered into under the newly adopted

cash referral fee rule will relate to the business of the investment adviser, they will be subject to the recordkeeping provisions of Rule 204-2(a)(10) and an amendment to the recordkeeping requirements with respect to such agreements is unnecessary.

The cash referral fee rule requires an adviser to receive from a client referred by a third party solicitor an acknowledgement that the client has received from the solicitor a copy of the adviser's current brochure and a separate written disclosure document containing the information required by paragraph (b) of Rule 206(4)-3. The Commission is amending Rule 204-2 by adding a new paragraph (a)(15), requiring that an investment adviser keep copies of both such client acknowledgements and the written disclosure statements furnished by solicitors. [17]

III. Status of Solicitors under the Advisers Act

As noted in Advisers Act Release No. 615, certain staff interpretative positions concerning the applicability of the Advisers Act to referral arrangements have stated that a solicitor must either be registered under the Advisors Act or a person associated with an investment adviser [18] as defined in Section 202(a)(17) of the Advisers Act [15 U.S.C. 80b-2(a)(17)]. [19] In that release the Commission expressed the view that a solicitor who engaged in solicitation activities in accordance with paragraph (a)(3) of the proposed rule would be a person associated with an investment adviser and therefore would not be required to register as an adviser under the Advisers Act solely as a result of those activities. The Commission's view that such solicitors would be associated persons of an adviser was based upon the investment adviser's responsibility to supervise the activities of the solicitors. Since the rule as adopted also contains a requirement, albeit somewhat different from the one contained in the proposed rule, that an investment adviser oversee the activities of third party solicitors, and since such a solicitor's activities would be conducted in accordance with his agreement with the investment adviser, the Commission is of the view that a solicitor who engages in solicitation activities in accordance with paragraph (a)(2)(iii) of the rule being adopted will be, at least with respect to those activities, an associated person of an investment adviser and therefore will not be required to register individually under the Advisers Act solely as a result of those activities. [20]

IV. Effective Date

Certain of the requirements in the new cash referral fee rule relate to brochures prepared by investment advisers pursuant to Rule 204-3. That rule does not be become effective until July 31, 1979. In addition, the Commission anticipates that investment advisers will want to review their solicitation arrangements and, where necessary, conform such arrangements to the rule. Therefore, the effective date of new Rule 206(4)-3 and the accompanying amendments to Rule 204-2(a) is being delayed until September 30, 1979.

AUTHORITY

*8 AUTHORITY: The Commission hereby amends Rule 204-2(a) and adopts Rule 206(4)-3 pursuant to the authority contained in Sections 204, 206, and 211 of the Advisers Act [15 U.S.C. 80b-4, 80b-6 and 80b-11(a)].

COMMISSION ACTION

PART 275—RULES AND REGULATIONS, INVESTMENT ADVISERS ACT OF 1940

Part 275 of Chapter II of Title 17 of the Code of Federal Regulations is amended as follows:

1. By adding paragraph (a)(15) to §275.204-2 to read as follows:

> §275.204-2 Books and records to be maintained by investment advisers.

(a) * * *

(15) All written acknowledgements of receipt obtained from clients pursuant to §275.206(4)-3(a)(2) (iii)(B) of this chapter and copies of the disclosure documents delivered to clients by solicitors pursuant to §275.206(4)-3 of this chapter.

2. By adding §275.206(4)-3 to read as follows *

§275.206(4)-3 Cash payments for client solicitations.

(a) It shall be unlawful for any investment adviser required to be registered pursuant to Section 203 of the Act to pay a cash fee, directly or indirectly, to a solicitor with respect to solicitation activities unless:

(1) (i) the investment adviser is registered under the Act;

(ii) The solicitor is not a person (A) subject to a Commission order issued under Section 203(f) of the Act, or (B) convicted within the previous ten years of any felony or misdemeanor involving conduct described in Section 203(e)(2)(A)-(D) of the Act or (C) who has been found by the Commission to have engaged, or has been convicted of engaging, in any of the conduct specified in paragraphs (1), (4) or (5) of Section 203(e) of the Act, or (D) is subject to an order, judgment or decree described in Section 203(e)(3) or the Act; and

(iii) such cash fee is paid pursuant to a written agreement to which the adviser is a party; and

NOTE: The investment adviser shall retain a copy of each written agreement required by this paragraph as part of the records required to be kept under § 204-2(a)(10) of this chapter.

