UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,                    **DECISION AND ORDER**

        -against-                            23 Civ. 8253 (AEK)

CONCORD MANAGEMENT, LLC and
MICHAEL MATLIN,

                        Defendants.
------------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

        Plaintiff Securities and Exchange Commission ("SEC") filed this action on September 19, 2023 against Defendants Concord Management LLC ("Concord") and Michael Matlin ("Matlin"), alleging that both Concord and Matlin failed to register as investment advisers in violation of Section 203(a) of the Investment Advisers Act of 1940 ("IAA"). *See* ECF No. 1 ("Complaint" or "Compl.") ¶¶ 89-91; 15 U.S.C. § 80b-3(a) ("Except as provided in subsection (b) and section 80b-3a of this title, it shall be unlawful for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentality of interstate commerce in connection with his[, her,] or its business as an investment adviser."). Currently before the Court is Defendants' motion to dismiss the claim asserted against Matlin individually pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 23.[1] For the reasons that follow, the motion is DENIED.

---

[1] Defendants' motion also sought dismissal of the SEC's request for disgorgement as to both Defendants. That issue has since been resolved—on April 5, 2024, the Honorable Philip M. Halpern so-ordered the parties' stipulation withdrawing without prejudice the SEC's requests for disgorgement and prejudgment interest. ECF No. 30.

## BACKGROUND

**I.     Relevant Facts**

The following facts are taken from the Complaint and are accepted as true for purposes of this motion.

Concord is a limited liability company based in Tarrytown, New York; Concord was incorporated in Delaware in May 1999 and re-incorporated in Delaware in May 2012.  Compl. ¶ 13.  Matlin is a resident of Airmont, New York.  *Id.* ¶ 14.  He founded Concord in 1999 to provide investment advice for compensation, and to supervise and manage investments in United States-based private funds for a single "ultimate beneficial owner" (referred to in the Complaint as "UBO A"); Matlin is Concord's managing member and 100-percent owner.  *Id.* ¶¶ 1, 14, 15, 21.  The SEC alleges that "[o]n a day-to-day basis, Concord and Matlin provided continuous and regular supervision or management services over UBO A's private fund securities portfolio."  *Id.* ¶ 25.[2]

By March 2012 and continuing through at least March 2022, Concord had approximately ten employees, most of whom were investment analysts.  *Id.* ¶ 22.  Matlin "supervised and directed Concord investment analysts and engaged with them in analysis and development of investment advice," which Matlin then communicated to "Person B," who was a "longtime close associate of UBO A" and the "point of contact for receiving investment advice from [Defendants] and for either deciding or communicating the decision whether to go forward with recommended transactions."  *Id.* ¶¶ 19, 22.  Thus, according to the SEC, Concord and Matlin

---

[2] The Complaint contains substantial allegations regarding the web of corporate entities through which UBO A held beneficial ownership of certain assets, and the services that Concord, Matlin, and others provided.  *See, e.g.*, Compl. ¶¶ 16-18, 26-66.  Because these detailed recitations are not directly relevant to the legal issues presented in this motion, the Court need not summarize these allegations here.

"engaged in the business of advising UBO A, through Person B, as to the value of securities and as to the advisability of investing in, purchasing and selling securities," and in doing so they acted as investment advisers.  *Id.* ¶ 70.  Between 2017 and 2022, the securities portfolio for which Defendants "provided continuous and regular supervisory and management services had an average value of several billion dollars."  *Id.* ¶ 76.  For the services they provided to UBO A, Concord and Matlin received significant compensation in the form of monthly fees, reimbursement of monthly expenses, and annual performance bonuses.  *Id.* ¶ 68.  The SEC alleges that neither Concord nor Matlin qualified for any exemption from registration as an investment adviser under Section 203(b) of the IAA, but neither the company nor Matin individually ever registered as an investment adviser.  *Id.*  According to the SEC, because Defendants failed to register as investment advisers, the agency was prevented from exercising "oversight of both the organization as a whole and the activities of Matlin and his employees."  *Id.* ¶ 3.

## II.     Procedural History

By letter dated December 1, 2023, Defendants informed Judge Halpern that they anticipated filing a motion to dismiss; the SEC responded by letter dated December 8, 2023.  *See* ECF Nos. 15, 17.  On January 11, 2024, Judge Halpern conducted a pre-motion conference and set a briefing schedule that required Defendants' motion to be fully submitted on March 15, 2024.  Docket Sheet, Minute Entry dated Jan. 11, 2024.  In accordance with the scheduling order, all motion papers were filed on March 15, 2024.  *See* ECF Nos. 23-27.  As noted above, *see* footnote 1, *supra*, on April 5, 2024, Judge Halpern so-ordered the parties' stipulation withdrawing without prejudice the SEC's requests for disgorgement and prejudgment interest. In October 2024, while this motion was pending, the parties consented to proceed before a

magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c), and the matter was reassigned to the undersigned.  *See* ECF No. 45.

