

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
33 Arch Street, 24th Floor
Boston, MA 02110-1424

BOSTON
REGIONAL OFFICE

December 9, 2025

Honorable Andrew E. Krause
The Honorable Charles L. Brieant Jr. Federal Building and U.S. Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:  *SEC v. Concord Management LLC et. al,* No. 23-CV-8253 (S.D.N.Y.) (AEK)

Dear Judge Krause:

     Pursuant to the Court's Order (Dkt. 61) and Local Rule 37.2, the Commission is filing this letter because the parties are at an impasse in a discovery dispute regarding the notice of deposition served on the Commission pursuant to Federal Rule of Civil Procedure 30(b)(6).  *See* Exhibit A (30(b)(6)) deposition notice).  The parties have been engaged in a meet-and-confer process but have been unable to resolve the dispute.

     Broadly speaking, Defendants seek to designate persons from the SEC to testify regarding three topics, all of which concern the SEC's "processes and guidance" for evaluating compliance with the Investment Advisers Act ("Advisers Act").  Topic 1 concerns the SEC's processes and guidance with respect to Section 203A of the Advisers Act, including determining whether an entity or person is required to register with the SEC as an investment adviser.  *See id*. at App'x A, p. 2.  Topic 2 concerns the SEC's processes and guidance for evaluating whether investment advisers are in compliance with the registration requirements of the Advisers Act, including "examination of whether an investment adviser is required to be – or prohibited from – registering with the SEC[.]"  *See id.* at p. 2-3.  Topic 3 concerns processes and guidance regarding the issuance of deficiency letters when the SEC concludes that a person or entity either should or should not be registered as an investment adviser under the Advisers Act.  *See id.* at p. 3.

     The Commission submits that this Rule 30(b)(6) deposition notice does not seek information that is relevant and proportional to the needs of the case.  At the outset, unlike Matlin and those at Concord, no one at the Commission has first-hand knowledge of the underlying facts.  Further, this Rule 30(b)(6) deposition notice is atypical in that it does not seek "general information about the SEC and its organizational practices" (*see SEC v. Contrarian Press*, 16-cv-6964 (VSB), 2020 WL 7079484 at *2 (S.D.N.Y. Dec. 2, 2020)).  Rather, Defendants seek to depose the SEC on "policies, practices, procedures, methods, or other processes, as well as any directives or other guidance[.]"  *See* Ex. A. at

1

App'x A, p. 2.  To the extent that information is relevant, it has already been produced.  Defendants now necessarily seek staff views and informal processes, none of which is relevant and much of which may be privileged.  Such a 30(b)(6) notice is improper.

As the Court knows, the parties are engaged in fact discovery – and because neither Defendant registered with the SEC, it is hard to see how an SEC staff member could be a fact witness here. To the extent Defendants seek information about the Commission's policies and processes related to registration of investment advisers, they already have it.  The Defendants previously requested documents regarding, *inter alia*, the application of Form ADV to investment advisers (RFP 11) and documents reflecting the Division of Examinations' processes, polices, and practices for examining compliance with the Advisers Act (RFP 13).  *See* Exhibit B (Defendants' Request for Production).  The parties engaged in numerous meet-and-confer sessions regarding these and related requests from April 2024 to August 2025.  The Commission conducted a diligent search for relevant, discoverable material pursuant to these requests, and produced a staff-authored document entitled "Regulation of Investment Advisers by the U.S. Securities and Exchange Commission" as well as the Form ADV, which provides information about "processes and guidance" under the Advisers Act to potential or current registrants.  *See also* https://www.sec.gov/files/formadv-instructions.pdf (instructions for Form ADV, including guidance as to whether the registrant provides "continuous and regular supervisory or management services").  The Commission is not withholding additional relevant and discoverable policies or guidance on issues that Defendants seek to explore.  As Commission counsel have explained, the facts and circumstances of any particular case are analyzed using the very guidance and materials that the Defendants have – such as the Advisers Act and the rules thereunder, the relevant adopting releases issued by the Commission, and Form ADV and the instructions thereto.

