UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

  v.

CONCORD MANAGEMENT LLC and
MICHAEL MATLIN,

      Defendants.

Case No. 23-CV-8253 (PMH) (AK)

---

## DEFENDANTS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

PLEASE TAKE NOTICE THAT, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Rules"), Defendants Concord Management LLC ("Concord") and Michael Matlin (collectively, "Defendants") hereby serve their First Requests for Production of Documents (the "Requests") upon Plaintiff Securities and Exchange Commission (the "SEC") and request that the SEC produce all non-privileged documents responsive to each of the following Requests, pursuant to the Definitions and Instructions set forth herein. Defendants reserve the right to serve additional requests for production of documents.

### DEFINITIONS

1. The definitions and rules of construction set forth in Rule 34 of the Federal Rules and Rule 26.3 of the Local Rules are hereby incorporated in, and apply to, these Requests.

2. "You" or "your" means the SEC, including its employees, agents, and representatives.

3.     "Defendants" means Concord and Mr. Matlin.

4.     "Investigation" means the SEC's investigation of this matter, captioned *In the Matter of Concord Management, LLC*, B-03556.

5.     "Action" means the action now pending in the United States District Court for the Southern District of New York captioned *Securities and Exchange Commission v. Concord Management LLC and Michael Matlin*, No. 23-CV-8253 (PMH) (AK).

6.     "Complaint" means the Complaint filed on September 19, 2023 in this Action.

7.     "DOJ" means the U.S. Department of Justice, including without limitation the United States Attorney's Office for the Southern District of New York.

8.     "Document" or "documents" includes, without limitation, Electronically Stored Information ("ESI") (as defined below); all drafts; communications, including without limitation, correspondence, text messages, email, and social media messages or "posts"; calendars; memoranda; records; reports; books; reports, memorializations, and/or summaries of conversations or interviews; journals; notebooks; graphs; charts; diagrams; tables; photographs; recordings; audio and video tapes; microfilms; minutes, summaries, reports and records of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten, or other notes; checks, front and back; check vouchers, check stubs or receipts; tape data sheets, data processing cards or discs or any other written, printed, typewritten or otherwise recorded matter, however produced, reproduced, whether or not now in existence; and any paper or writing including files, contracts, correspondence, agreements, letters, notes, manuals, employee handbooks, forms, brochures, drawings, and other data or data compilation of any sort, stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy of any document,

whether due to the addition of marginalia or other change, is a separate document within the meaning of this term.  Where the electronic and hard copy versions of any document are separate documents per this definition, both the electronic and hard copy versions should be produced.

9. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including, without limitation, all discussions, conversations, negotiations, meetings, telephone conversations, letters, memoranda, notes, emails, text messages (*e.g.*, SMS, iMessage, WhatsApp, Telegram, Signal, etc.), or messages delivered through social media (*e.g.*, Twitter, Facebook, etc.), and all other manner or means of transmittal of information, whether oral or written.

10. Electronically Stored Information ("ESI") includes, without limitation: (a) information that is generated, received, processed, and recorded by computers and other electronic devices (*e.g.*, email, facsimiles, voicemail); (b) internal or external websites; (c) output resulting from the use of any software program (*e.g.*, word processing documents, spreadsheets, database files, charts or graphs, outlines, email, text messages, chat applications, operating systems, source code, PRF/PRC files, batch files, ASCII files, and all miscellaneous media regardless of whether the electronic data exists in an active file, archive file, or deleted file); (d) activity listings of email receipts or transmittals; (e) any items stored on computer memories, flash drives, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal such as but not limited to a personal digital assistant (iPhone, Android, or similar device) and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein; and (f) information, messages, or "posts" transmitted through, posted to or stored on social media websites.

11. The terms "concerning," "relating to," "related to," "reflecting," "involving," "regarding," and "referring to" are used as equivalent terms, each including the others.

12. The term "each" includes the word "every" and "every" includes the word "each"; the term "any" includes the word "all" and "all" includes the word "any"; the terms "and" as well as "or" shall be construed disjunctively or conjunctively so as to bring within the scope of the answer that which might otherwise be construed to be outside the scope of the Request; the use of the singular shall be construed to include the plural and vice-versa; the use of any gender shall be construed to include the other gender; and the use of any tense of any verb shall be construed to include all other tenses of such verb.

