MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
_____

WRITER'S CONTACT INFORMATION

bfischer@maglaw.com; 212-880-9585
charwood@maglaw.com; 212-880-9547

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN
——
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
——
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

December 12, 2025

**By ECF**
Hon. Andrew E. Krause
The Hon. Charles L. Brieant Jr. Federal Building and U.S. Courthouse
300 Quarropas St., White Plains, NY 10601-4150

    Re:    <u>S.E.C. v. Concord Management LLC and Michael Matlin</u>, No. 23-CV-8253 (AK)

Dear Judge Krause:

    On behalf of Defendants Concord Management LLC and Michael Matlin, we write respectfully in response to Plaintiff's December 9, 2025 letter (Dkt. 93) regarding the Rule 30(b)(6) Notice Defendants served on the SEC (*see* Dkt. 93-1). The Notice properly seeks information that is "known or reasonably available to the [SEC]," Fed. R. Civ. P. 30(b)(6), not privileged or otherwise beyond the scope of appropriate discovery, and essential to preparing Defendants' defense. The noticed deposition thus should be allowed to proceed.

    *Notice Topics 1 and 2*: This case turns on whether Defendants were required to register with the SEC as investment advisers under Section 203 of the Investment Advisers Act ("IAA") and its implementing regulations—including the SEC's Form ADV and its accompanying instructions (collectively, "Form ADV"). The parties agree that Defendants would be (i) required to register if they had "assets under management" exceeding $25 million, and (ii) *prohibited* from registering if they did not. *See* 15 U.S.C. 80b-3a(a)(1)(A). The Form ADV provides that in evaluating the "assets under management" for a given advisor, one looks only to the securities portfolio for which the advisor provides "continuous and regular supervisory or management services." *See* 17 C.F.R. § 275.203A-3(d); Form ADV Instructions at 19-21. The Form ADV further provides that when, as here, the advisor lacks discretionary control over the clients' assets, it does not have "assets under management" unless it is "responsible for arranging or effecting" the purchase or sale of securities. Form ADV Instructions at 20. Although the Form ADV provides "examples" and "factors" to assist in determining whether an advisor provides "continuous and regular supervisory or management services," neither that phrase nor "arranging or effecting" (nor the key terms within those phrases) is specifically defined. Importantly, none of the conduct alleged in the SEC's complaint as supposedly requiring registration (*e.g.*, sourcing private fund investments, negotiating side letters, and occasionally participating in fund advisory committees) is even mentioned in the Form ADV.

Morvillo Abramowitz Grand Iason & Anello P. C.

  Contrary to the SEC's suggestion that Defendants are improperly seeking to obtain "the views of SEC staff about the application of the [IAA]," the Notice seeks to discover the SEC's official position regarding the application and interpretation of relevant portions of the IAA and related authority, including what the phrases "continuous and regular supervisory management services" and "arranging and effecting" mean (including how SEC personnel are expected to interpret and apply them) in determining whether an investment adviser is required to register. Through a Rule 30(b)(6) deposition, a party may obtain exactly what Defendants are seeking: the organization's "'position' on [a given] topic [relevant to a litigation] . . . including its interpretation of documents and events." *Twentieth Century Film Corp. v. Marvel Enterprises, Inc.*, 2002 WL 1835439, at *3 (S.D.N.Y. Aug. 8, 2002); *see Barbara v. CVS Albany L.L.C.*, 2024 WL 2133322, at *3 (E.D.N.Y. May 13, 2024) (allowing depositions seeking information about organizational defendant's policies and how those policies are implemented in practice).

  The information Defendants seek will enable them to assess, among other things, whether the factual allegations relied on by the SEC (either in its pleading or as the case proceeds) in support of its contention that Defendants engaged in "continuous and regular supervisory management services" and were "responsible for arranging and effecting" the purchase or sale of securities are consistent with its official position and past practice regarding how those phrases should be (and are) interpreted and applied. *Baxter Int'l, Inc. v. Becton, Dickinson and Co.*, 2020 WL 424918, at *14 (N.D. Ill. Jan. 27, 2020) ("Generally, inquiry regarding a[n] [organization's] legal positions is appropriate in a Rule 30(b)(6) deposition."); *Local 3621, EMS Office's Union, DC-37 v. City of New York*, 2023 WL 8804257, at *8 (S.D.N.Y. Dec. 20, 2023) (granting 30(b)(6) deposition into local government's "official positions on the creation and implementation" of a given government job). Moreover, without any clarity as to the SEC's official position on how those phrases should be interpreted and applied, Defendants will be prejudiced from developing a record (including potentially expert testimony) to contest the position that the SEC will advance on summary judgment or at trial. If the SEC has no official position for how the relevant phrases (and terms within them) should be interpreted and applied, Defendants are entitled to explore that as well.

