# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

———

WRITER'S CONTACT INFORMATION

bfischer@maglaw.com; charwood@maglaw.com
(212) 880-9585; (212) 880-9547

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN
——
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
——
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

April 15, 2026

**By ECF**

Hon. Andrew E. Krause
The Hon. Charles L. Brieant Jr. Federal Building and U.S. Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

> Re:  *S.E.C. v. Concord Management LLC and Michael Matlin*, No. 23-CV-8253 (AK)

Dear Judge Krause:

We represent Defendants Concord Management LLC ("Concord") and Michael Matlin in the above-captioned action. We write respectfully to request a pre-motion conference to discuss Concord and Mr. Matlin's anticipated motion to amend their Answer, ECF 63 (the "Answer"). The sole contemplated amendment is to assert an affirmative defense of selective prosecution. A proposed redline version of the Answer is attached hereto as Exhibit 1. We have conferred with counsel for the Securities and Exchange Commission ("SEC"), and they oppose this request. Pursuant to Rule 3(A) of your Honor's Individual Practices, we believe that a conference with the Court may obviate the need for motion practice or may otherwise streamline the dispute.

Last week, in a press release dated April 7, 2026 (the "April 7 SEC Statement"), the SEC made clear that its policy with respect to the pursuit of enforcement matters is to limit such matters to cases involving fraud and investor harm. *See* Securities and Exchange Commission, "SEC Announces Enforcement Results for Fiscal Year 2025," (Apr. 7, 2026), available at https://www.sec.gov/newsroom/press-releases/2026-34. In the April 7 SEC Statement, the SEC announced a course correction, noting that (i) "resources have been misapplied in prior years to pursue media headlines and run up numbers," (ii) "[t]he current Commission deliberately refocused the enforcement program on matters of fraud," and (iii) "*[g]oing forward*, enforcement priorities and results will be linked to the Commission's and the Division's *core mandate*, and *will thus contemplate the following elements to fulfill its mission*: Standing up to fraud in its many forms and those market participants engaged in such misconduct; addressing the fraudulent and manipulative conduct of the parties in question through appropriate remediation; and repaying investors' losses when harmed." *Id.* (emphasis added). In the April 7 SEC Statement, SEC Chairman Paul S. Atkins reinforced the new policy mandate, and stated: "We have

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Hon. Andrew E. Krause
Page 2

redirected resources toward the types of misconduct that inflict the great harm — particularly fraud, market manipulation, and abuses of trust — and away from approaches that prioritized volume and record-setting penalties over true investor protection."

Importantly, the April 7 SEC Statement expressly states that this new policy applies to cases like this one: pending litigations that were initiated under past SEC leadership that do not involve fraud or investor loss. Indeed, the April 7 SEC Statement specifically touted the decisive action the current SEC has taken to stop pursuing cases in conflict with the SEC's policy, including the recent dismissal of several "cases [that] identified no direct investor harm from [alleged] violations, produced no investor benefit or protection, and demonstrate what the current Commission views as a misinterpretation of the federal securities laws, a misallocation of Commission resources, and a bias for volume of cases brought versus matters of investor protection." *See, e.g.*, April 7 SEC Statement at n.6 (noting the SEC's decision to dismiss multiple enforcement actions brought by the prior Commission).[1] Among the cases dismissed were several cases involving failure to register claims. *See id; see, e.g.*, *S.E.C. v. Auctus Fund Management, LLC et al*, No. 23-cv-11233, ECF 84 (D. Mass. June 18, 2025) (SEC agreeing to dismiss registration case).

This clearly articulated existing enforcement policy cannot be squared with the SEC's continued pursuit of this action against Concord and Mr. Matlin. This case involves a single claim that Concord and Mr. Matlin did not register as investment advisers with the SEC, a claim that is strict liability in nature and does not involve fraud, market manipulation, or any breach of fiduciary duty. *See also* Tr. of January 11, 2024 Hearing at 11:4-7 (SEC attorney of record in this case stating "we have not alleged in this complaint that Mr. Matlin has …engaged in any fraud"). Nor is there even an allegation of investor loss or investor harm — a fact confirmed by the SEC's voluntary abandonment of its claim for disgorgement, and its concession that no victims exist as a result of Concord and Mr. Matlin not registering. *See* ECF 30 (so-ordered stipulation withdrawing SEC's claim for disgorgement); Tr. of January 11, 2024 Conf. at 11:1-2 (SEC attorney of record stating "we certainly haven't alleged any type of traditional victims in this

---

[1] The April 7 SEC Statement is consistent with prior recent remarks delivered by the SEC Chairman and the former Director of the Division of Enforcement. *See* Securities and Exchange Commission, "Director Margaret L. Ryan: Remarks to the Los Angeles County Bar Association," Feb. 11, 2026, available at https://www.sec.gov/newsroom/speeches-statements/margaret-ryan-02-11-26-remarks-los-angeles-county-bar-association ("A principal focus of our enforcement program is thus to protect investors from the myriad fraud schemes cooked up by bad actors, which Chairman Atkins refers to as the liars, cheats, and thieves. Identifying, rooting out, and remedying scams, particularly those that inflict devastating costs on everyday retail investors, is the cornerstone of what we do."); Securities and Exchange Commission, "Chairman Paul S. Atkins: Prepared Remarks Before SEC Speaks," Mar. 19, 2026, available at https://www.sec.gov/newsroom/speeches-statements/atkins-remarks-sec-speaks-031926-prepared-remarks-sec-speaks ("The Division of Enforcement is also undergoing a course correction by prioritizing cases that provide meaningful investor protection and strengthen market integrity rather than technical rule violations in situations where investors have not been harmed. To those ends, we have directed the division staff to investigate the types of misconduct that inflict the greatest harm, such as fraud, market manipulation, and abuses of trust—and away from approaches that measure success by volume over real investor protection.").

