

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
33 Arch Street, 24th Floor
Boston, MA 02110-1424

**Boston
Regional Office**

May 13, 2026

**By ECF**
Honorable Andrew E. Krause
The Honorable Charles L. Brieant Jr. Federal Building and U.S. Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:  *Securities and Exchange Commission v. Concord Management LLC and Michael Matlin,*
No. 23-CV-8253 (S.D.N.Y.)

Dear Judge Krause:

Defendants' Letter of May 7, 2026 ("Defendants' Letter") asks the Court to order the Securities and Exchange Commission (the "Commission") to produce (1) the Commission's Division of Examinations' Examination Manual ("the Exam Manual"); (2) unspecified "Training Materials"; and (3) all of the "modules" maintained by the Division of Examinations as reference materials for examiners. (Dkt. 105.) Defendants cite the recent 30(b)(6) deposition of Associate Director Kevin Kelcourse as support for these demands, but as Defendants note, these are not new requests. Defendants' First Request for the Production of Documents, issued March 1, 2024, included various Requests for Production (the "March 2024 RFPs") that called for materials from the Division of Examinations.  *See* Ex. A, RFPs 13, 14. Defendants also previously sought documents to support their argument that the Commission was not prevented from having oversight over Concord, despite it being unregistered, because the entities in which Concord's client invested were registered and thus subject to examination. *See* Ex. A., RFPs 12, 15,[1] 17.

Following the receipt of the March 2024 RFPs, the parties began a lengthy meet and confer process. While the Commission objected from the outset to the breadth of the March 2024 RFPs, counsel diligently undertook an effort to identify responsive materials, and discussed the Defendants' requests with them over the course of many months. Throughout, the Commission counsel consistently maintained that it would not produce materials that were not relevant to any party's claim or defense, in accordance with Fed. R. Civ. P. 26(b)(1), and that as the threshold issue of relevance was determined before privilege, it would not undertake the burden of individually logging irrelevant documents that were also privileged. The Commission even specifically noted in the privilege log,

---

[1] RFPs 12 and 15 referenced an Appendix to the March 2024 RFPs which listed 144 entities and funds that Concord's client invested in.

provided to Defendants in June 2024, as the first category of materials: "Internal working documents of the SEC including memos, emails, notes of internal discussions, and examination modules." The log entry noted: "This category is intended to capture the many internal materials that could be covered by Defendants' broad request for internal materials regarding topics including the examination of investment advisers. While we believe the majority of such materials are not relevant to the current action, to the extent that they are relevant, they would be privileged." The Commission further cited to the potential application of the deliberative process privilege, law enforcement privilege, and/or attorney-client privilege.

At its core, this case concerns a relatively narrow legal claim: the Defendants were charged with one count of violating the Investment Advisers Act of 1940 (the "Advisers Act") by failing to register as investment advisers. Defendants concede that they were investment advisers but argue that they did not need to register because they had no assets under management. There is no dispute that Concord and Matlin were not registered, and no dispute that they were not examined. Whether the Defendants agree with the rationale behind the statutory registration requirement or not, there is no element of the charge that considers what kind of oversight the Commission did or did not have into Concord's activities when operating as an unregistered investment adviser. The Commission's Complaint notes that the Advisers Act, which contains the registration requirement that this action is based on, serves not just to protect individual investors but also to protect the securities markets and the national economy. *See* Dkt. 1; Compl. ¶ 71. This is in essence a legal argument, supported by citation to the Adviser's Act itself, about why the regulation exists. In answering the Complaint, Defendants themselves noted that this allegation stated a legal conclusion to which no response was required. *See* Dkt. 63; Answer, ¶ 71. It is simply not a relevant factual dispute. Nevertheless, Commission counsel conducted a diligent search and did not identify any policy or procedure documents on this point responsive to RFP 17.

Following the exchange of document discovery, Defendants deposed two 30(b)(6) witnesses to further explore each of these points, one of whom was Mr. Kelcourse. Mr. Kelcourse's testimony did not alter the status of the document inquiry. Indeed, a fair reading of the transcript supports the Commission's conclusion that there are no relevant documents to produce. Specifically:

- Mr. Kelcourse testified, when asked whether there were policies and procedures in place governing how examiners determine whether firms are acting in compliance with federal securities laws, "[I]t will always depend on the facts and circumstances at the firm." Ex. B, Tr. at 65:5 – 66:16.

- Mr. Kelcourse testified that he was not aware of any Commission policy that governs whether an investment adviser is or is not properly registered with the Commission and that while the Exam Manual may contain mechanical information regarding the process of making a referral to the Division of

Enforcement, when he makes such a determination he relies on "the facts and circumstances of any given matter and my judgment."  Ex. B, Tr. at 81:24 – 85:15.

- Mr. Kelcourse testified that deficiency letters are issued by the Division of Examinations "following completion of" an examination.  Ex. B, Tr. at 183:8-15. Defendants  were not examined. Thus, no deficiency letter was issued.  The Exam Manual's general discussions of how examiners should conduct their work and the mechanics of issuing a deficiency letter after an exam are not relevant to this action.

- Mr. Kelcourse testified that the only documents that he reviewed in preparing for the deposition were publicly available brochures regarding the examination process, and that his testimony was based on his knowledge and experience.  Ex. B, Tr. at 114:24 – 115:7; 126:5 – 130:12.

Finally, the Defendants correctly note that the Commission advised that the requested documents are sensitive and non-public. While the Commission's primary objection is to the relevance of the materials, the Commission also has a valid interest in not producing privileged and/or sensitive internal materials.  To support that assertion, the Commission attaches a recent decision, following briefing, in another matter in which a Court denied defendants' motion to compel the Exam manual and examination modules on the basis that they were not relevant. *See* Ex. C Order in *SEC v. Fife*; Ex. D. Decl. of Natasha Vij Greiner in Support of SEC's Opposition to Defendants' Second Motion to Compel. Both the Court's decision itself and the supporting Declaration are instructive here.  The Declaration specifically explains that the Exam Manual is a process manual for how to conduct an exam of any type of entity, and is not intended to provide a substantive step-by-step proscriptive process. Ex. D,¶ 4. Similarly, the Declaration explains that the exam modules are subject area "roadmap(s)" for how examiners should approach certain exams. *Id*. ¶ 5.  Both of these materials are described as "highly-sensitive, mission-critical information."  *Id*. ¶ 6. The Court in *Fife* agreed and found that "even if the exam manual and modules were relevant ..., requiring the SEC to produce these non-public and highly sensitive materials could harm the SEC's examination program." Ex. C, ¶ 3.

Defendants' request to order the Commission to produce these materials, which are irrelevant to the instant matter, highly sensitive, and/or privileged, should be denied.[2]

Respectfully Submitted,

Amy Harman Burkart
Rua Kelly
Russell Mawn

---

[2] As the Court can resolve this matter on the threshold issue of relevance, the Commission has not endeavored to discuss privilege at this juncture, but notes that the Declaration also describes aspects of the Exam Manual and Modules that, for instance, contain information that could allow regulated entities to avoid scrutiny of potential violations of the federal securities laws. *See* Ex. D, ¶ 7.

3