(2) such cash fee is paid to a solicitor:

(i) with respect to solicitation activities for the provision of imperson advisory services only; or

(ii) who is (A) a partner, officer, director or employee of such investment advisor or (B) a partner, officer, director or employee of a person which controls, is controlled by, or is under common control with such investment adviser; provided that that status of such solicitor as a partner, officer, director or employee of such investment adviser or other person, and any affiliation between the investment adviser and such other person, is disclosed to the client at the time of the solicitation or referral; or

(iii) other than a solicitor specified in paragraph (a)(2)(i) or (ii) above if all of the following conditions are met:

(A) The written agreement required by paragraph (a)(1)(iii) of this section: (1) describes the solicitation activities to be engaged in by the solicitor on behalf of the investment adviser and the compensation to be received therefor; (2) contains an undertaking by the solicitor to perform his duties under the agreement in a manner consistent with the instructions of the investment adviser and the provisions of the Act and the rules thereunder; (3) requires that the solicitor, at the time of any solicitation activities for which compensation is paid or to be paid by the investment adviser, provide the client with a current copy of the investment adviser's written disclosure statement required by §275.204-3 of this chapter ("brochure rule") and a separate written disclosure document described in paragraph (b) of this rule.

 *9  (B) The investment adviser receives from the client, prior to, or at the time of, entering into any written or oral investment advisory contract with such client, a signed and dated acknowledgement of receipt of the investment adviser's written disclosure statement and the solicitor's written disclosure document.

NOTE: The investment adviser shall retain a copy of each such acknowledgement and solicitor disclosure document as part of the records required to be kept under §204-2(a)(15) of this chapter.

(C) The investment adviser makes a bona fide effort to ascertain whether the solicitor has complied with the agreement, and has a reasonable basis for believing that the solicitor has so complied.

(b) The separate written disclosure document required to be furnished by the solicitor to the client pursuant to this section shall contain the following information:

(1) The name of the solicitor;

(2) The name of the investment adviser;

(3) The nature of the relationship, including any affiliation, between the solicitor and the investment adviser;

(4) A statement that the solicitor will be compensated for his solicitation services by the investment adviser;

(5) The terms of such compensation arrangement, including a description of the compensation paid or to be paid to the solicitor, and

(6) The amount, if any, for the cost of obtaining his account the client will be charged in addition to the advisory fee, and the differential, if any, among clients with respect to the amount or level of advisory fees charged by the investment adviser if such differential is attributable to the existence of any arrangement pursuant to which the investment adviser has agreed to compensate the solicitor for soliciting clients for, or referring clients to, the investment adviser.

(c) Nothing in this section shall be deemed to relieve any person of any fiduciary or other obligation to which such person may be subject under the law.

(d) For purposes of this section,

(1) "Solicitor" means any person who, directly or indirectly, solicits any client for, or refer any client to, an investment adviser.

(2) "Client" includes any prospective client.

(3) "Impersonal advisory services" means investment advisory services provided solely by means of (i) written materials or oral statements which do not purport to meet the objectives or needs of the specific client, (ii) statistical information containing no expressions of opinions as to the investment merits of particular securities, or (iii) any combination of the foregoing services.

By the Commission.
George A. Fitzsimmons
Secretary

---

**Footnotes**

1      43 FR 6095, February 13, 1978.

2   17 CFR 275.206(4)-3. The Commission also proposed an amendment to Rule 204-2 under the Act [17 CFR 275.204-2] to require an investment adviser to maintain certain records relating to the solicitation on clients under proposed Rule 206(4)-3.

3   15 U.S.C. 80b-1, et seq.

4   The release specifically did not address the question of when, if at all, persons referring clients to investment advisers could properly be compensated by means of directed brokerage, rather than cash payments. As noted in Advisers Act Release No. 615, the cash referral fee rule should not be taken as an indication that the use of clients' brokerage to pay referral fees is proper.

5   The Commission is also amending Rule 204-2 under the Advisers Act to require that the adviser maintain copies of disclosure documents furnished by solicitors and acknowledgements received by clients. Furthermore, copies of the agreement between the adviser and the solicitor must be maintained under existing paragraph (a)(10) of Rule 204-2.

6   See note 4 supra.

7   One commentator suggested that the rule should take the form of a safe harbor. In support of this position, it was argued that the interests of investors in connection with solicitation activities might be protected by means other than those specified in the rule, and that such other means should not be precluded since they might be preferable from a business standpoint. However, because of the potential for abuse which exists in connection with payments for solicitation services, the Commission believes that specific regulatory safeguards are needed and that for that reason a safe harbor rule in this area would not be appropriate.

8   This definition is similar to that contained in the proposed rule. It has been modified slightly, in part to make clear that a person could be a solicitor within the meaning of the rule if he supplies the names of clients to an investment adviser, even if he does not specifically recommend to the client that he retain that adviser.