## DISCUSSION

I.  **Legal Standard for Evaluating Motions to Dismiss**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pleaded factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).  The court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff."  *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).  That said, a court is not required to accept legal conclusions set forth in a complaint as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, to survive a motion to dismiss, a complaint must set forth sufficient facts "to state a claim to relief that is plausible on its face."  *Id.* (cleaned up).  A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.*  Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Lynch*, 952 F.3d at 75 (cleaned up).

**II.    Analysis**

Defendants do not argue that, by its terms, Section 203(a) of the IAA bars the assertion of a claim against an individual for failure to register as an investment adviser. Rather, they assert that the SEC has a "well-settled policy," purportedly "reflected in both agency guidance and longstanding agency practice," regarding when it can bring such a claim against an individual, and that the allegations in the Complaint do not fall within this policy and practice. *See* ECF No. 24 ("Defs.' Mem.") at 8-9, 11. Specifically, Defendants contend that historically, the SEC only has pursued failure-to-register claims against individuals if the individuals in question also are alleged to have (1) "performed advisory services on their own behalf (as opposed to solely on behalf of their associated advisory firm)"; (2) "engaged in fraud or other misconduct related to their advisory services"; or (3) been "the mere alter ego of their associated advisory firm." *Id.* at 8. Defendants maintain that because Matlin is not alleged to have engaged in any of this other conduct, the claim against him individually is improper. *Id.* at 8-9.

For the reasons detailed below, the Court disagrees.

**A.    There Is No Policy Statement, Guidance, or Practice that Precludes the SEC from Bringing a Failure-to-Register Claim Against Matlin Individually**

**1.    Agency Statements of Policy**

The agency materials cited by Defendants in support of their arguments do not stand for the proposition that the SEC cannot bring an action for failure to register against both a firm and an individual associated with that firm where, as here, neither the firm nor the individual has registered as an investment adviser.

Defendants rely on a 2013 guidance document provided by the Staff of the SEC's Investment Adviser Regulation Office, which notes that

> [a]lthough many individuals who are employed by advisers fall within the definition of "investment adviser," the SEC generally does not require

> those individuals to register as advisers with the SEC.  Instead, the advisory firm must register with the SEC.  The adviser's registration covers its employees *and* other persons under its control, provided that their advisory activities are undertaken on the adviser's behalf.

ECF No. 52-6 (SEC, Staff of the Investment Adviser Regulation Office, *Regulation of Investment Advisers by the U.S. Securities and Exchange Commission* (Mar. 2013) ("March 2013 Guidance")) at 17 & n. 95 (emphasis in original).

Defendants also point to a no-action letter issued in January 2012 by the SEC's Investment Adviser Regulation Office in response to an inquiry from the American Bar Association regarding the possible impact of amendments to the IAA pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act.  ECF No. 52-8 (SEC, "Response of the Office of Investment Adviser Regulation, Division of Investment Management" (Jan. 18, 2012) ("No-Action Letter")).  In that document, the agency stated that while "Section 202(a)(11) of the [IAA] defines the term 'investment adviser' broadly to include any person who for compensation provides advice about securities as part of a regular business"—a definition that is "sufficiently broad to include not only a corporation, partnership or sole proprietorship doing business as an investment adviser, but also many of the adviser's employees"—"the Commission and its staff have, as a matter of administrative practice, not required natural persons associated with a *registered adviser* to themselves register separately solely as a result of their activities as associated persons."  *Id.* at 1 (emphasis added).

Both the March 2013 Guidance and the No-Action Letter rely on two earlier documents issued by the SEC, which are also cited by Defendants: (1) "Requirements Governing Payments of Cash Referral Fees by Investment Advisers," Investment Advisers Act Release No. 688, 1979 WL 174269 (July 12, 1979) ("Release No. 688"); and (2) Kevin J. Hughes, SEC Staff Letter (Dec. 7, 1983) ("Hughes Letter").  Release No. 688 states that a person associated with a

6

registered investment adviser "would not be required to register individually under the [IAA] solely as a result of those activities."  1979 WL 174269 at *7; *see* No-Action Letter, footnote 1 (citing Release No. 688 for the proposition that "persons associated with a *registered adviser* need not separately register as investment advisers solely as a result of their activities as associated persons" (emphasis added)); March 2013 Guidance at 17 n.95 (same).  Similarly, the Hughes Letter states that a "registered representative rendering advisory services as an employee of a *registered investment adviser* . . . need not be registered individually as an investment adviser."  ECF No. 52-7 (emphasis added).