Defendants, no doubt, will argue that what they have received is not sufficient (even though they already have received all of the SEC's relevant general policies and guidance) because there is limited public guidance on the registration requirements under the Advisers Act, which necessitates adducing testimony from the SEC about policies and processes.  But testimony from an SEC employee about "processes and policies" for registration is not a substitute for agency guidance, and such testimony would reflect only the views of SEC staff about the application of the Advisers Act.  The SEC cannot provide a witness to discuss policies and procedures that do not exist. To the extent Defendants are seeking the views of SEC staff members, those views would not be relevant to any issue in this case because they would not determine how the SEC would have handled any specific matter, and the views of individual staff members about SEC statutes and regulations do not have any binding or persuasive effect.  In effect, the 30(b)(6) notice improperly seeks expert testimony by SEC staff about the application of the registration requirements under the Advisers Act and thus about the ultimate questions of law.  "[D]epositions, including 30(b)(6) depositions, are designed to discover facts . . . not legal theories." *Cooper v. Charter Communc'ns, Inc.*, No. 12cv10530, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016) (citations omitted).

Defendants' 30(b)(6) notice is also improper to the extent, as seems likely, it would require an SEC witness to testify about the facts of this case – and consider how to apply the securities laws to Defendants' conduct.  It is hard to imagine how Defendants could elicit testimony about how the SEC *evaluates compliance,* including determining *whether an individual or an entity is required to register* without asking the witness(es) to opine on the ultimate issue in this case – namely, whether Concord and/or Matlin were required to register under the Advisers Act.  Indeed, testimony on the three topics would necessarily require inquiring about Defendants' conduct – at least on a hypothetical basis – and would thus elicit the SEC staff's opinions about whether Defendants' conduct violated the Advisers Act.  The fact that the notice purports to seek information about "policies and processes" does not change the equation – any testimony pursuant to the 30(b)(6) topics would require an SEC witness to evaluate how the Advisers Act and rules thereunder would apply to a current or potential registrant, including but not limited to Defendants.  This makes the entire proposed exercise improper.

To the extent Defendants can assert a fair notice defense, it does not alter the analysis.  First, a fair notice defense depends on what notice is available to the public.  The SEC staff's views about "processes and guidance" would not reveal what notice was available to the public.  Second, the proposed 30(b)(6) topics concern processes and guidance applicable to potential and current registrants under the Advisers Act.  Where Concord and Matlin did not register and at no time engaged with the SEC regarding registration,[1] there is no basis to suggest that any SEC employee could have knowledge of any relevant facts regarding Defendants' obligations under the Advisers Act.

Finally, a 30(b)(6) deposition necessarily would implicate matters protected by deliberative process privilege[2] because the deposition would necessarily seek information about informal policies and procedures that are not final and that SEC staff must adapt to the circumstances before them.  Thus, any testimony would necessarily address what rationales SEC staff have considered in making any determinations about registration or other matters, and those rationales would be pre-decisional and deliberative. *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-86 (2021) (the deliberative process privilege protects information that is both pre-decisional and deliberative). The Court should not permit a deposition that would inevitably seek the SEC's privileged, internal deliberations. *Cf. EEOC v. Army Sustainment*, *LLC*, 1:20-cv-00234-RAH-SRW, 2021 WL 6884912 at *5-*6 (M.D. Ala. Oct. 25, 2021) (barring testimony on select 30(b)(6) topics on the basis of deliberative process privilege and work product).  Any deposition may also implicate both the attorney-client privilege and seek information classified as attorney work product because issues about how to apply law to facts SEC staff address are often the subject of privileged communications and could also be related to discussions of anticipated or ongoing litigation.  *See SEC v. Morelli*, 143 F.R.D. 42, 47

---

[1] It is the Commission's understanding that Mr. Matlin consulted with counsel regarding registration under the Advisers Act.  Because Mr. Matlin has not yet been deposed the Commission does not know what, if anything, Mr. Matlin will attest about his decision not to register Concord as a firm or individually, or whether he will answer questions regarding advice of counsel.

[2] While the Commission anticipates that deposition questions will implicate the deliberative process privilege, the staff is not formally asserting the privilege at this time, as the issue is not fully ripe.

(S.D.N.Y. 1992) (proposed 30(b)(6) deposition "constitute[d] an impermissible attempt by defendant to inquire into the mental processes and strategies of the SEC").

Sincerely,

Rua M. Kelly
Amy Harman Burkart