13. "Including" has its standard meaning and also means including, without limitation and including, but not limited to.

14. "Person" means any individual, proprietorship, committee, firm, association, partnership, corporation, or other business, governmental, or legal entity.

15. All words, terms, and phrases not specifically defined in these Requests are to be given their normal and customary meaning in the context in which they are used in the Requests.

## **INSTRUCTIONS**

1. These Requests are continuing in nature, and all responsive documents that are created or obtained subsequent to a previous production shall be produced forthwith.

2. All documents produced in response to these Requests shall either (a) be organized and labeled to correspond with the number of the Request to which the documents are responsive, or (b) be produced as they are kept in the usual course of business and shall be presented in the file folder, envelope, or other container in which the documents are maintained. If documents are maintained electronically, they shall be produced in native file format with all associated metadata.

3. If a document is redacted or not produced on the ground that it is privileged and therefore not subject to disclosure, a log containing the following information must be supplied for each document: (a) the nature of the privilege being claimed; and (b) such information as is sufficient to identify the document, including the type of document, the subject matter, the date of the document, the time of transmission, the author(s) and recipient(s) of the document, and, where not apparent, the relationship of the author and the addressee to each other.

4. Each document requested herein shall be produced in its entirety without deletion, redaction, or exclusions, regardless of whether you consider the entire document relevant or responsive; if you have redacted any portion of the document, stamp the word "REDACTED" beside the redacted information on each page of the document which you have redacted; any redactions to documents produced should be identified on a privilege log.

5. All documents (unless they are electronic documents produced in native format) should be "Bates" numbered sequentially with a unique number on each page, and with a prefix identifying the party producing the document.

6. If any Request cannot be responded to in full, you shall produce documents to the extent possible, specify the reason for the inability to produce further documents, and state what knowledge or information you have concerning the unproduced portion.

7. All documents which cannot be legibly copied must be produced in their original form.

8. Non-identical copies of documents, drafts of copies with annotations, and marks of marginalia shall be treated and produced as separate copies.

9. With respect to ESI:

    a. All other responsive documents that are maintained in the usual course of business in electronic format shall be produced in properly unitized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

    b. All responsive documents shall be produced with the metadata normally contained within such documents, and the necessary load files.  If such metadata is not available, each document shall be accompanied by a listing of all file properties concerning such document, including without limitation all information concerning the date(s) the document was created and last modified, and the author(s) and recipient(s) of the document.

    c. Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use the ESI.  ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden or cost you claim is associated with the search or production of such ESI.

10. Documents in electronic format may be produced in electronic format on CD in the original electronic file format(s) of the documents.

11. If a document that once existed has subsequently been lost, destroyed, or is otherwise unavailable, provide sufficient information to identify and describe the document and its contents, explain how and when it was lost or destroyed, and identify the person who last possessed the document.

12. If no documents or information responsive to a particular Request exist or are within your possession, custody, or control, you must state so in your response.

13. If you object to any Request on the ground that it is overly broad, you are instructed to respond to the Request as narrowed to conform to your objection within the period allowed for a response and to state in your response (a) how you narrowed the Request and (b) the reason why you claim the Request is overly broad.

14. If you object to any Request on the ground that it is vague or ambiguous, you are instructed to respond to the Request as interpreted to conform to your objection within the period allowed for a response and to state in your response (a) how you interpreted the Request and (b) the reason why you claim the Request is vague or ambiguous.

15. Unless otherwise stated, the relevant timeframe for these Requests is January 1, 2018 through the present.

16. These Requests shall not be construed as a waiver or abridgment of, and are not intended to waive, any argument or defense, or any objection to your discovery requests, nor shall they be construed as any admission of fact.

**DOCUMENTS REQUESTED**

1. All documents the SEC provided to or received from third parties in connection with the Investigation or the subject matter thereof, including without limitation all subpoenas issued to third parties; all documents produced in response to such subpoenas or other formal or informal requests for documents; all communications with third parties; and all affidavits, declarations, or other witness statements.