  The requested testimony also will show whether the SEC's pursuit of this action represents a departure from a prior "settled course of adjudication." *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996); *see, e.g.*, *Gilead Sciences, Inc. v. United States*, 158 Fed. Cl. 415, 421 (U.S. Ct. Fed. Cl. 2022) (permitting deposition to explore "whether [the agencies] have general policies that were not followed in this case"). The SEC's historical treatment and interpretation of the above phrases may constitute a "settled course" to which it is bound. *Yueh-Shaio Yang*, 519 U.S. at 32. In addition, such discovery is material to Defendants' affirmative defense of lack of fair notice. ECF 63 ¶ 94. In assessing "whether a statute provides sufficiently clear enforcement standards," courts analyze, "to some degree . . . the interpretation of the statute given by those charged with enforcing it." *VIP Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 192 (2d Cir. 2010); *see S.E.C. v. Ripple Labs, Inc.*, No. 20 Civ. 10832, ECF 112 at 51:9-19 (S.D.N.Y. 2021) (granting discovery into SEC's treatment of different cryptocurrencies as relevant to fair notice defense); *S.E.C. v. Keener*, 2021 WL 4990955, at *1-2 (S.D. Fla. Jul. 27, 2021) (same as to communications between SEC and third parties regarding broker-dealer registration).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

      The SEC's primary response is that *no* relevant information exists as to how the SEC interprets the key enforcement phrases beyond the two documents previously produced. If that is the agency's position, Defendants are entitled to explore and confirm it through admissible testimony from a Rule 30(b)(6) designee.[1] If, as the SEC suggests, the application of relevant concepts in the Form ADV is left to a staff member's ad hoc interpretation, Defendants are entitled to obtain that information through binding testimony. *Dongguk Univ. v Yale Univ.*, 270 F.R.D. 70, 73-74 (D. Conn. 2010).

      Further, the SEC mischaracterizes the information the Notice seeks in arguing it constitutes fact witness testimony, quasi-expert testimony, or privileged information. Defendants do not seek testimony about the facts of what they did or whether based on those facts, they should have registered. Moreover, because Defendants are seeking information reflecting the official interpretation and historical application of the relevant regulatory terminology, they are not seeking information that could plausibly be covered by a valid claim of privilege—deliberative process or otherwise.

      *Notice Topic 3*: The SEC fails to address Defendants' third designated topic, which seeks testimony regarding the SEC's processes and policies for the issuance of deficiency letters (instead of filing enforcement actions) for failing to register, or for improperly registering when prohibited from doing so. In any event, such information is directly relevant to Defendants' affirmative defense that the SEC abused its discretion by proceeding directly to an enforcement action, rather than issuing a deficiency letter. Defendants have good reason to believe that, absent facts demonstrating fraud or deceit (and no fraud or deceit is alleged in this case), when the SEC determines that an unregistered investment adviser is required to register, it resolves that matter by the issuance of a deficiency letter. As courts routinely recognize, the "articulation of policy and procedure in an agency at a particular point in time . . . is the sort of fact to which an agency's Rule 30(b)(6) witnesses routinely—and properly—attest." *D.J.C.V. v. United States*, 687 F. Supp. 3d 423, 448 (S.D.N.Y. 2023); *see Martin v. Valley National Bank of Arizona*, 140 F.R.D. 291, 316 (S.D.N.Y. 1991) (permitting deposition of Department of Labor on topic of "procedures followed by the Department in opening and conducting investigations"); *S.E.C. v. Merkin*, 283 F.R.D. 689, 692 (S.D. Fla. 2011) (permitting deposition on, *inter alia*, "routine practice[s]" of the SEC in connection with its investigations).

      Respectfully submitted,

      *Benjamin S. Fischer*
      *Christopher B. Harwood*

cc:    All counsel of record (by ECF)

---

[1] The SEC's assertion that the Form ADV and a staff-authored document represent the only available guidance confuses the record and further warrants 30(b)(6) discovery. The latter document does not mention "continuous and regular supervisory or management services" or "arranging and effecting"—nor do any other produced documents shed meaning on the SEC's interpretation of the phrases—leaving the Form ADV as the only potentially relevant document.