Morvillo Abramowitz Grand Iason & Anello P. C.

Hon. Andrew E. Krause
Page 3

case"); *S.E.C. v. Govil*, 86 F.4th 89, 111 (2d Cir. 2023).  In other words, the SEC cannot achieve through its pursuit of this action any of what its new policy says are to be the "elements" of the cases the SEC is supposed to pursue: "standing up to fraud" or pursuing "market participants engaged in misconduct" (because Concord and Mr. Matlin did not engage in fraud or other misconduct, and the SEC does not allege otherwise); "addressing… fraudulent and manipulative conduct" (because none existed or has been alleged); and "repaying investors' losses" when investors are harmed (because, as the SEC has acknowledged, there were no investor losses and no investors were harmed in this case).  Indeed, we are not aware of any failure-to-register case currently being litigated by the SEC that does not involve concurrent charges of fraud, misrepresentation, breach of fiduciary duty, victims, or investor harm.  Concord and Mr. Matlin stand alone.

The unexplained disparity between the alleged conduct at issue in this case and the conduct which the SEC now deems necessary to support an enforcement action reflects an impermissible singling out of Concord and Mr. Matlin by the SEC.  Concord and Mr. Matlin respectfully submit that "there is no rational basis for the difference in treatment," *Gupta v. S.E.C.*, 796 F. Supp. 2d 503, 513 (S.D.N.Y. 2011) (internal quotation marks omitted).  As a result of this "irrational and wholly arbitrary" conduct, Defendants seek leave to amend their answer to assert an affirmative defense of selective prosecution.  *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 500 (2d Cir. 2001) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)); *see, e.g.*, *Resolution Trust Corp. v. Gregor*, 1995 WL 931093, at *5 (E.D.N.Y. Sep. 29, 1995) (denying motion to strike affirmative defense of selective enforcement); *FTC v. Amazon.com, Inc.*, 2024 WL 4839389, at *4 & n.2 (W.D. Wash. Nov. 20, 2024) (same).

In general, leave to amend should be "freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  When, as here, the deadline to amend the pleadings has passed, amendment should nevertheless be allowed when the moving party demonstrates "good cause" for the amendment. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 243 (2d Cir. 2007).  The existence of good cause primarily depends on "whether the moving party can demonstrate diligence" — which Defendants can do because they are moving promptly after the issuance of the April 7 SEC Statement — but courts also consider whether amendment would result in prejudice.  *Id.* at 244-45.  Here, both factors weigh in favor of Defendants.  First, Concord and Mr. Matlin are acting diligently to amend their Answer after the SEC's recent issuance of the April 7 SEC Statement, after having promptly brought the issue of the amendment to the SEC's attention.  As such, any "delay in requesting amendment was out of [Concord and Mr. Matlin's] control," and they "acted as quickly as possible" as soon as learning of the circumstances that give rise to the amendment.  *Aguilar v. Baton Corp. Ltd.*, 2025 WL 3523133, at *5 (S.D.N.Y. Dec. 9, 2025) (internal quotation marks omitted).  Indeed, the day after the issuance of the April 7 SEC Statement, Defendants contacted counsel for the SEC and informed them that no rational basis exists for the SEC to continue to pursue this claim. On April 10, Defendants notified the SEC of their intent to seek leave to amend and sought the SEC's position regarding the proposed amendment.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Andrew E. Krause
Page 4

Moreover, in addition to Defendants' diligence, good cause to amend also "exists because the desired amendment would result in no significant prejudice to Plaintiff." *CAC Atlantic, LLC v. Hartford Fire Ins. Co.*, 2017 WL 3149340, at *4 (S.D.N.Y. Jul. 25, 2017). Defendants do not anticipate needing to take any additional discovery with respect to this affirmative defense because the SEC's public statements and actions speak for themselves.[2] Nor are Defendants seeking to adjust any of the current deadlines in place in this case. Thus, no prejudice will result to the SEC by allowing amendment.

Notwithstanding the fact that the proposed affirmative defense would not, from Concord and Mr. Matlin's perspective, require additional affirmative fact discovery or the adjustment of any case deadlines, the SEC has informed us it will oppose the proposed amendment.

We believe that a conference with the Court could aid the parties in resolving this issue. We thank the Court for its consideration.

Respectfully submitted,

*Benjamin S. Fischer*
*Christopher B. Harwood*

---

[2] To the extent that the SEC contemplates putting on additional evidence to rebut this defense, Defendants reserve the right to seek limited discovery relating to that additional evidence.