9   Some commentators suggested that the rule should apply to all advisers, whether registered or not. In most if not all cases, however, an adviser who engaged a solicitor would be holding himself out as an investment adviser and thus would not be excepted from registration under Section 203(b)(3) of the Advisers Act [15 U.S.C. 80b-3(b)(3)], which is the most commonly relied upon exception from registration, even if he had fewer than fifteen clients during the preceding twelve months.

10  The statutory disqualification condition has been modified in response to comment letters which objected to certain portions of the proposed language as being, among other things, unduly vague.

    As noted in Advisers Act Release No. 615, a finding that a person has engaged in the conduct specified in Section 203 only authorizes and does not require the Commission to bar such persons from being associated with a registered investment adviser. The Commission would entertain, and be prepared to grant in appropriate circumstances, requests for permission to engage as a solicitor a person subject to a statutory bar.

11  This and other recordkeeping requirements relating to cash referral fees are discussed infra.

12  For example, an investment adviser who manages client accounts and publishes an advisory newsletter might engage a solicitor to solicit persons with respect to either or both of these services. The adviser could pay a fee under paragraph (a)(2)(i) of the rule if the solicitor recommended only the newsletter to a prospective client. If the solicitor recommended both the account management and newsletter services of the adviser to a client, a referral fee could not be paid pursuant to paragraph (a)(2)(i) even if the client decided to purchase the newsletter only. A fee might be paid, however, pursuant to the provisions of paragraph (a)(2)(iii) which sets forth the conditions applicable to fees paid to third party solicitors for other than impersonal advisory services.

13  An investment adviser is reminded that existing provisions of Advisers Act's recordkeeping requirements may apply to solicitation activities engaged in under paragraph (a)(2)(ii) of the rule. Thus, for example, the written agreement required in paragraph (a)(1)(iii) must be maintained as part of an investment advisers' books and records pursuant to paragraph (a)(10) of Rule 204-2. In addition, an investment adviser is required pursuant to paragraph (a)(12) of Rule 204-2 to maintain a record of securities transactions of any person who is an "advisory representative" as defined in that rule.

14  It should be noted that, even if the information required in the solicitor's written disclosure statement is contained in the investment adviser's brochure, that information would nonetheless have to be supplied to the client in a separate document. The Commission believes that such separate disclosure is necessary in order to ensure that the client's attention will be directed to the fact that a cash referral fee is being paid.

15  However, if the solicitor received separate compensation, in addition to that which had previously been disclosed, for recommending that the client continue an advisory relationship already established, that would constitute payment for another distinct solicitation and all the requirements of the rule would again have to be complied with.

16  The rule is not intended to suggest the scope and nature of any obligations an adviser or solicitor might have under the securities laws or under other laws. For this reason, and in response to a comment, the rule as adopted omits the proposed rule's reference to a solicitor's obligation to recommend an adviser "best suited" to a client. With respect to the possible relevance of other laws, the Commission notes that, where the solicited client is a pension plan or other employee benefit plan, payment of a fee to the solicitor might, depending upon the circumstances, result in a prohibited transaction under the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code of 1954 (Code). The rule being adopted of course provides no relief from ERISA or the Code.

17  The adviser's brochure must be retained pursuant to existing paragraph (a)(14) of Rule 204-2.

18  E.g., Connecticut Investment Management Inc., January 12, 1977; G. Serafini Investment Consultants, Inc., October 28, 1976; and Evaluation Associates, Inc., June 21, 1976. Under certain limited circumstances, however, the staff has taken no-action positions whereby it has not insisted upon registration of solicitors who would not otherwise be deemed to be a person associated with the adviser. See, e.g., Old Boston Management Corporation, July 8, 1977; Clifford Shaw & Associates, Inc., October 27, 1976; and Investors Diversified Services Advisory Corporation, August 8, 1975.

19  Section 202(a)(17), in part, defines a "person associated with an investment adviser" to include "any partner, officer, or director of such investment adviser (or any person performing similar functions), or any person directly or indirectly controlling or controlled by such investment adviser, including any employee of such investment adviser...."

20  If a solicitor were a partner, officer, director or employee of the investment adviser he would, of course, be within the definition of a person associated with an investment adviser. The same would seem to be true, in most cases, of solicitors who were partners, officers, directors, or employees of persons controlling, controlled by, or under common control with the investment adviser. The status of solicitors for impersonal advisory services only would depend on the facts and circumstances. The staff of the Commission is prepared to consider no action inquiries regarding the registration of solicitors.

Release No. 688 (S.E.C. Release No.), Release No. IA - 688, 17 S.E.C. Docket 1293, 1979 WL 174269

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.