     While it is clear from these documents that an individual need not register as an investment adviser under the IAA if he or she is employed by, or associated with, an advisory firm that itself is registered as an investment adviser, that is not the fact pattern present in this case.  Indeed, it is undisputed that Concord was not registered as an investment adviser, and the Complaint asserts the failure-to-register claim against Concord as well.  Had Concord registered as an investment adviser with the SEC, Matlin's reliance on these various documents as a basis for why he should not also have been expected to register individually would have been far more compelling.  The SEC acknowledges as much, noting that "had Matlin registered Concord with the SEC, the registration of the entity would have covered his activities."  ECF No. 25 ("Pl.'s Opp.") at 3.  But none of the cited documents specifically excuse employees or associates of a firm from any individual obligations that they may have to register where, as here, the firm that employs them, or with which they are associated, also has not registered as an investment

7

adviser.[3]  These documents are silent as to this point, and cannot be read to forbid the SEC from pursuing claims against an individual such as Matlin.[4]

None of these agency documents state that the SEC is barred from bringing a claim against an individual for violation of the IAA's registration provision, or will never bring a claim against an individual for violation of the IAA's statutory provision, where, as here, the advisory firm was likewise not registered.  Nor do any of the documents specify that claims against individuals for failure to register may only be filed in the limited circumstances specified by Defendants.  Even taken together, the agency documents on which Defendants rely do not support the conclusion that the SEC has a "well-settled policy" that precludes it from bringing a claim against an individual for failure to register as an investment adviser under the IAA where the firm that employed the individual, or with which the individual was associated, also was not registered as an investment adviser under the IAA.

### 2. Cases Brought by the SEC

Defendants' contention that case law precedents establish a settled course of adjudication that invalidates the SEC's cause of action against Matlin individually is similarly unavailing.

---

[3] Of course, the SEC alleges that Matlin was not merely employed by, or associated with, Concord.  According to the Complaint, Matlin was the 100 percent owner and managing member of Concord.  Compl. ¶ 14.  Or, as the SEC argues more colorfully in its opposition to the motion, "there was no separation between Concord as an entity and Matlin as an individual.  Concord *was* Matlin and Matlin *was* Concord."  Pl.'s Opp. at 3 (emphases in original).

[4] Defendants make much of the statement in the Hughes Letter that if "a registered representative acts as an investment adviser on his [or her] own behalf, he [or she] would be required to be registered separately under the Act."  Hughes Letter at 1; *see* Defs.' Mem. at 12.  But this statement does not change the analysis here at all.  Yes, an individual who acts as an investment adviser on his own behalf would be required to be registered separately under the IAA, even if he or she might otherwise not be required to register because he or she falls under the ambit of his or her registered firm.  But again, the Hughes Letter does not say anything about whether an individual is required to register if his or her firm is not registered, as was the case with Concord and Matlin.

Again in this context, Defendants insist that because of the SEC's historical practices for enforcing the failure-to-register provision of the IAA against individuals, such individual claims are only permissible where the individual (1) was acting on his or her own behalf; (2) engaged in fraud or other misconduct; or (3) was an alter ego of the advisory firm.  *See* Defs.' Mem. at 12-13 (citing cases).  But Defendants' extrapolations from these cases do not warrant the dismissal of the individual claim against Matlin for failure to register as an investment adviser.

First, in each of the cited cases, the failure-to-register claim against the individual is asserted as a standalone claim.  That is, in the various enforcement actions in question, the SEC asserted multiple claims against the individual defendants, such as claims for fraud or other misconduct, and in addition to those claims, the SEC also asserted a claim against the individual defendant for failure to register under the IAA.  Thus, in each case, the failure-to-register claim existed separately and distinctly from whatever other conduct was alleged against those defendants, and was not dependent on the existence of those other claims.  Notably, the IAA's registration requirement is an entirely separate statutory provision from the IAA's anti-fraud provisions.  *See* Pl.'s Opp. at 7 (explaining that the registration requirement is set forth in 15 U.S.C. § 80b-3(a), while the anti-fraud provisions are set forth 15 U.S.C. § 80b-6).  Second, none of the cases referenced by Defendants involve a motion to dismiss the failure-to-register claim asserted against an individual, or state that a failure-to-register claim can be brought against an individual only if it is joined to allegations that the individual was acting on his or her own behalf or was an alter ego of the advisory firm, or only because the claim was accompanied by a claim of fraud or other misconduct.  For example, while the complaint in *SEC v. Gillette*, No. 98-cv-12658 (S.D. Cal.), alleges that "Defendant Gillette, either individually or through Pro Sports, solicited a number of his former brokerage firm clients and others to hire Pro Sports to manage

9

their money," *id.* at ECF No. 1 ¶ 7, it also alleges that "Gillette owns Pro Sports and controlled its day-to-day operations," and that "[n]either Gillette nor Pro Sports . . . was registered with the Commission as an investment adviser." *Id.* ¶¶ 5, 9.  The individual failure-to-register claim was thus not reliant on allegations—which were stated in the alternative—that the individual defendant was acting on his own behalf.  Moreover, like Matlin, the individual defendant owned and controlled his advisory firm, and his advisory firm, like Concord, also had not registered as an investment adviser.