2. All documents the SEC provided to or received from third parties in connection with this Action or the subject matter thereof, including without limitation all subpoenas issued to third parties; all documents produced in response to such subpoenas or other formal or informal requests for documents; all communications with third parties; and all affidavits, declarations, or other witness statements.

3. All documents the SEC has provided to or received from DOJ concerning the Investigation, this Action, or the subject matter of either.

7

4. All documents reflecting:

   a. The SEC's involvement, attendance, or participation in any interviews or other communications in which DOJ also was involved, attended, or participated, as well as the selection, identification, contacting, or scheduling of individuals for such interviews or other communications, and the preparation for such interviews or other communications;

   b. The sharing or reviewing of documents between the SEC and DOJ concerning the Investigation, this Action, or the subject matter of either;

   c. Other coordination or sharing of information between the SEC and DOJ concerning the Investigation, this Action, or the subject matter of either.

5. All FBI Form 302s of interviews or other communications concerning the Investigation, this Action, or the subject matter of either, including but not limited to interviews or other communications in which the SEC attended or participated.

6. All transcripts, factual reports, or any other recordings or memorialization of any interviews or other communications concerning the Investigation, this Action, or the subject matter of either.

7. All documents that support, undercut, or otherwise relate to the SEC's allegations that Concord and/or Mr. Matlin:

   a. Provided "continuous and regular supervisory or management services" with respect to Concord's client's investments;

   b. Were required to register as investment advisers with the SEC.

8. All documents (including without limitation internal or external policy statements, memoranda, guidance documents, or emails) reflecting the SEC's interpretation of or other position or determination regarding:

   a. The Instructions to Form ADV, Section 1A, Item 5.F, including without limitation:

      i. How an investment adviser's "regulatory assets under management" or "assets under management" should be calculated;

      ii. The meaning of the term "continuous and regular supervisor or management services";

      iii. The meaning of (including any of the individual terms used within) and application of General Criteria (b), including without limitation the meaning of the term "responsible for arranging or effecting the purchase or sale";

8

      iv. The meaning of (including any of the individual terms used within) and application of the "Factors" (*i.e.*, the "Terms of the advisory contract"; "Form of compensation"; "Management practices");

      v. The meaning of (including any of the individual terms used within) and application of the "Examples";

      vi. The interaction of or other relationship between or among "General Criteria" (b) and the "Factors" and "Examples."

b. The SEC's final rule, "Exemptions for Advisers to Venture Capital Funds, Private Fund Advisers With Less Than $150 Million in Assets Under Management, and Foreign Private Advisers," 76 FR 39646 (July 6, 2011), including without limitation the meaning and application of the following statement: "We would not, however, view providing research or conducting due diligence to be 'continuous and regular supervisory or management services' at a U.S. place of business if a person outside of the United States makes independent investment decisions and implements those decisions."

c. The SEC's final rule, "Rules Implementing Amendments to the Investment Advisers Act of 1940," Investment Advisers Act Release No. 1633 (May 15, 1997), including without limitation the meaning and application of the following statement: "A limited number of non-discretionary advisory arrangements may receive continuous and regular supervisory or management services, but only if the adviser 'has an ongoing responsibility to select or make recommendations, based upon the needs of the client, as to specific securities or other investments the account may purchase or sell and, if such recommendations are accepted by the client, is responsible for arranging or effecting the purchase or sale.' Thus, an advisory relationship under which the adviser does not have discretionary authority must assign to the adviser other responsibilities typically associated with a discretionary account."

d. The SEC's proposed rule, "Rules Implementing Amendments to the IAA, Investment Advisers Act Release No. 1601 (Dec. 20, 1996) ("1996 Proposing Release"), 61 FR 68480, at 68483 n.35, including without limitation the meaning and application of the following statement: "The Commission is concerned that, if financial planners were permitted to treat assets they 'monitor' as assets under management and therefore remain registered with the Commission, the intent of Congress to reallocate regulatory responsibilities by making 'almost 72 [percent] of Commission [investment adviser] registrants' subject primarily to state regulation would not be effected."

e. The SEC's final rule, "Family Offices," Investment Advisers Act Release No. 3220 (June 22, 2011), including without limitation the meaning and application of the following statement: "Holding itself out to the public as an investment adviser suggests that the family office is seeking to enter into typical advisory relationships with non-family clients."

9. All documents reflecting the SEC's position on when an individual associated with an investment advisory firm is required to register as an investment adviser, and under what circumstances such an individual is subject to an enforcement action, including without limitation internal or external policy statements, memoranda, guidance documents, or emails.

10. Documents sufficient to identify all prior SEC enforcement actions, whether brought in court or in an administrative proceeding, in which the SEC:

    a. Alleged that an individual who acted solely on behalf of an investment advisory firm failed to register as an investment adviser;

    b. Asserted a failure-to-register claim under the Investment Advisers Act on the basis that the investment adviser provided "continuous and regular supervisory or management services";

    c. Interpreted or otherwise took a position regarding the meaning or application of Form ADV, Section 1A, Item 5.F, including without limitation any of its General Criteria, Factors, or Examples, or any of the terms used within the General Criteria, Factors, or Examples.

11. Outside the context of the Investigation or this Action, all documents concerning any interpretation or other position taken by the SEC regarding the SEC's application of Form ADV, Section 1A, Item 5.F to investment advisers other than Concord and/or Mr. Matlin, including without limitation internal or external policy statements, memoranda, internal or external guidance documents, or emails.

12. All documents relating to examinations for compliance with the Investment Advisers Act that the SEC has conducted (through its Division of Examinations or otherwise) with respect to each of the investment advisers associated with the entities and funds listed in Appendix A.

13. All documents reflecting the SEC's Division of Examinations' processes, policies, and practices for examining compliance with the Investment Advisers Act, including without limitation internal or external policy statements, memoranda, guidance documents, or emails.

14. All documents reflecting the SEC's processes, policies, and practices for issuing deficiency letters or other notices in circumstances in which the SEC:

    a. Takes the position that an individual failed to register as an investment adviser, including without limitation that an individual who acted solely on behalf of an investment advisory firm failed to register as an investment adviser;

    b. Takes the position that an investment adviser failed to register under the Investment Advisers Act on the basis that the adviser provided "continuous and regular supervisory or management services."

15. All documents reflecting the SEC registration status of each of the investment advisers associated with the entities and funds listed in Appendix A.

16. Outside of the context of the Investigation or this Action, all documents reflecting the SEC's knowledge or awareness of, or information it received about, any of the following individuals or entities, including without limitation the principal(s), owner(s), representative(s), and employee(s) of any such entity and any predecessor entities: (a) Concord; (b) Michael Matlin; (c) Keygrove Holdings Limited; (d) Ervington Investments Limited; (e) MHC (Services) Ltd; (f) MC Management (UK) GMBH; or (g) Millhouse Capital, including without limitation communications with or about, subpoenas issued to, or responses from such individuals or entities.

17. All documents that support, undercut, or otherwise relate to the SEC's allegation that Concord and/or Mr. Matlin's failure to register as investment advisers "prevented the Commission's oversight." (Compl. ¶ 3.)

18. All documents concerning the extent to which Concord: (a) made investments itself; (b) made investment decisions for its client or had discretion to do so; (c) transferred, custodied, or received its client's money to make or redeem investments; (d) had control over its client's bank or brokerage accounts; (e) received compensation predicated on the performance or value of its client's investments; or (f) executed trades.

19. All documents that support, undercut, or otherwise relate to the allegations that Concord and/or Mr. Matlin were involved in, or had a role with respect to, the "attempt to market and sell [its client's] private fund securities portfolio" in or about February 2022. (Compl. ¶¶ 83-86.)

20. All documents that support, undercut, or otherwise relate to the assertion that "there was no separation between Concord as an entity and Mr. Matlin as an individual." (SEC Letter to Court filed Dec. 8, 2023, at 2.)

21. All documents related to the SEC's application for a grant of immunity with respect to Maria Oakley in connection with testimony Ms. Oakley gave to the SEC in connection with the Investigation on or about August 8, 2023.

22. All documents concerning any monetary damages (including disgorgement, pre-judgment interest, and/or civil monetary penalties) that the SEC is claiming in connection with this Action.

23. All documents that support, undercut, or otherwise relate to the allegation that Mr. Matlin took "distributions of profit each year." (Compl. ¶ 69.)

24. All documents reflecting the SEC's position or policy with respect to requesting, calculating, or otherwise determining civil monetary penalty amounts, including without limitation internal or external policy statements, memoranda, guidance documents, or emails.

25. All documents concerning the Investigation, this Action, or the subject matter of either that address the national origin or ethnicity of Michael Matlin, Eugene Shvidler, Roman Abramovich, or Maria Oakley.

26. All documents identified in the SEC's Initial Disclosures or otherwise falling within the categories of documents set forth in Rule 26(a)(1) of the Federal Rules.

27. All documents that the SEC intends to use or on which the SEC intends to rely to support any claim or defense in this Action, including without limitation in connection with depositions, motion practice, any expert reports, or trial.

28. All documents provided to or received from any expert that the SEC intends to or may call as a witness at the trial of this Action that: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the SEC provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the SEC provided and on which the expert relied in forming the opinions to be expressed.

Dated: March 1, 2024
       New York, New York

                                     MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

                                     By: */s/ Benjamin S. Fischer*
                                            Benjamin S. Fischer
                                            Christopher B. Harwood
                                            Kevin Grossinger
                                            Peter Menz
                                        565 Fifth Avenue
                                        New York, New York 10017

                                      *Counsel for Defendants*

**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

**APPENDIX A**

- Advent Vega (Cayman) Fund
- AGSF Ltd.
- Alcentra Structured Credit Opportunity Fund II
- Altimeter Offshore Ltd.
- Anatole Partners Ltd.
- Antara Capital Offshore Fund Ltd.
- Apollo Offshore Credit Strategies Fund Ltd.
- Aquilo Capital Offshore Ltd.
- Armistice Capital Offshore Fund Ltd.
- Atreides Foundation Fund Ltd.
- Autonomy Global Macro Fund Ltd.
- Avoro Life Sciences Offshore Fund Ltd.
- Ayurmaya Capital Management Fund
- BDCM Intermediate Company A, Ltd.
- Bedford Ridge Inv. Co. II LP
- Bengal 2 Investors
- Beryl Capital Fund II Ltd.
- BHZ Consolidation Cayman Fund
- BlackRock European Hedge Fund Ltd.
- Blackrock UK Emerging Companies Hedge Fund
- Blue Diamond Non-Directional Fund SP
- Brevan Howard Alpha Strategies Fund Ltd.
- Cadian Offshore Fund Ltd
- Caius Capital International Fund
- Carlyle Europe Real Estate Partners III LP
- Carlyle Europe Real Estate Partners Mezzanine Loan Partners 2-B, L.P.
- Caxton Macro Ltd.
- Cerberus International, Ltd.
- Consonance Capital Opportunity Fund Ltd.
- Context Partners Offshore, L.P.
- Cowen Healthcare Investments II LP
- Cowen Healthcare Investments III LP
- Crawford Lake Enhanced Offshore Fund, Ltd.
- CRC Bond Opportunity Trading Fund (Cayman) LP.
- D.E. Shaw Composite International Fund
- DCIG Capital Ltd.
- Egerton Long-Short Fund (GBP & NOK) Ltd.

- Egerton Long-Short Fund (USD) Ltd.
- EJF Debt Opportunities Offshore Fund Ltd.
- Empyrean Capital Overseas Fund, Ltd.
- EOS Credit Opportunities Offshore Ltd.
- Fir Tree Special Opportunities Fund XII
- Galton Agency MBS Offshore Fund, Ltd.
- Breckhurst Commodity Fund (Cayman) LP
- Gemsstock Fund
- Greenoaks Capital MS LP
- Greenoaks Capital Opportunities Fund IV LP
- Greenvale Capital (Cayman) Fund Ltd.
- GS (Goldman Sachs Investment Partners) # 023-8337
- Harbinger Capital Partners Special Situations Fund
- Harbinger Streamline Offshore Fund, LLC
- HBK Co-Investment Offshore Platform L.P.
- Highland Crusader Fund II, Ltd.
- Hildene Opportunities Offshore Fund Ltd.
- Hildene Opportunities Offshore Fund II Ltd.
- Ikarian Healthcare Offshore Fund, Ltd.
- Intrinsic Edge Capture Offshore, Ltd.
- Kepos Special Opportunities Fund Ltd
- Kirkoswald Global Macro Fund Ltd.
- Lake Bleu Prime Healthcare Fund Ltd.
- Lasker Fund
- Laurion Capital Ltd.
- Linden International Ltd.
- Logos Global Offshore Fund Ltd.
- Logos Opportunities Fund III LP
- Logos SPV 1 LP
- Long Pond Offshore, Ltd.
- Lugard Road Capital Offshore Ltd.
- Magnetar Capital Fund, Ltd.
- Manticore Fund (Cayman) Ltd.
- Mariner Atlantic Ltd.
- Matrix Capital Management Fund (Offshore) Ltd.
- Merewether Cyclicals Offshore Partners, Ltd.
- MIG Offshore Fund, Ltd.
- Millennium International, Ltd.
- Millstreet Credit Offshore Fund Ltd.
- MW Eurika Fund
- MW Global Opportunities Fund

2

- MW XO Health Innovations Fund LP
- MYDA Advantage Ltd.
- Myriad Opportunities Offshore Fund Ltd.
- Napier Park European Credit Global Feeder Ltd.
- Navy Capital Green International, Ltd.
- Naya Fund
- Neptune Coinvestment, L.P.
- Newbrook Capital Offshore Fund, Ltd.
- NewGen Equity Long/Short Fund
- NGP Natural Resources XI
- NGP Camino Follow-On LLC
- Nineteen77 Global Merger Arbitrage Ltd.
- Nokota Capital Offshore Fund Ltd.
- Obsidian Relative Value Strategy Fund, Ltd.
- Omni Event Fund Ltd.
- PARF-Offshore Ltd.
- Parkman HP Offshore Fund Ltd.
- Paulson Investment Company I LP
- Pentwater Equity Opportunities Fund Ltd.
- Pentwater Merger Arbitrage Fund Ltd.
- Periscope Target Return Fund L.P.
- Pinpoint Multi-Strategy Offshore Feeder Fund
- Polygon Convertible Opportunity Fund
- Polygon Recovery Fund L.P.
- Pura Vida Offshore Fund One Ltd.
- Pura Vida Pro Special Opportunity Offshore Fund
- QVT SLV Offshore Ltd.
- Radcliffe International SPAC Fund, Ltd.
- Raine Partners II LP
- Redmile Capital Offshore Fund, Ltd.
- Riva Ridge Overseas Fund, Ltd.
- RTW Offshore Fund One, Ltd.
- Rubric Capital Offshore Fund, Ltd.
- Rush Island Offshore, Ltd.
- Sanderling V Ltd.
- Sarissa Capital Offshore Fund Ltd.
- Schonfeld Fundamental Equity Offshore Fund Ltd.
- Schonfeld Strategic Equity Offshore Fund Ltd.
- Sculptor Enhanced Overseas Fund Ltd.
- Seligman Tech Spectrum Offshore Fund
- Shannon River, Ltd FKA Doonbeg Fund, Ltd.

3

- Shaolin Capital Partners International Fund, Ltd.
- SilverArc Capital Alpha Fund II, Ltd.
- SLAM Investments (Offshore) PPM
- Snow Lake Asia Offshore Fund Ltd.
- Soleus Capital offshore, Ltd.
- SPX Global Fund Segregated Portfolio Global Eagle
- Starboard Value and Opportunity Fund Ltd.
- Statar Capital Offshore (Cayman) Ltd
- Suvretta Offshore Fund, Ltd.
- TCIM Offshore Fund Ltd.
- Third Point Offshore Fund Ltd.
- Tiger Pacific Offshore Fund Ltd.
- Tosca European Financials Recovery Fund Ltd.
- Tosca Focus
- Tresidor Europe Credit F ICAV
- Voloridge Fund Ltd.
- Vor Opportunities Fund Ltd.
- Voss Value Offshore Fund Ltd.
- Western Asset Macro Opportunities Direct Feeder Fund
- Whale Rock Flagship Fund, Ltd.
- Whitebox Relative Value Fund
- Wolf Hill Offshore Fund, Ltd.
- Wolverine Flagship Fund Ltd.
- York European Focus Unit Trust
- York European Opportunities Unit Trust