In sum, the handful of "exemplar cases," ECF No. 26 at 5, cited by Defendants do not address the SEC's interpretation of Section 203(a) of the IAA as it relates to the agency's authority to assert a failure-to-register claim against an individual employed by or associated with a firm that also has not registered as an investment adviser.  Nor does any language in any of these cases expressly limit the SEC's ability to bring such a claim in these circumstances.  Accordingly, the Court cannot infer from this case law that the SEC has any sort of policy or settled course of adjudication that precludes the agency from brining a claim against Matlin individually for failure to register as an investment adviser under the IAA given the facts circumstances alleged in the Complaint.

        **B.**      **The Failure-to-Register Claim Against Matlin Does Not Violate Matlin's Due Process Rights Based on the Present Record**

The record presently before the Court does not establish that there is an SEC policy that bars the assertion of a failure-to-register claim against an individual where, as here, the firm with which he or she is associated was also not registered.  And despite Defendants' protestations, there is no ambiguity about this issue in any guidance or other documents published or promulgated by the SEC.  The principal agency documents presented in connection with this motion do not insulate individuals in Matlin's position from the registration requirements of the

IAA, because those documents all refer to individuals operating within firms that themselves had registered as investment advisers under the statute.  Moreover, Defendants do not dispute that Section 203(a) of the IAA, by its terms, allows the SEC to bring a failure-to-register claim against an individual.  Accordingly, at this stage, the Court rejects Defendants' argument that the failure-to-register claim against Matlin should be dismissed as violating due process on the ground that Matlin lacked fair notice that such a claim could be brought.

Simply put, unlike the cases cited by Defendants in which courts found a lack of fair notice, in this case, neither an agency interpretation of the statute, nor the statutory language itself, gives rise to an ambiguity as to whether a failure-to-register claim could be brought against an individual employed by or associated with an investment advisory firm that was also not registered.  *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) ("Because there was substantial uncertainty in the Commission's interpretation of Rule 15c3–3(e), Upton was not on reasonable notice that FiCS's conduct might violate the Rule."); *see also*, *e.g.*, *CFTC v. EOX Holdings, LLC*, 90 F.4th 439, 444 (5th Cir. 2024) ("On its face, then, the text of Rule 155.4(b)(2)(i) is at best ambiguous.  It did not give fair notice to the Defendants absent further guidance from the CFTC, and for nearly four decades, no such guidance came."); *Gen. Elec. Co. v. U.S. EPA*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995) ("In the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability.").

### C.     The SEC Is Not Pursuing a Claim Against Matlin for Concord's Alleged Failure to Register

Defendants also argue that the SEC fails to state a claim against Matlin for Concord's alleged failure to register under either an aiding-and-abetting or a causation theory.  Defs.' Mem. at 18-19.  In response, the SEC makes clear that it "is not proceeding under an aiding-and-

abetting theory or an administrative 'causing' theory." Pl.'s Opp. at 5. Accordingly, the Court need not address Defendants' argument as to this point.

* * * * * *

Defendants have not established that the SEC has a "well-settled policy" that precludes the agency from bringing a claim against an individual for failure to register under Section 203(a) of the IAA alongside a claim for failure to register against the advisory firm by which the individual was employed or with which the individual was associated. Defendants have not moved to dismiss the SEC's failure-to-register claim as asserted against Concord, and do not argue that the language in the statute itself bars a failure-to-register claim against an individual. No written guidance, agency statements, or cases brought by the SEC establish a policy or practice against bringing the individual failure-to-register claim that is asserted against Matlin in this case. The Court thus cannot conclude that the claim against Matlin must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the failure-to-register claim asserted against Matlin individually (ECF No. 23) is DENIED.

A video status conference to discuss the next steps in this matter is hereby scheduled for April 24, 2025 at 9:30 a.m. Video links will be sent to all counsel in advance of the conference. Members of the public who wish to attend the conference may do so by telephone by (1) dialing the meeting number: (855) 244-8681; (2) entering the access code: 231 250 35451; (3) pressing pound (#); and (4) pressing pound (#) again to join the teleconference as a guest. Should the parties experience any technical issues with the teleconferencing system, please contact Chambers at (914) 390-4070. At the conference, the parties must be prepared to discuss the

schedule for any remaining discovery in the case and their interest in resuming settlement discussions, with the Court's assistance or through some other means.

Dated: March 26, 2025
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge